UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CAIR-Foundation, Inc., a
Washington, D.C. nonprofit
corporation, and,

CAIR-Florida, Inc., a Florida
nonprofit corporation,

     Plaintiffs,

v.    Case No.

Ronald DeSantis, in his official
capacity as Governor, State of
Florida,

     Defendant.

---

## COMPLAINT FOR
## <u>DECLARATORY AND INJUNCTIVE RELIEF</u>

Plaintiffs CAIR-Foundation, Inc. and CAIR-Florida, Inc. (collectively "CAIR"), by and through undersigned counsel, bring this Complaint for Declaratory and Injunctive Relief against Defendant Ronald DeSantis, in his official capacity as Governor of the State of Florida. Defendant's Executive Order 25-244 ("Executive Order," "EO," or "the order"), issued on December 8, 2025, violates the United States Constitution and is an *ultra vires* act of authority in violation of the Florida Constitution and laws. Plaintiffs ask this Court to declare Executive Order 25-244

1

unlawful, unconstitutional, void, and of no force or effect, and to enjoin Defendant from enforcing it. Plaintiffs allege as follows:

## I.    <u>INTRODUCTION</u>

1. Founded in 1994, the Council on American-Islamic Relations ("CAIR" or "CAIR National") is now America's largest Muslim civil rights and advocacy organization. Its mission is to enhance the public's understanding of Islam, protect civil rights, promote justice, and empower American Muslims.

2. CAIR National is a 501(c)(3) nonprofit organization registered as CAIR-Foundation, Inc.

3. CAIR National and its over 20 affiliated chapters, including CAIR-Florida, Inc. ("CAIR-Florida"), work to advance the organization's mission through lobbying, training, education, and legal action.

4. CAIR has publicly condemned all forms of unjust violence, including hate crimes, terrorism, ethnic cleansing, and genocide. The foreign terrorist organization ISIS once threatened to assassinate CAIR's leadership in response to the organization's outspoken opposition to terrorism. While CAIR has vocally condemned U.S. support for the Israeli government's human rights abuses against the Palestinian people, CAIR has also condemned Hamas violence against Israeli civilians, specifically including suicide bombings in the 1990s and its attacks on October 7, 2023.

5.  In recent years, CAIR has filed several free speech-related lawsuits against state entities and officials across America, including Florida Governor DeSantis, to block their attempts to punish or silence Americans who expressed support for Palestinian human rights.

6.  On December 8, 2025, Defendant DeSantis issued Executive Order 25-244, which purports to unilaterally designate CAIR a "terrorist organization." The order directs Florida's executive and cabinet agencies, as well as counties and municipalities, to deny local or state contracts, employment, funding, benefits, and privileges to CAIR and anyone known to provide "material support" to CAIR, including "expert advice or assistance." The order also directs Florida Department of Law Enforcement and the Florida Highway Patrol to pursue unspecified "measures" against CAIR.

7.  By issuing this order, Defendant DeSantis has violated the U.S. and Florida Constitutions, as well as federal and state laws. He has usurped the exclusive authority of the federal government to identify and designate terrorist organizations by baselessly declaring CAIR a terrorist organization. He has violated the Constitution's guarantee of due process by unilaterally declaring CAIR a terrorist organization and then ordering immediate punitive, discriminatory action against CAIR and its supporters.

8.  The Executive Order was issued against the backdrop of Plaintiffs' civil rights advocacy and litigation opposing actions by Florida officials—including Defendant

DeSantis—that sought to suppress speech supporting Palestinian human rights and Muslim civic participation.

9.  On December 8, 2025, Plaintiffs announced their intent to challenge the Executive Order. Defendant DeSantis then stated publicly that he welcomed litigation because it would provide an opportunity to obtain CAIR's financial records and internal information through discovery. These contemporaneous statements confirm that the Executive Order was intended to burden and deter Plaintiffs' advocacy rather than to serve any legitimate state interest.

10. The Executive Order identifies no criminal charges or convictions, relies on no federal designation, and inaccurately invokes statutory authority. It rests on political rhetoric and imposes sweeping legal consequences on a domestic civil rights organization because of its viewpoints and advocacy.

11. By its terms, the Executive Order instructs state actors to condition the availability of contracts, employment, funding, benefits, or privileges on whether a person or entity is deemed to have provided "material support or resources" to CAIR, thereby extending the EO's exclusionary mandate beyond CAIR itself.

12. By its terms, the Executive Order imposes immediate and self-executing legal consequences. It alters CAIR's legal status upon issuance by categorically excluding CAIR from eligibility for state and local contracts, employment, funding, benefits, or privileges, and by conditioning third-party eligibility for such benefits on

association with CAIR. Viewed in context, this framework reasonably conveys the risk of adverse government action sufficient to chill protected speech and association.

13. The Executive Order announces no process and articulates no lawful basis for its designation. Instead, it relies on demonstrably false assertions contradicted by Plaintiffs' longstanding record.

14. Plaintiffs seek declaratory and injunctive relief to restore constitutional order and prevent continued enforcement of an unlawful executive action.

## II.    JURISDICTION AND VENUE

15. This action arises under the Constitution and laws of the United States, including the Supremacy Clause, the First and Fourteenth Amendments, and 42 U.S.C. § 1983. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and authority to issue declaratory relief under 28 U.S.C. §§ 2201–2202.

16. Plaintiffs seek prospective declaratory and injunctive relief against a state official for ongoing violations of federal law. Defendant DeSantis is therefore subject to suit in his official capacity under the doctrine of Ex parte Young, 209 U.S. 123 (1908).

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims—including the issuance, publication, and implementation of Executive Order 25-244—occurred within this District.

18. An actual and justiciable controversy exists within the meaning of 28 U.S.C. § 2201, and this Court is authorized to grant declaratory and injunctive relief as appropriate.

### III.  PARTIES

19. Plaintiff CAIR-Foundation, Inc. ("CAIR" or "CAIR National") is a 501(c)(3) nonprofit corporation organized under the laws of the District of Columbia and headquartered in Washington, D.C. CAIR National is a national civil rights and advocacy organization that engages in public education, civil rights litigation, media initiatives, and advocacy to protect constitutional rights and promote justice for American Muslims.

20. Plaintiff CAIR-Florida, Inc. ("CAIR-Florida") is a Florida-based affiliated chapter of CAIR. CAIR-Florida engages in civil rights advocacy, public education, and community outreach across the state, often in partnership with CAIR National, across Florida.

21. Defendant Ronald DeSantis is the Governor of the State of Florida and is sued in his official capacity only. Defendant DeSantis issued the Executive Order and is responsible for its continued enforcement and implementation. He is an appropriate defendant for prospective declaratory and injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908).

## IV. <u>STANDING</u>

22. The Executive Order imposes a terrorism designation and exclusionary framework directed at "CAIR," which operates nationally and through its Florida chapter. That framework alters Plaintiffs' legal status and eligibility and reasonably conveys the risk of adverse government action sufficient to chill protected speech and association.

23. Each Plaintiff has Article III standing based on the Executive Order's self-executing legal effects.

24. Absent the Executive Order, no statute or regulation bars CAIR or its Florida chapter from eligibility for contracts, employment, funding, benefits, or privileges. Declaratory and injunctive relief setting aside the Executive Order will restore CAIR's legal status and fully redress Plaintiffs' injuries.

### A. CAIR National

25. CAIR National has Article III standing based on the Executive Order's self-executing designation of "CAIR" and its exclusionary framework, which alters CAIR National's legal status and reasonably conveys the risk of adverse government action.

26. In addition, the Executive Order caused the cancellation of a specific, concrete business relationship as a direct result of Defendant DeSantis's designation and accompanying threats of enforcement.

27. CAIR National is itself a direct object of the Executive Order. The Executive Order designates "CAIR" without reference to any specific corporate subdivision or limitation to a Florida affiliate, relying on national-level allegations, leadership references, and historical assertions directed at CAIR as a single organization. By purporting to classify CAIR as a "terrorist organization," the Executive Order imposes a legal stigma and exclusionary framework that attaches to CAIR as an organization, including its national operations.

### B. CAIR-Florida

28. For purposes of state and local government interaction, CAIR-Florida is the entity through which CAIR engages in civil rights advocacy, public education, and civic participation in Florida, and it is therefore the immediate object of the EO's exclusionary commands.

29. CAIR-Florida has Article III standing because the Executive Order imposes a present, concrete, and self-executing legal disability that alters CAIR-Florida's legal status and reasonably conveys the risk of adverse government action sufficient to chill protected speech or association.

30. The EO's categorical exclusion applies automatically upon issuance. By designating "CAIR" and directing statewide exclusion from contracts, employment, funding, benefits, and privileges, the Executive Order alters CAIR-Florida's legal status and

bars it from eligibility for government programs otherwise open to Florida nonprofit organizations.

31. A binding legal prohibition that applies automatically to a named organization constitutes a present injury the moment it is issued, even absent a denied application or enforcement action, because the law itself changes the legal rights and obligations of the plaintiff. See *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988) (injury established because the state censorship law was "aimed directly" at the plaintiff booksellers).

32. Moreover, the Executive Order extends its exclusionary mandate by conditioning access to state and local contracts, employment, funding, benefits, or privileges on whether a person or entity is deemed to have provided "material support or resources" to CAIR. Viewed in context, this structure reasonably conveys the risk of adverse government action to third parties and operates to deter association with, and support for, CAIR's protected speech. See *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191-2 (2024) (threats of enforcement actions for associating with a gun rights organization could be reasonably perceived as coercive and violative of the First Amendment).

33. The objective reasonableness of this chilling effect is underscored by Defendant's own public statements framing the Executive Order as a mechanism to exclude

CAIR from government benefits and subject it to investigation and scrutiny.[1] Viewed in context, a reasonable third party would understand the Executive Order as conveying a risk of adverse government action associated with engagement with or support for CAIR.

34. The Executive Order contains no discretionary language permitting agencies to disregard the prohibition, and the phrase "lawful measures" governs only the manner of implementation, not the existence of the legal disability.

35. Plaintiffs' injuries are therefore traceable to Defendant DeSantis, who created the designation and mandated its enforcement statewide.

## V.    **FACTUAL BACKGROUND**

### A. *CAIR's Lawful Mission, Structure, and Operations*

36. The Council on American-Islamic Relations is the nation's largest American Muslim civil rights and advocacy organization. Founded in 1994, CAIR operates through affiliated nonprofit chapters across the United States, including Plaintiff CAIR-Florida.

---

[1] Joseph Ax, *Florida governor designates Muslim rights group as terrorist organization*, REUTERS (Dec. 10, 2025 10:31 a.m.), https://www.reuters.com/world/us/florida-governor-designates-muslim-rights-group-terrorist-organization-2025-12-09/; Jay Waagmeester, *Gov. DeSantis welcomes lawsuit challenging CAIR's terrorist designation*, FLORIDA PHOENIX (Dec. 9, 2025), https://floridaphoenix.com/2025/12/09/gov-desantis-welcomes-lawsuit-challenging-cairs-terrorist-designation/.

37. CAIR and its affiliated chapters are long-standing 501(c)(3) American nonprofit organizations whose mission is to enhance public understanding of Islam, protect civil liberties, promote justice, and empower American Muslims.

38. CAIR and its affiliates engage in civil rights advocacy, public education, community organizing, interfaith work, and commentary on matters of public concern, including domestic and United States foreign policy affecting American Muslims. They have also consistently addressed and opposed narratives that portray Islam or American Muslims as inherently violent or extremist.

39. For decades, CAIR and its affiliates—including CAIR-Florida—have consistently and unequivocally condemned terrorism and all forms of unjust violence, including acts committed by organizations designated by the United States government as Foreign Terrorist Organizations. Indeed, CAIR's National Executive Director was targeted for assassination by ISIS specifically because of CAIR's outspoken opposition to terrorism.

40. While CAIR has vocally condemned U.S. support for the Israeli government's human rights abuses against the Palestinian people, CAIR has also condemned Hamas violence against Israeli civilians, specifically including suicide bombings in the 1990s and attacks on Oct. 7, 2023.

41. To this day, CAIR has never been designated as a Foreign Terrorist Organization, Specially Designated Global Terrorist, or any comparable entity by the United States

Department of State, the Department of the Treasury, or any other federal agency authorized to make such determinations.

42. CAIR's civil rights and charitable work necessarily depends on ongoing interaction and coordination with members of the public and with other organizations.

## B. CAIR's Protected Advocacy and Prior Litigation Challenging State Suppression of Pro-Palestinian Speech

43. As part of its longstanding civil rights mission, CAIR National and CAIR-Florida have actively engaged in advocacy and litigation defending the First Amendment rights of individuals and organizations advocating for Palestinian human rights and criticizing government policies related to Israel and Palestine. This advocacy is a core component of CAIR's civil rights work and addresses matters of public concern protected by the First Amendment.

44. This work includes CAIR's direct representation of, and advocacy for, Students for Justice in Palestine ("SJP") chapters subjected to governmental suppression because of their viewpoints and expressive activities.

45. In November 2023, CAIR National and CAIR-Florida filed suit against Florida officials, including Defendant DeSantis, challenging state directives ordering the deactivation of SJP chapters at Florida public universities. That litigation sought injunctive relief to protect students' First Amendment rights to engage in peaceful,

pro-Palestinian advocacy and criticism of Israeli government policies that harms

Palestinian human rights.[2]

46.  In related litigation arising from the same state actions SJP chapters were also
represented by the American Civil Liberties Union. CAIR's litigation and advocacy
were part of a coordinated effort to challenge the suppression of pro-Palestinian
speech in Florida's public universities.

47.  CAIR's role in defending pro-Palestinian speech and opposing state efforts to
suppress such expression placed the organization in direct and public opposition to
positions advanced by Defendant DeSantis and other Florida officials. These state
directives and public statements were framed as responses to the content and
viewpoints of pro-Palestinian advocacy rather than to any identified unlawful
conduct.

48.  Beyond campus litigation, CAIR has played a leading role in defending the civil
rights of individuals and organizations lawfully advocating for Palestinian human

---

[2] CAIR Press Release, CAIR-FL, "Partners to Announce Lawsuit Against State University Chancellor, Gov. DeSantis for Violating Their First Amendment Rights: Seek Injunction Quashing Order to Deactivate Group," Nov. 21, 2023, available at: https://www.cair.com/press_releases/cair-fl-partners-to-announce-lawsuit-against-state-university-chancellor-gov-desantis-for-violating-their-first-amendment-rights-seek-injunction-quashing-order-to-deactivate-group/ (last visited Dec. 12, 2025); Gabriella Borter, *Florida sued over ban on pro-Palestinian student groups*, REUTERS (Nov. 16, 2023, 4:24 p.m.), https://www.reuters.com/world/us/florida-sued-over-ban-pro-palestinian-student-groups-2023-11-16/.

rights, including by challenging governmental actions, institutional bans, and discriminatory enforcement triggered by criticism of Israeli government conduct that harms Palestinian human rights. This advocacy is part of CAIR's longstanding mission and constitutes protected speech on matters of public concern.

49. CAIR's advocacy on Palestine-related issues, including its representation of SJP chapters and opposition to state censorship of pro-Palestinian speech, forms an important part of the factual context in which Defendant DeSantis issued the EO.

### C. The Executive Order's Animus and Retaliatory Context.

50. The context surrounding the issuance of Executive Order 25-244 is relevant to understanding its purpose, operation, and constitutional infirmities. Courts evaluating claims of viewpoint discrimination, retaliation, and equal protection consider the historical background of the challenged action, the sequence of events leading to it, and contemporaneous statements by decisionmakers. See *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977).

51. Defendant DeSantis publicly stated—when responding to CAIR's intent to file suit—that he welcomed the lawsuit because it would be "opportunity" for the State to obtain CAIR's financial records and internal information through discovery.[3] In

---

[3] Joseph Ax, *Florida governor designates Muslim rights group as terrorist organization*, REUTERS (Dec. 10, 2025 10:31 a.m.),

this way, the Defendant publicly framed the Executive Order and the resulting litigation as a means to subject CAIR to scrutiny and investigation. This statement confirms the EO's improper purpose: retaliate against CAIR for its protected advocacy, deter constitutionally-protected expression, and attempt to justify intrusive government scrutiny unrelated to any legitimate state interest.

52. The Executive Order followed—and must be understood in light of—CAIR's own direct involvement in litigation and advocacy challenging Defendant DeSantis's attempts to suppress pro-Palestinian speech. As a specific example, the Executive Order must be considered in the context of CAIR National and CAIR-Florida's lawsuit against Florida officials, including Defendant DeSantis, challenging the deactivation of SJP chapters at public universities.

53. Beyond campus litigation, CAIR has defended the civil rights of individuals and organizations advocating for Palestinian human rights, including by challenging governmental actions and discriminatory enforcement triggered by criticism of Israeli government conduct.

---

https://www.reuters.com/world/us/florida-governor-designates-muslim-rights-group-terrorist-organization-2025-12-09/; Jay Waagmeester, Gov. DeSantis welcomes lawsuit challenging CAIR's terrorist designation, FLORIDA PHOENIX (Dec. 9, 2025), https://floridaphoenix.com/2025/12/09/gov-desantis-welcomes-lawsuit-challenging-cairs-terrorist-designation/.

54. CAIR's litigation and advocacy placed CAIR in direct opposition to Defendant DeSantis on issues of Palestine-related advocacy and campus speech. The Defendant's directives were framed as responses to the content and viewpoints of pro-Palestinian advocacy rather than to any identified unlawful conduct.

55. Beyond Palestine-specific advocacy, CAIR's mission includes combatting Islamophobia, directly contradicting Defendant DeSantis's political position. Public reporting has documented Defendant DeSantis's statements minimizing concerns about Islamophobia and portraying Muslim civil rights advocacy as suspect. During a nationally televised debate, Defendant DeSantis referred to efforts to combat Islamophobia as addressing "so-called Islamophobia," prompting a formal response from the White House.4

56. The Executive Order does not identify any criminal conduct by CAIR, cite any adjudicated findings of wrongdoing, or rely on any federal designation, because none of these exist. Instead, it relies on political rhetoric, historical allegations previously rejected by the federal government, and generalized assertions untethered from any statutory framework. The absence of any criminal findings, federal designation, or procedural safeguards reinforces that the EO functions as a punitive

---

[4] Alex Seitz-Wald, *White House knocks Ron DeSantis over "so-called Islamophobia" remark at GOP debate*, NBC NEWS (Nov. 9, 2023), https://www.nbcnews.com/meet-the-press/meetthepressblog/white-house-knocks-ron-desantis-called-islamophobia-remark-gop-debate-rcna124527.

response to CAIR's viewpoints and advocacy rather than as a neutral law-enforcement measure.

### D. Executive Order 25-244 and Its Detrimental Effect

57. The Executive Order imposes immediate legal consequences. By categorically prohibiting CAIR from receiving any state or local contract, employment, funding, benefit, or privilege, the Executive Order alters Plaintiffs' legal status and excludes them from opportunities otherwise available to nonprofit organizations in Florida. These consequences apply automatically upon issuance of the Executive Order and do not depend on any future enforcement activity.

58. In addition, the Executive Order extends its exclusionary mandate by conditioning access to state and local contracts, employment, funding, benefits, or privileges on whether a person or entity is deemed to have provided "material support or resources" to CAIR. Viewed in context, this structure reasonably conveys the risk of adverse government action to third parties and operates to deter association with, and support for, CAIR's protected speech. *See Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191 (2024) ("To state a claim that the government violated the First Amendment through coercion of a third party, a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech.").

59. Plaintiffs' exercise of their First Amendment rights necessarily involves interaction and coordination with members of the public and with other organizations in order to engage in advocacy, public education, community outreach, and civil rights work.

60. Where a state executive action, by its terms and structure, alters an organization's legal status and reasonably conveys the risk of adverse government action in a manner that chills protected speech or association, the resulting constitutional injury is immediate and present at the moment the action is taken.

61. The EO's targeting of third parties that provide "material support or resources" to CAIR detrimentally impacts Plaintiffs' ability to engage with non-state parties. Florida law defines "material support or resources" broadly to include, *inter alia*, property or services of many kinds. Fla. Stat. § 775.33(1)(c).

62. Plaintiffs continue to engage in advocacy, public education, interfaith work, and civil rights activity in Florida. However, the Executive Order places that constitutionally-protected activity under threat. It establishes an ongoing and objective chill by reasonably conveying the risk of adverse government action associated with engagement with CAIR.

63. Because the Executive Order targets CAIR for its viewpoints and directs state agencies to take enforcement action, Plaintiffs reasonably fear retaliatory enforcement and exclusion from government-administered forums. Because the

Executive Order also targets third parties, Plaintiffs reasonably fear that their current and future relationships with third parties will be harmed.

64. The Executive Order has already had an immediate effect. In December 2025, CAIR National was in the final stages of launching a new podcast and had entered into a proposed production agreement with a Florida-based company. The podcast was intended to advance CAIR National's public education and civil rights mission through lawful expressive activity.

65. After issuance of Executive Order 25-244, the production company withdrew from the agreement after being advised against working with CAIR given Defendant's designation and the perceived risk of government retaliation, investigation, or legal exposure arising from association with CAIR.

66. A state official may not wield governmental power to burden an organization or deter its advocacy because of disagreement with its speech, its religious identity, or the communities it represents.

67. No process exists under Florida law for CAIR National or CAIR-Florida to challenge the designation, obtain review, or clear their name. The Executive Order is self-executing, indefinite, and issued without procedural safeguards.

68. Because Defendant DeSantis lacks authority to issue such a designation, and because the Executive Order violates foundational constitutional principles, Plaintiffs bring

this action seeking declaratory and injunctive relief to prevent continued enforcement, publication, or reliance on EO 25-244.

## COUNT I

### FEDERAL PREEMPTION UNDER THE SUPREMACY CLAUSE
### (8 U.S.C. § 1189 and the Federal Foreign Affairs Power)

69. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

70. The Supremacy Clause provides that federal law "shall be the supreme Law of the Land," U.S. Const. art. VI, cl. 2, and preempts state action that conflicts with federal statutory schemes or intrudes upon areas reserved exclusively to the federal government.

71. Congress has fully occupied the field of designating organizations as Foreign Terrorist Organizations ("FTOs"). Under 8 U.S.C. § 1189, the authority to designate an entity as an FTO rests solely with the United States Secretary of State. That authority includes both the power to designate and the power to refrain from designation after reviewing the relevant facts and national-security considerations. The statutory scheme is comprehensive, includes detailed procedural safeguards, and creates uniform national consequences for any designation.

72. Florida's criminal material-support statutes incorporate federal designations made by the United States Secretary of State under 8 U.S.C. § 1189. The federal government, however, has never designated CAIR—or any of its chapters—as a

terrorist organization. Defendant DeSantis's Executive Order conflicts directly with the federal statutory scheme by creating a parallel and unauthorized designation system.

73. The Executive Order stands as an obstacle to the accomplishment and execution of Congress's full purposes and objectives in establishing a uniform, federally controlled system for terrorism designations. It invites inconsistent state determinations, undermines federal foreign-relations authority, and intrudes into an area of exclusive national concern.

74. Federal law also defines the legal consequences of an FTO designation, including criminal prohibitions on providing material support, immigration restrictions, and financial sanctions under 18 U.S.C. §§ 2339A–2339B and related statutes. These consequences apply only to organizations formally designated under federal law.

75. Florida's own terrorism-related statutes rely on and incorporate the federal designation regime, reflecting the Legislature's intent to defer entirely to federal determinations regarding which entities constitute FTOs. See Fla. Stat. § 775.33 (material support statute incorporating federal designations). No Florida statute authorizes state officials to create a separate or parallel system of terrorism designations.

76. The Executive Order also intrudes into the field of foreign affairs and national security—areas of exclusive federal authority. The Executive Order relies on

assertions about international terrorism networks and foreign entities to justify its designation, despite governing Supreme Court precedent holding that states may not act in ways that intrude upon the federal government's responsibility for foreign relations. *See Zschernig v. Miller*, 389 U.S. 429 (1968); *American Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000).

77. Because Congress has occupied the field of terrorism designations, and because the Executive Order conflicts directly with the federal statutory scheme and foreign affairs authority, the Executive Order is preempted under the Supremacy Clause and is therefore invalid and unenforceable.

78. Plaintiffs are entitled to declaratory and injunctive relief prohibiting the enforcement, implementation, publication, or continued maintenance of the Executive Order as preempted by federal law.

## COUNT II

### ULTRA VIRES EXECUTIVE ACTION
### (Exceeds Authority Under Florida Constitution and Statutes)

79. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

80. Plaintiffs plead this Count in the alternative to Count I (Supremacy Clause Federal Preemption). Even if Executive Order 25-244 were not preempted by federal law under the Supremacy Clause—which it is—the Florida Constitution and/or state law

do not authorize Defendant Desantis to issue the Executive Order designating Plaintiffs as terrorist organizations.

81. The Florida Constitution vests its governor with limited and enumerated executive authority. By creating a new designation and directing law enforcement agencies to act based on that designation, the Executive Order exercises a legislative power that the Florida Constitution assigns exclusively to the Legislature. The Florida governor may not create new legal categories, penalties, or enforcement consequences by unilateral executive proclamation.

82. Florida law does not authorize Defendant DeSantis to declare a domestic nonprofit organization categorically ineligible for contracts, employment, funding, or other governmental benefits or privileges.

83. When a state official acts without statutory authority and imposes a legally binding classification, such action is challengeable under 42 U.S.C. §1983 because it results in ongoing violations of federal constitutional rights.

84. The Executive Order's designation of CAIR as a "terrorist organization" is untethered from any statutory definition, criteria, or process. Florida law provides no standards for the Defendant to make such a designation, no procedures for gathering evidence, no opportunity for affected organizations to be heard, and no authorization for the Defendant to impose legal consequences based on an executive classification.

85.  The Executive Order's terrorism designation and categorical exclusion place CAIR under an unauthorized enforcement regime, burden its expressive and associational activities, and chill and impair CAIR's ability to continue its public advocacy without fear of state retaliation.

86.  Defendant DeSantis's insertion of the term "lawful measures" does not cure the lack of authority. An ultra vires command cannot be transformed into lawful state policy through phrasing alone. Courts look to the substance of executive action, not a Governor's choice of adjectives, and a state official cannot impose a new legal disability and then attempt to avoid judicial review by instructing agencies to implement that disability only through "lawful" means.

87.  A governor's general authority over public safety does not include the power to define "terrorist organizations," create binding classifications, or impose enforcement obligations on state agencies outside the scope of legislatively conferred authority. Defendant DeSantis has invented and applied a designation—labeling CAIR a "terrorist organization"—that has no basis in Florida law and no statutory criteria, definitions, or procedures governing such an action. Executive power cannot be expanded through conclusory references to national security or public safety that have no constitutional or statutory grounding.

88. The Executive Order is unsupported by any evidence referenced therein or in the public record. It cites no criminal charges or convictions of CAIR and provides no reliable factual basis for its sweeping designation.

89. Florida's terrorism-related statutes, including the material-support statute, Fla. Stat. § 775.33, rely exclusively on federal Foreign Terrorist Organization designations made by the United States Secretary of State under 8 U.S.C. § 1189. The Legislature's reliance on federal classifications reflects a deliberate choice not to create a separate state designation regime. Executive Order 25-244 conflicts with that statutory structure by attempting to establish a parallel, executive-created system of classifications and consequences.

90. When a governor acts without statutory authority, the designation itself is void, regardless of the rhetoric used to justify it.

91. Because Florida law contains no delegation permitting the Defendant to identify domestic organizations as terrorist entities, and because the Executive Order imposes legal consequences without statutory authority, the Executive Order constitutes an ultra vires act and is void.

92. As the Executive Order exceeds the Defendant's lawful authority, Plaintiffs are entitled to declaratory and injunctive relief prohibiting its enforcement, implementation, publication, or continued maintenance.

## COUNT III

## FIRST AMENDMENT CLAIM FOR VIEWPOINT DISCRIMINATION
### (Facial Challenge)

93. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

94. The First Amendment prohibits state officials from using governmental power to burden or deter speech based on hostility to its content or viewpoint. This protection is at its apex when the targeted speech concerns matters of public concern or civil rights.

95. As set forth in the Factual Background, the Executive Order imposes a self-executing designation and exclusionary framework that alters Plaintiffs' legal status and burdens protected speech and association.

96. CAIR and CAIR-Florida speak on and participate in core protected expression, including civil rights advocacy, public education, litigation, community organizing, and public commentary on matters of public concern, such as domestic and international issues affecting American Muslims. This includes CAIR's advocacy and legal work defending the rights of individuals and organizations engaged in criticism of Israeli government policy and advocacy for Palestinian human rights, as well as CAIR's challenges to state actions suppressing such expression. These forms of expression lie at the heart of First Amendment speech protection.

97. Plaintiffs' advocacy concerning Palestinian human rights and opposition to governmental censorship constitutes core political and religious expression, and the Executive Order's singling out of CAIR—the organization that brought such advocacy and litigation—demonstrates impermissible viewpoint discrimination.

98. The designation in the Executive Order imposes burdens on Plaintiffs' speech and expressive activities by attaching an unauthorized terrorism designation, directing law enforcement agencies to "undertake all lawful measures" pursuant to that designation, and altering Plaintiffs' legal status with respect to the State in a manner that chills and burdens protected expression. Such burdens are unconstitutional viewpoint-based penalties.

99. In addition, the Executive Order extends its exclusionary mandate by conditioning access to state and local contracts, employment, funding, benefits, or privileges on whether a person or entity is deemed to have provided "material support or resources" to CAIR. Viewed in context, this structure reasonably conveys the risk of adverse government action to third parties and operates, by its structure and function, to burden association with, and support for, CAIR's protected advocacy on the basis of its viewpoints. See *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191 (2024).

100. CAIR's protected advocacy necessarily involves interaction and coordination with members of the public and with other organizations in order to engage in public education, interfaith work, and civil rights expression.

101. The First Amendment injury asserted here does not depend on proof of downstream effects or third-party responses. Where a state executive action, by its structure, function, and terms, conditions access to government benefits on association with a disfavored speaker and thereby reasonably conveys the risk of adverse government action, the resulting burden on speech and association—imposed because of the speaker's viewpoints—is immediate and present at the moment the action—here the Executive Order—is taken.

102. Florida law defines the concept of "material support or resources" broadly, Fla. Stat. § 775.33(1)(c), making its impact on Plaintiffs' protected expression yawning.

103. The Executive Order's viewpoint-based targeting is confirmed by Defendant DeSantis's public statements responding to Plaintiffs' intent to challenge the Executive Order, including his assertion that litigation would provide an "opportunity" to subject a civil rights organization to government scrutiny unrelated to any lawful enforcement purpose. These statements demonstrate that the Executive Order was issued, at least in substantial part, because of hostility to Plaintiffs' protected advocacy.

104. The Executive Order goes far beyond expression: it attaches legal penalties and creates binding disqualifications on the basis of viewpoint by categorically excluding CAIR from government-administered programs and directing law enforcement action against Plaintiffs.

105. Going even further, the Executive Order extends this exclusionary framework to association with CAIR itself by conditioning access to government benefits on whether a person or entity is deemed to have provided property or services to CAIR. By design, this structure burdens and deters association with CAIR's protected advocacy on the basis of its viewpoints.

106. Defendant has no legitimate governmental interest in deterring or burdening Plaintiffs' speech, and the Executive Order is not narrowly tailored to any compelling state interest. Instead, the Executive Order operates, by its structure, as a mechanism to burden and discredit an American civil rights organization whose advocacy and religious viewpoints the Defendant opposes.

107. Because Executive Order 25-244 was issued in response to and to deter Plaintiffs' protected expression and because it imposes burdens based on the content and viewpoint of Plaintiffs' speech, it violates the First Amendment.

108. The Executive Order's instruction to undertake "lawful measures" does not mitigate its unconstitutionality; it simply directs agencies to enforce an unlawful viewpoint-based designation, even if they do so through authorized means.

109. Plaintiffs are entitled to declaratory and injunctive relief prohibiting the enforcement, implementation, publication, or continued maintenance of the Executive Order.

## COUNT IV

## FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM
**(Facial Challenge)**

110. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

111. The Fourteenth Amendment prohibits states from depriving individuals or organizations of liberty or property interests without notice and an opportunity to be heard. This protection applies when the government imposes legal classifications, burdens, or consequences that affect an individual's or organization's ability to operate, associate, or participate in public life. The Due Process Clause is violated when the government imposes a binding classification that alters legal rights or eligibility without any procedural safeguards.

112. The Executive Order deprives Plaintiffs of several fundamental rights, including the First Amendment rights of free speech, association, and to petition the government. It further deprives Plaintiffs of state-created rights, including the right to seek any "contract, employment, funds, or other benefit or privilege" with local and state governments.

113. The Executive Order further imposes a self-executing designation and exclusionary framework that alters Plaintiffs' legal status.

114. The Due Process Clause is violated when the government imposes a binding classification that alters legal rights or eligibility without any procedural safeguards.

115. The Executive Order contains no notice, no standards, no criteria, no evidentiary process, no opportunity to respond, and no mechanism for review or removal of the designation. Plaintiffs were provided with no advance notice of any allegations, no opportunity to be heard to contest the designation, and no procedural safeguards whatsoever.

116. Florida law provides no statutory authority or procedural framework permitting Defendant to designate domestic nonprofit organizations as "terrorist organizations," nor does it set forth any process for evaluating, challenging, or reviewing such a designation. The Executive Order therefore imposes a state-driven classification absent any legislative process or due process protection.

117. A binding governmental classification that alters legal status and eligibility for participation in public programs implicate protected liberty interests, even absent any adjudication of criminal conduct.

118. The Executive Order's lack of procedural safeguards is especially constitutionally significant because the Defendant's unilateral classification carries law enforcement implications. The directive that state agencies "undertake all lawful measures" against Plaintiffs creates a credible threat of state action that Plaintiffs cannot contest, navigate, or seek relief from through any established process.

119. When the government creates a binding or consequential designation that alters legal rights or status, the Due Process Clause requires, at minimum, notice and an opportunity to be heard. The Executive Order provides neither.

120. Because the Executive Order creates and imposes legal consequences without notice, without a factual basis, without legislative authority, and without any opportunity for Plaintiffs to be heard, it violates the procedural guarantees of the Fourteenth Amendment.

121. Plaintiffs are therefore entitled to declaratory and injunctive relief prohibiting the enforcement, implementation, publication, or continued maintenance of the Executive Order.

## VI.    **PRAYER**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor and grant the following relief:

1.    A declaration pursuant to 28 U.S.C. § 2201 that Executive Order 25-244 is unlawful, unconstitutional, void, and of no force or effect.

2.    A temporary restraining order prohibiting Defendant, his agents, and all persons acting in active concert or participation with him from enforcing, implementing, publishing, or otherwise relying on Executive Order 25-244.

3.  A preliminary injunction prohibiting Defendant, his agents, and all persons acting in active concert or participation with him from enforcing, implementing, publishing, or otherwise relying on Executive Order 25-244 for the duration of this litigation.

4.  A permanent injunction prohibiting Defendant, his agents, and all persons acting in active concert or participation with him from enforcing, implementing, publishing, or otherwise relying on Executive Order 25-244.

5.  An order directing that:

    a.  Executive Order 25-244 be rescinded and withdrawn;

    b.  Any state-administered classifications, labels, or listings created or imposed pursuant to Executive Order 25-244—including the Executive Order's designation of Plaintiffs as a 'terrorist organization'—be removed from all state publications, databases, websites, or public-facing materials that give legal effect to the Executive Order; and,

    c.  No further reliance may be placed on those statements for any governmental purpose.

    d.  An order declaring that the Defendant lacks authority under Florida law or the U.S. Constitution to create or impose terrorism designations upon domestic nonprofit organizations.

6.  An award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law; however Plaintiffs do not seek money damages.

7.   Such other and further relief as the Court deems just, proper, and consistent with the

Constitution and laws of the United States.

Respectfully submitted,

/s/ Omar Saleh
Omar Saleh (FBN: 91216)
        (833) 224-7352
        osaleh@cair.com
CAIR-FLORIDA
8076 North 56th Street
Tampa, Florida 33617

Lena F. Masri (D.C. Bar No. 1000019)
        *Pro hac vice pending*
        lmasri@cair.com
Gadeir I. Abbas (VA Bar No. 81161; not licensed
in D.C.)
        *Pro hac vice pending*
        gabbas@cair.com
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave SE
Washington, D.C. 20003
(202) 742-6420
ldf@cair.com

Charles D. Swift (Texas Bar No. 24091964)
        *Pro hac vice pending*
        cswift@clcma.org
MUSLIM LEGAL FUND OF AMERICA
100 N. Central Expy. Suite 1010
Richardson, Texas 75080
(972) 914-2507

Arthur Ago (D.C. Bar No. 463681)
        *Pro hac vice pending*
        (202) 961-9325
        arthur.ago@splcenter.org

34

Aaron S. Fleisher (N.Y. Bar Number 4431052; not
licensed in D.C.)
        *Pro hac vice pending*
        (202) 536-9719
        aaron.fleisher@splcenter.org
SOUTHERN POVERTY LAW CENTER
1101 17th St NW Ste. 550
Washington, DC 20036
(202) 971-9205 (fax)

Scott D. McCoy (FL Bar No. 1004965)
        *Admission pending*
SOUTHERN POVERTY LAW CENTER
2 S. Biscayne Blvd. Ste. 3200
Miami, FL 33131
Tel. (786) 347-2056
scott.mccoy@splcenter.org

Huey Fischer García (Louisiana Bar No. 39571)
        *Pro hac vice pending*
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama 36104
(504) 884-7680
huey.fischergarcia@splcenter.org

Shereef H. Akeel (MI Bar No. P54345)
        *Pro hac vice pending*
        shereef@akeelvalentine.com
Samuel Simkins (MI Bar No. 81210)
        *Pro hac vice pending*
        sam@akeelvalentine.com
AKEEL & VALENTINE, PLC
888 W. Big Beaver Rd., Ste. 350
Troy, Michigan 48084
 (248) 269-9595