# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

CAIR-FOUNDATION, INC. and
CAIR-FLORIDA, INC.,

      *Plaintiffs*,

v.

RONALD DESANTIS, in his official
capacity as Governor, State of Florida,

      *Defendant*.

Case No. 4:25-cv-00516-MW-MJF

_____/

## CAIR-FOUNDATION, INC.'S
## MOTION FOR PRELIMINARY INJUNCTION
## AND SUPPORTING MEMORANDUM

# **TABLE OF CONTENTS**

Motion for Preliminary Injunction ................................................................4

Request for Oral Argument .........................................................................4

Certificate of Conferral ..............................................................................4

Memorandum of Law ...................................................................................5

Preliminary Statement .................................................................................5

Background ..................................................................................................6

Argument .....................................................................................................9

I.    CAIR is substantially likely to establish standing for purposes of a preliminary injunction. ..........................................................................10

II.   CAIR is substantially likely to succeed on the merits of its First Amendment claims. ..................................................................................14

    A.    CAIR is substantially likely to succeed on the merits of its Free Speech claim. ..........................................................................15

        1.    Defendant is excluding CAIR from government benefits based on Plaintiff's viewpoint. .............................15

        2.    Defendant is retaliating against CAIR for its protected speech. ..................................................................................18

            a.    CAIR's speech is protected. .....................................19

            b.    CAIR is suffering adverse action that would likely deter a person of ordinary firmness from engaging in such speech. ..........................................20

            c.    There is a causal relationship between Defendant's Executive Order and CAIR's protected speech. .....................................................21

        3.    Defendant is punishing and suppressing CAIR's speech by coercing third parties not to materially support Plaintiff. .........................................................................24

    B.    CAIR is substantially likely to succeed on the merits of its Right to Petition claim. ................................................................27

    C.    CAIR is substantially likely to succeed on the merits of its Free Association claim. ...............................................................30

III.   CAIR will suffer irreparable injury unless an injunction is issued. .........33

IV.    The equities favor CAIR and the injunction would serve the public interest. .................................................................................34

Request to Waive Rule 65(c) Security .....................................................35

Conclusion ................................................................................................35

Certificate of Word Count .......................................................................39

Certificate of Service ...............................................................................40

## MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff CAIR-Foundation, Inc. ("CAIR") moves for a preliminary injunction enjoining Defendant Governor Ronald DeSantis from enforcing, implementing, or otherwise giving effect to Executive Order 25-244, including by ordering Defendant to strike CAIR from the Executive Order for the duration of the injunction and enjoining any enforcement, implementation, or reliance upon the designation during the pendency of this action, based on claims brought in CAIR's First Amended Complaint, Doc. 21. CAIR respectfully requests the Court waive the security requirement in Rule 65(c).

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(K), CAIR respectfully requests oral argument on this motion, which it estimates would take two hours.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(B), the undersigned counsel states that on January 20, 2026, Plaintiff's counsel emailed the Florida Attorney General's Office to notify it that this motion would be filed and to request to meet and confer. At the time of this filing, Plaintiff's counsel has not received a response, and no attorney for Defendant has entered an appearance in this matter.

# MEMORANDUM OF LAW

# PRELIMINARY STATEMENT

This case is about Defendant's assault on CAIR's constitutionally protected efforts to advance and achieve its faith-driven mission as a nonprofit civil rights and advocacy organization. On December 8, 2025, Defendant issued Executive Order 25-244, titled "Protecting Floridians from Radical Islamic Terrorist Organizations," ("the Executive Order"), which, without notice or process, unilaterally designates CAIR in perpetuity as a "terrorist organization" without any statutory standards, temporal limitation, or mechanism for notice or review. The Executive Order, based solely on its terrorist organization designation, imposes immediate and self-executing legal consequences and penalties on CAIR, conditions third-party access to government benefits on disassociation from CAIR, alters its legal status, excludes it from opportunities otherwise available to nonprofit organizations in Florida, and impermissibly restricts or burdens its ability to carry out its faith-driven mission through lawful and peaceful advocacy and expressive activity protected by the First Amendment.

The Executive Order targets CAIR's constitutionally protected advocacy and expressive activity, and it operates to burden and suppress that activity by design. And the Executive Order not only infringes upon CAIR's protected activity, but it also punishes third parties who have associated with CAIR and coerces those who

otherwise would do so in the future into disassociating from CAIR, for fear of being labeled as giving material support to a terrorist organization and incurring the same penalties.

For all these reasons—because it operates as a viewpoint-based exclusion and coercive blacklist that burdens protected speech and association—the Executive Order violates several of CAIR's constitutional rights guaranteed by the First Amendment, namely the rights to free speech, free association, and petition. From the moment Defendant issued the unlawful Executive Order, CAIR has suffered ongoing irreparable constitutional injury by operation of law and will continue to do so unless and until it is enjoined.

Therefore, this Court should grant Plaintiff's motion for a preliminary injunction enjoining Defendant from enforcing, implementing, or otherwise giving effect to the Executive Order, including by ordering Defendant to strike CAIR from the Executive Order for the duration of the injunction and prohibiting Defendant from enforcing, implementing, or relying upon the designation in any manner.

## **<u>BACKGROUND</u>**

CAIR is America's largest Muslim civil rights and advocacy nonprofit organization, with a faith-driven mission to enhance the public's understanding of Islam, protect and vindicate civil rights, promote justice, and empower American Muslims. Declaration of Manal Fakhoury on Behalf of CAIR ¶¶ 4-5 (Jan. 22, 2026) ("CAIR

Decl."). CAIR is an expressive association through which CAIR engages in constitutionally protected advocacy, education, and civic participation in Florida. CAIR has consistently espoused a message of nonviolence and engages in advocacy on matters of public concern, including civil rights and Palestinian human rights.

Following CAIR's public advocacy and criticism of certain state actions, Defendant issued Executive Order 25-244, titled "Protecting Floridians from Radical Islamic Terrorist Organizations," which designates CAIR as a "terrorist organization." *See* Ex. 1 to Declaration of Ahmed Soussi (Jan. 22, 2026) ("Soussi Decl."); CAIR Decl. ¶ 21; Declaration of Wilfredo Ruiz on Behalf of CAIR-Florida ¶ 19 (Jan. 22, 2026) ("CAIR-Florida Decl."). The Executive Order punishes CAIR and any individuals or businesses known to have provided "material support or resources" to CAIR by preventing it from receiving any contract, employment, funds, or other benefit or privilege ("Benefits") from all Florida Executive and Cabinet Agencies ("State Agencies"), any entity regulated by State Agencies ("Regulated Entity"), or from any County or Municipality of the State ("Local Governments") (and from all three together, "Government Benefits"). Soussi Decl. Ex. 1 § 2. Further, the Executive Order directs the Florida Department of Law Enforcement ("FDLE") and the Florida Highway Patrol ("FHP") to take unspecified measures with respect to CAIR in Florida. *Id*.

The Executive Order was issued against the backdrop of CAIR's ongoing

public advocacy and criticism of state actions, including litigation and public opposition to policies advanced by Defendant. The Executive Order singles out CAIR by name; imposes adverse legal consequences on CAIR and those who associate with it, including Students for Justice in Palestine ("SJP"), whom CAIR represented in a lawsuit against Defendant and who criticized him for endorsing Florida House Bill 119 in the upcoming general legislative session, CAIR Decl. ¶ 19; CAIR-Florida Decl. ¶ 17; coerces third parties into disassociating with CAIR; and allows for an investigation of CAIR that would otherwise be improper.

As intended by the Executive Order's express terms, Defendant's unlawful designation of CAIR has had immediate detrimental effects. For example, CAIR was set to launch a civil rights podcast produced by a Florida-based company, but that company withdrew from the proposed agreement because of the Executive Order. CAIR Decl. ¶¶ 26-27.

The Executive Order has impaired CAIR's ability to engage with government entities in furtherance of its mission. CAIR Decl. ¶ 28; CAIR-Florida Decl. ¶ 21. For example, CAIR applied to reserve a room at the Florida State Capitol for its 2026 Muslim Day in February, but that application was denied. CAIR-Florida Decl. ¶ 27. In addition, CAIR's planned outreach to Florida mosques and community centers for Ramadan 2026 has been placed on hold because third-party organizations have expressed concerns regarding association with CAIR following the issuance of the

Executive Order. CAIR Decl. ¶ 29; CAIR-Florida Decl. ¶ 23

These harms flow directly from Defendant's unlawful activity. By issuing the Executive Order, Defendant violated CAIR's First Amendment right to free speech by discriminating against CAIR based on its viewpoint; retaliating against CAIR for past speech and expressive activity; and coercing third parties to suppress CAIR's speech. Defendant furthermore violated CAIR's First Amendment right to petition the government and its freedom of association. The harms, moreover, will continue absent an injunction.

## **ARGUMENT**

CAIR seeks a preliminary injunction enjoining Defendant from enforcing the Executive Order as it relates to CAIR pending final judgment, including by ordering Defendant to strike CAIR from the Executive Order for the duration of the injunction. "A preliminary injunction is appropriate only when the moving party can show that: (1) 'it has a substantial likelihood of success on the merits'; (2) it will suffer 'irreparable injury' unless an 'injunction issues'; (3) this 'threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party'; and (4) 'the injunction would not be adverse to the public interest.'" *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1277 (11th Cir. 2024) (quoting *Otto v. City of Boca Raton*, 981 F.3d 854, 860 (11th Cir. 2020)).

All four factors are satisfied here. First, CAIR is likely to succeed on the

merits because the Executive Order violates the First Amendment of the U.S. Constitution. Second, CAIR is suffering irreparable harm and will continue to do so unless and until the Executive Order is enjoined, including by ordering Defendant to strike CAIR from the Executive Order for the duration of the injunction. Third, the substantive injuries faced by CAIR far outweigh the State's asserted public-safety justification. Finally, an injunction would serve the public interest by restoring and preserving rights to free speech, free association, petition and the rule of law, and because enforcement of an unconstitutional law would disserve the public interest.

## I.    CAIR is substantially likely to establish standing for purposes of a preliminary injunction.

Because standing is a threshold jurisdictional issue on which CAIR bears the burden, CAIR starts there. "To have standing, 'a plaintiff must have suffered or be imminently threatened with a concrete and particularized "injury in fact" that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision.'" *Dream Defs. v. Gov. of the State of Fla.*, 57 F.4th 879, 886 (11th Cir. 2023), *certified question answered sub nom. DeSantis v. Dream Defs.*, 389 So. 3d 413 (Fla. 2024) (quoting *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1303-04 (11th Cir. 2017) (en banc)).

CAIR suffered "injury in fact" in the form of contractual harm when a Florida production company withdrew from a production agreement with CAIR for a new podcast. *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004)

("physical, economic, reputational, contractual, or even aesthetic" harm constitutes "cognizable harm" for injury in fact); CAIR Decl. ¶¶ 26-27. Because the benefit of the contract included more immediate and future speech opportunities for CAIR's advocacy, the injury from the loss of the contract also constitutes future harm. *Id*. The company identified the Executive Order as the cause of its withdrawal from the agreement, explaining that it had been advised against working with CAIR due to the Executive Order's designation of CAIR and the risk that association with CAIR could subject the company to adverse consequences under the Executive Order. *Id*. CAIR's injury from the loss of the contract would be remedied by the requested declaratory and prospective injunctive relief.

CAIR also has suffered economic harm in the form of monetary loss, which "is a well-established injury for purposes of Article III standing." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019) (citing *Chevron Corp. v. Donziger*, 833 F.3d 74, 120 (2d Cir. 2016)). CAIR suffered monetary loss when payments owed to it pursuant to a settlement of a court-ordered award of attorneys' fees and costs were affirmatively withheld from CAIR following issuance of the Executive Order. CAIR Decl. ¶ 23. On January 7, 2026, opposing counsel in that case expressly invoked the Executive Order's Designation of CAIR and its "Material Support" Provision as the bases for withholding payment and seeking judicial approval to suspend further payments. CAIR Decl. ¶ 23; *see also* Mot. to Stay,

*Illoominate Media, Inc. v. CAIR Fla.*, No. 19-cv-81179 (S.D. Fla.), Doc. 179. As a result of the Executive Order, CAIR faces an ongoing and imminent deprivation of funds to which it is legally entitled.

In addition to having been deprived of those funds, CAIR has had to, and will continue to be forced to, divert staff time and organizational resources away from its ordinary programming to respond to the stay request and to seek recovery of the sequestered payments, which also constitutes an injury in fact. *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1164-66 (11th Cir. 2008); CAIR Decl. ¶ 32. CAIR's injury from the ongoing deprivation of the funds and the ongoing diversion of resources would be remedied by a favorable decision granting CAIR its requested declaratory and prospective injunctive relief because the challenged provisions of the Executive Order would no longer be operative.

 CAIR is also imminently threatened with harm sufficient to establish injury in fact. "A threat of future injury is sufficient to establish standing when 'the threatened injury is certainly impending or there is a substantial risk that the harm will occur.'" *Dream Defs.*, 57 F.4th at 886 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). CAIR, in partnership with CAIR-Florida, intends to participate in the 2026 Muslim Day advocacy at the Florida legislature during the first week of February. CAIR Decl. ¶ 29. CAIR faces the future threat of injury from being denied access to the Florida Capitol for Muslim Day advocacy. CAIR faces a

substantial risk of exclusion from the Florida State Capitol for Muslim Day advocacy because the Executive Order automatically conditions access to government facilities and benefits on the challenged designation. And because the Executive Order's prohibition against CAIR's receiving any Government Benefit based on the designation is automatic, the substantial risk of future harm to CAIR is continuous. A favorable decision on CAIR's claims and relief declaring the Executive Order unconstitutional and enjoining Defendant from enforcing it against CAIR and striking CAIR from it would redress future harms.

CAIR also faces a substantial risk of recurring future injury, as evidenced by how third parties have already responded to the Executive Order, resulting in harm to CAIR. "Past injury from alleged unconstitutional conduct … constitute[s] evidence bearing on whether there is a real and immediate threat of repeated injury which could be averted by the issuing of an injunction." *Lynch v. Baxley*, 744 F.2d 1452, 1456 (11th Cir. 1984) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). In addition to the two examples of past harm to CAIR from the Executive Order, CAIR-Florida intended on conducting civic outreach to attendees of a mosque during Ramadan because of the expected increased presence of Muslims, but the mosque declined its request due to the Executive Order. CAIR-Florida Decl. ¶¶ 22-23. CAIR-Florida will lose the opportunity to speak and associate with these attendees.

It is reasonable to infer from this evidence that the Executive Order will continue to operate to deter third parties from associating with CAIR, including prompting the suspension of existing relationships and refusal to enter into new ones, thereby creating a substantial risk of ongoing and imminent harm to CAIR. That harm includes interference with CAIR's planned Ramadan activities and Muslim Day at the Capitol. These imminent and continuing injuries flow directly from the Executive Order's designation and sanctions and would be remedied by declaratory and prospective injunctive relief enjoining its enforcement.

Therefore, CAIR is substantially likely to demonstrate that it has standing with respect to each of its First Amendment claims.

## II.  CAIR is substantially likely to succeed on the merits of its First Amendment claims.

"A substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain*, success." *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 n.12 (11th Cir. 2020) (quoting *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005)). "[T]he word 'substantial' does not add to the quantum of proof required to show a likelihood of success on the merits." *Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352, 1355 n.2 (11th Cir. 1983). CAIR is substantially likely to succeed on its claims that the Executive Order violates its First Amendment right to (A) free speech, (B) petition, and (C) free association.

14

**A.     CAIR is substantially likely to succeed on the merits of its Free Speech claim.**

The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits actions by the government "abridging the freedom of speech." U.S. Const. amend. I; *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Defendant's Executive Order is abridging CAIR's freedom of speech in at least three ways: (1) by restricting CAIR's speech or receipt of Government Benefits based on the content and viewpoint of its speech; (2) by retaliating against CAIR for its protected speech; and (3) by coercing third parties not to cooperate with CAIR, thereby suppressing and punishing its speech on Defendant's behalf. CAIR need only meet the requisite showing on one of these grounds to show that it is substantially likely to succeed on the merits of its Free Speech claim. *See, e.g.*, *Pine Ridge Recycling, Inc. v. Butts Cnty.*, 864 F. Supp. 1338, 1342 (M.D. Ga.), *amended*, 886 F. Supp. 851 (M.D. Ga. 1994).

**1.     Defendant is excluding CAIR from government benefits based on Plaintiff's viewpoint.**

"At the heart of the First Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society.'" *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024). "Viewpoint discrimination is … 'the greatest First Amendment sin.'" *Moms for Liberty - Brevard Cnty., Fla. v. Brevard Pub. Schs.*, 118 F.4th 1324, 1332 (11th Cir. 2024) (quoting

15

*Honeyfund.com*, 94 F.4th at 1277). "Discrimination against speech because of its message is presumed to be unconstitutional." *Id.* (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995)); *Jarrard v. Sherrif of Polk Cnty.*, 115 F.4th 1306, 1318-19 (11th Cir. 2024) (viewpoint regulation of speech presumptively invalid and must at the very least satisfy strict scrutiny). "[T]he 'government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" *Moms for Liberty*, 118 F.4th at 1332 (quoting *Rosenberger*, 515 U.S. at 829). "[S]uspicion that viewpoint discrimination is afoot is at its zenith when the speech restricted is speech critical of the government, because there is a strong risk that the government will act to censor ideas that oppose its own." *Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1280 (11th Cir. 2025) (quoting *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 86 (1st Cir. 2004)). Restrictions on core political speech are subject to strict scrutiny, *Hetherington v. Madden*, 640 F. Supp. 3d 1265, 1274 (N.D. Fla. 2022) (citing *Weaver v. Bonner*, 309 F.3d 1312, 1319 (11th Cir. 2002)), and content-based restrictions that target speech based on its communicative content are presumptively unconstitutional, *id.* at 1273 (citing *Reed*, 576 U.S. at 163).

The government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). "For if the government

could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited," allowing the government to 'produce a result which (it) could not command directly.'" *Id.* (quoting *Speiser v. Randall*, 357 U.S. 513, 526 (1958)).

Defendant uses the Executive Order to punish and restrict, both directly and indirectly, CAIR's speech and expressive positions on matters of public concern, including human rights in Palestine, the interpretation of Islamic tenets, and the civil rights, treatment, and well-being of Muslim Americans across Florida.

The Executive Order directly punishes and restricts CAIR's speech and expressive activities. On its face, the Executive Order denies CAIR access to any Government Benefits and to state, county, and municipal public fora. *See* Soussi Decl. Ex. 1 §§ 1-2. Considering the Executive Order's definition of a terrorist organization in its first whereas clause and its stated public-safety rationale, Section 1's designation of CAIR as a "terrorist organization" operates to deny CAIR access to government buildings and facilities. Section 2's prohibition on CAIR receiving any Government Benefits is so broad as to prevent it, for example, from reserving public library conference rooms for Know Your Rights trainings, public parks for rallies, or public school or University auditoriums for town halls.

By imposing the broadest possible unfavorable treatment upon a group advancing disfavored viewpoints, the Executive Order fails strict scrutiny. To survive

this standard and overcome the presumption of unconstitutionality, Defendant must show that the Executive Order "furthers a compelling interest and is narrowly tailored to achieve that interest." *Fed. Elec. Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 464 (2007).

Even assuming Defendant has a compelling interest that is furthered by the Executive Order, it fails the narrow tailoring test and cannot survive strict scrutiny. The Executive Order's prohibition on CAIR receiving "any" Benefits is not narrowly tailored, nor are the categories of Benefits themselves. Moreover, the categories of entities, *i.e.*, State Agencies, Regulated Entities, and Local Governments, from which those Benefits are denied and the universe of entities within each of those categories are expansive as well, not narrowly tailored. The Executive Order covers 22 State Agencies, 67 counties, more than 400 municipalities, and an unknown, but certainly vast, number of Regulated Entities from which Benefits are prohibited. Finally, the Executive Order's "Material Support" provision is not narrowly tailored because it lacks any temporal limitation, scienter requirement, or privity constraint, and instead sweeps in a boundless range of expressive and associational conduct.

### 2.    Defendant is retaliating against CAIR for its protected speech.

"'As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected

speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). "If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Id.* (quoting *Hartman*, 547 U.S. at 256).

"To make out a First Amendment retaliation claim, [CAIR has] to show that '(1) [its] speech was constitutionally protected; (2) [it] suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech; and (3) there was a causal relationship between the adverse conduct and the protected speech.'" *Jarrard*, 115 F.4th at 1315-16 (quoting *Brannon v. Finkelstein*, 754 F.3d 1269, 1274 (11th Cir. 2014)); *see also Wall-DeSousa v. Fla. Dep't of Highway Safety & Motor Vehicles*, 691 Fed. App'x 584, 590 (11th Cir. 2017). CAIR is likely to make those showings.

### a.    CAIR's speech is protected.

CAIR satisfies this element. CAIR's public expression of its views and opinions on matters of public policy, civil rights, and human rights during its advocacy and education efforts is core constitutionally protected speech under the First Amendment. *See, e.g.*, *Wall-DeSousa*, 691 Fed. App'x at 590 (speech on matter of public concern during televised interview protected); *Huggins*, 151 F.4th at 1281 (speech before public school board meeting protected); *Bennett v. Hendrix*, 423 F.3d

1247, 1250 n.3 (11th Cir. 2005), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) (speech and advocacy in support of county referendum protected); *see also* CAIR Decl. ¶¶ 6-20 (detailing examples of Plaintiff's constitutionally protected speech); CAIR-Florida Decl. ¶¶ 6-18 (same).

### b. CAIR is suffering adverse action that would likely deter a person of ordinary firmness from engaging in such speech.

"[W]hether the allegedly retaliatory conduct 'would likely deter a person of ordinary firmness from the exercise of First Amendment rights' … presents an objective question." *Huggins*, 151 F.4th at 1281 (quoting *Bailey v. Wheeler*, 843 F.3d 473, 481 (11th Cir. 2016)). "[A] First Amendment retaliation claim can use any sort of adverse action at its second element." *Hall v. Merola*, 67 F.4th 1282, 1294 (11th Cir. 2023) (battery); *see also Huggins*, 151 F.4th at 1281 (public humiliation and damage to reputation).

Defendant's issuance of the Executive Order qualifies as retaliatory conduct that meets the objective "person of ordinary firmness" standard. Defendant—acting in his official capacity as Governor and invoking the authority of the State through the Executive Order—has publicly, and with the imprimatur of the state through the Executive Order, branded CAIR as a "terrorist organization," one of the most odious and stigmatizing labels one could apply. Courts have found that similar but less severe descriptions meet the standard. *Cf. Bennett*, 423 F.3d at 1254-55 (flyers

depicting the plaintiffs as criminals terrorizing the county); *Bailey*, 843 F.3d at 477, 481-82 (be-on-the-lookout advisory describing plaintiff as a "loose cannon" and danger to law enforcement and advising officers to "act accordingly"). And, while the Executive Order's Designation alone meets the ordinary-firmness standard, its prohibition on CAIR—and anyone known to have provided material support to it—from receiving any Government Benefits independently and cumulatively meets the standard. CAIR, therefore, has met the second requirement for retaliation.

### c.    There is a causal relationship between Defendant's Executive Order and CAIR's protected speech.

"In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011) (citing *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008)). Defendant's improper purpose and subjective motivation may be established directly from the face of the Executive Order and Defendant's public statements or inferred from objective indicia and circumstantial evidence. *See Huggins*, 151 F.4th at 1282.

CAIR meets the causation element. The Executive Order was issued because of CAIR's protected speech, including its public advocacy and criticism of Defendant on matters of public policy, civil rights, and human rights. That causal relationship is apparent from the text, timing, and targeting of the Executive Order and from Defendant's own public statements.

A comparison of Defendant's and CAIR's public statements and policy positions demonstrates Defendant's antagonism toward CAIR's viewpoints, beliefs, and opinions, and naturally, its advocacy in support of them. *See* Soussi Decl. Ex. 2 (Defendant publicly described all Palestinian refugees fleeing Gaza as antisemitic); Soussi Decl. Ex. 3 (Defendant publicly trivialized fears about and efforts to stem anti-Muslim prejudice as "so-called Islamophobia," said anti-Muslim harassment in the U.S. was not real, and portrayed Muslim civil rights advocacy as suspect); Soussi Decl. ¶ 7 (Defendant touted on presidential campaign website unequivocal support for Israel and his attempt to ban pro-Palestinian SJP chapters); Soussi Decl. Ex. 13 (In October 2025, Defendant endorsed Florida House Bill 119 "No Shari'a Act" ("HB 119"), an anti-Muslim legislative proposal pre-filed for consideration during upcoming 2026 legislative session, which CAIR opposes and publicly criticized him for supporting); Soussi Decl. Ex. 14 (anti-sharia post on X); Soussi Decl. Ex. 17 (post on X announcing the Executive Order inaccurately saying CAIR designated as "foreign terrorist organizations"); Soussi Decl. Ex. 15 (anti-sharia post on X).

In addition, Defendant's prior retaliation against protected pro-Palestinian speech he disliked and the fact that CAIR defended the students targeted by his retaliation in a federal lawsuit against him, supports an inference of a causal relationship between the Executive Order and CAIR's protected speech.

In October 2023, Defendant called for pro-Palestinian student groups, namely

SJP at two Florida universities, to be banned because they engaged in protected pro-Palestinian advocacy and criticism of Israeli government policies that harm Palestinian human rights, views Defendant dislikes, even going so far as to imply that they provided material support to a foreign terrorist organizations. Soussi Decl. Ex. 4. In response to the protected speech, the Chancellor of the State University System, in consultation with Defendant, heeded Defendant's call to ban SJP chapters and issued a directive to university presidents, referencing Florida's felony material support law and concluding that the SJP student chapters must be deactivated. CAIR sued Defendant (and others) on behalf of one of the SJP chapters, seeking injunctive relief to protect students' First Amendment rights without fear of government retaliation. CAIR Decl. ¶ 19; Soussi Decl. Ex. 5.

Defendant's prior efforts to suppress disfavored constitutionally protected pro-Palestine speech—including his call to ban SJP chapters and the State's subsequent directive invoking "material support" rationales—are closely analogous to the structure and rationale of the Executive Order issued because of CAIR's protected speech. CAIR's prior litigation against Defendant on behalf of an SPJ chapter further supports that inference of causality.

The temporal proximity between CAIR's protected speech and Defendant's issuance of the Executive Order supports causation. On October 9, 2025, Defendant publicly endorsed HB 119, stating, "Sharia law has no place in the USA and is

incompatible with the Constitution." Soussi Decl. Ex. 12. On October 14, 2025, as part of its civil rights advocacy, CAIR publicly opposed HB 119 and Defendant's endorsement of it in a press release. CAIR sharply criticized Defendant's support for the bill, including by characterizing HB 119 as a discriminatory and anti-Muslim measure, condemning Defendant's endorsement as harmful to religious freedom, and calling on Florida lawmakers and the public to reject the bill. The release expressly criticized Defendant personally and politically, challenged his priorities and leadership, and urged continued public opposition. CAIR Decl. ¶ 12; Soussi Decl. Ex. 13.

Less than two months after CAIR's public opposition to HB 119, and approximately one month before the start of the 2026 legislative session in which HB 119 would be considered, Defendant issued the Executive Order. That close temporal proximity supports an inference that the Executive Order was issued in response to CAIR's protected speech and has impaired its free speech, free association, and petition rights.

Because CAIR meets all three of the elements to establish that Defendant issued the Executive Order in retaliation for CAIR's protected speech, it has shown that it is substantially likely to succeed on the merits of its Free Speech claim.

### 3. Defendant is punishing and suppressing CAIR's speech by coercing third parties not to materially support Plaintiff.

Another ground for issuing the requested injunction is because the Executive

Order independently violates the First Amendment as prohibited coercion. "[A] government entity's 'threat of invoking legal sanctions and other means of coercion' against a third party 'to achieve the suppression' of disfavored speech violates the First Amendment." *NRA*, 602 U.S. at 180 (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963)). Defendant's Executive Order in this case does exactly that.

In *Floridians Protecting Freedom, Inc. v. Ladapo*, this Court relied on *Bantam Books* and *NRA* in applying strict scrutiny to a coercion claim (as well as a viewpoint discrimination claim), while noting that "the Supreme Court has not clearly identified the standard of review applicable to these cases." 754 F. Supp. 3d 1165, 1175, 1176 n.6 (N.D. Fla. 2024) (granting motion for temporary restraining order). Whether analyzed under *Bantam Books*, *NRA*, or *Ladapo*, the Executive Order cannot withstand First Amendment scrutiny.

The Executive Order's "Material Support" Provision coerces third parties to suppress or punish speech that Defendant disfavors. *NRA*, 602 U.S. at 180. The "Material Support" Provision withholds any "Government Benefits" from "any person known to have provided material support or resources to" CAIR. Soussi Decl. Ex. 1 § 2. This sanction can reasonably be understood by third parties as a threat to marking them as a known supporter of a terrorist organization and suffering the same deprivation of Government Benefits the Executive Order applies to designated terrorist organizations. *NRA*, 602 U.S. at 189-90, 193.

The threat here comes from the Governor acting and invoking the authority of the State through a public executive order bearing the Great Seal of the State of Florida. *Id*. at 192. Such an order is reasonably understood to carry the force of law, a perception the Executive Order itself reinforces by asserting that it was issued pursuant to constitutionally derived powers.[1] *Id*. at 194. The severity and scope of the consequences imposed by the Executive Order on third parties who associate with CAIR would cause third parties to understand that the Executive Order's "Material Support" Provision is a serious and credible threat involving a risk not worth taking. Finally, the response of third parties who have ceased or declined to associate with CAIR because of the "Material Support" Provision "is further evidence of its coercive nature." *Ladapo*, 754 F. Supp. 3d at 1176; *see also supra* Section I; CAIR Decl. ¶¶ 23-27; CAIR-Florida Decl. ¶¶ 21-23.

Defendant's purpose in issuing the Executive Order was also "to punish or suppress" CAIR's speech based on its viewpoint, as demonstrated by the Executive Order's text, structure, and context. *See supra* Section II.A.2.c.; *NRA*, 602 U.S. at 191. The Executive Order also does not survive strict scrutiny for the same reason explained above. *See supra* Section II.A.1.

---

[1] Plaintiff maintains that Defendant did not have authority to make the Designation or impose the denial of Government Benefits associated with it.

**B.     CAIR is substantially likely to succeed on the merits of its Right to Petition claim.**

"Among other rights essential to freedom, the First Amendment protects 'the right of the people … to petition the Government for a redress of grievances.'" *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 382 (2011) (quoting U.S. Const. amend. I); *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937). "[T]he right to petition [is] 'one of the most precious of the liberties safeguarded by the Bill of Rights.'" *Lozman v. Riviera Beach*, 585 U.S. 87, 101 (2018) (quoting *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002)). "The right of petition … [includes] the approach of citizens or groups of them to administrative agencies (which are both creatures of the legislature, and arms of the executive) and to courts, the third branch of Government. Certainly the right to petition extends to all departments of the Government." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (citations and quotations omitted); *Guarnieri*, 564 U.S. at 387-88. ("The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives ….").

"It is firmly established that a significant impairment of First Amendment rights must survive exacting scrutiny." *Elrod v. Burns*, 427 U.S. 347, 362 (1976). "This type of scrutiny is necessary even if any deterrent effect on the exercise of First Amendment rights arises, not through direct government action, but indirectly as an unintended but inevitable result of the government's conduct …." *Id*. (quoting

*Buckley v. Valeo*, 424 U.S. 1, 65 (1976)). Defendant must show "a substantial relation between the [impairment] and a sufficiently important governmental interest," and the impairment must also "be narrowly tailored to the government's asserted interest." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 607, 608 (2021) (quoting *Reed*, 561 U.S. at 196).

The Executive Order constitutes a "significant impairment" of CAIR's right to petition. Again, as previously discussed, Section 1's designation of CAIR as a "terrorist organization" has the effect of preventing CAIR from accessing government buildings and facilities of any branch of state government and at any level of government. Not being able to access the places where the government agencies and their employees, elected and appointed officials, and the public engage in the business of government and the democratic process naturally would significantly impair CAIR's right to petition.

The Executive Order on its face prevents CAIR from receiving any contract, employment, funds, or other benefit or privilege from those agencies. This prohibition is so broad that it also effectively cuts off CAIR's ability physically to meet and communicate with State Agencies in person. Access to state government buildings that house State Agencies, use of parking lots at those government buildings, or use of public transit to reach State Agencies are all benefits or privileges that must be denied to CAIR and its employees. State employees would be prevented from

meeting with CAIR in their state offices or in conference rooms because use of those state facilities confers a benefit or privilege on CAIR in violation of the Executive Order. Moreover, if even meeting with a state employee were not considered a benefit or privilege, state employees would be unlikely to meet with CAIR in state facilities (or anywhere else) for fear of providing material support through use of property or providing expert advice or assistance, putting their own employment at risk. The "Material Support" Provision also impairs CAIR's right to petition State Agencies through other common means of modern communication like email, videoconference, or telephone, because no person who provides the property, services, and communications equipment necessary for modern communication will want to risk transacting with CAIR for fear of triggering the "Material Support" Provision and its severe consequences. These significant impairments with respect to petitioning State Agencies would also similarly impair CAIR's ability to petition any branch of state government and county and local governments.

The Executive Order's denial of Government Benefits and "Material Support" Provision also significantly impair CAIR's ability to petition the courts through lawsuits on its own behalf or on behalf of its clients by deterring others from providing essential litigation support services, *e.g.*, court reporting or videography services, and the property and services necessary for modern word processing and communications.

These broad and significant impairments to CAIR's right to petition cannot survive under the required exacting scrutiny. The Executive Order is not narrowly tailored to Defendant's purported interest in preserving the public peace for the same reasons discussed previously. *See supra* Section II.A.1.

## C. CAIR is substantially likely to succeed on the merits of its Free Association claim.

"Freedom of association is a fundamental right [including] 'expressive association.'" *Gary v. City of Warner Robins*, 311 F.3d 1334, 1338 (11th Cir. 2002) (quoting *McCabe v. Sharrett*, 12 F.3d 1558, 1562-63 (11th Cir. 1994)). Expressive association is the "'right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.'" *Id.* at 1338 (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984)). "Protected association furthers 'a wide variety of political, social, economic, educational, religious, and cultural ends,' and 'is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority.'" *Bonta*, 594 U.S. at 606 (quoting *Roberts*, 468 U.S. at 622).

The First Amendment "protects the right of associations to engage in advocacy on behalf of their members." *Smith v. Ark. State Hwy. Emp., Loc. 1315*, 441 U.S. 463, 464 (1979) (citing *NAACP v. Button*, 371 U.S. 415, 428, 443 (1963)). "The government is prohibited from infringing upon these guarantees either by a general

prohibition against certain forms of advocacy or by imposing sanctions for the expression of particular views it opposes." *Id.* (internal citation omitted). "When it comes to the freedom of association, the protections of the First Amendment are triggered not only by actual restrictions on an individual's ability to join with others to further shared goals. The risk of a chilling effect on association is enough, 'because First Amendment freedoms need breathing space to survive.'" *Bonta*, 594 U.S. at 618-19 (brackets omitted) (quoting *Button*, 371 U.S. at 433).

Unless the government can meet its burden to show its restriction on expressive association serves a "compelling state interest, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms," the restrictions are unconstitutional. *Roberts*, 468 U.S. at 623. The Executive Order fails this test.

CAIR engages in expressive association with other people and organizations, including CAIR-Florida, when it engages in advocacy in furtherance of its faith-driven mission. *See* CAIR Decl. ¶¶ 5-20; CAIR-Florida Decl. ¶¶ 6-18. The Executive Order chills this association through its "Material Support" Provision, which conditions eligibility for Government Benefits on refraining from providing "material support or resources" to CAIR. Soussi Decl. Ex. 1. The definition of "material support" is broad and includes providing CAIR with "property," "service," "personnel" or even "expert advice or assistance." Fla. Stat. § 775.33(1)(c); *see also supra* Section

II.B. The consequences of this sweeping definition are wide-ranging.

CAIR-Florida provides material support when it partners with CAIR to create civil rights educational materials; Florida mosques provide material support when they grant access to their property for CAIR to conduct presentations or offer its pro bono legal services; and Florida State Capitol employees provide material support when CAIR reserves a space to host Florida Muslim Day at the Capitol. After providing that "material support," CAIR-Florida, Florida mosques, and the Florida State Capitol employees will now be subject to the Executive Order's denial of Government Benefits on the same basis as entities designated by the Executive Order.

This sweeping restriction on the ability to associate with others to engage in core First Amendment activities requires a compelling interest, while Defendant lacks even a legitimate interest. Although the Executive Order borrows language from Florida criminal statutes, there has been neither an adjudication nor charge of any crime against CAIR in Florida. What is more, even if CAIR had been found guilty of a crime in Florida, the Executive Order would need to survive strict scrutiny and be unrelated to the suppression of ideas. As demonstrated above, the Executive Order was issued in retaliation for CAIR's speech. Additionally, the Executive Order is not narrowly tailored because it punishes association with CAIR. *See Button*, 371 U.S. at 433 (The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions.).

The Supreme Court's decision in *Button* supports CAIR's case. In *Button*, Virginia prevented lawyers from soliciting individuals with certain claims. *Id.* at 423. The NAACP was found to have violated this provision. *Id.* at 424. The Supreme Court reversed this decision and held that the NAACP's solicitation was a protected mode of "expression and association." *Id.* at 428.

The Court explained that the NAACP's solicitation was a means of "achieving the lawful objectives of equality of treatment [for Black Americans] by all government, federal, state and local." *Id.* at 429. The Court acknowledged that Virigina had the right to regulate the legal profession but found that it was not a compelling state interest that justified "limiting First Amendment freedoms." *Id.* at 438. The Court highlighted that Virginia's restriction risked "smothering all discussion" "on behalf of the rights of members of an unpopular minority." *Id.* at 434.

Here, Defendant's Executive Order similarly eliminates CAIR's ability to associate with others to advance Muslim civil rights due to the associating person or organization becoming ineligible to receive Government Benefits. "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *Id.* at 433. Thus, Defendant's Executive Order violates CAIR's First Amendment right to associate.

## III.    CAIR will suffer irreparable injury unless an injunction is issued.

As demonstrated above, CAIR is substantially likely to succeed on its claims

that the Executive Order violates its rights to free speech, petition, and free association. CAIR therefore suffers irreparable injury because the Executive Order imposes ongoing harm in violation of the First Amendment. *Honeyfund.com*, 94 F.4th at 1283 (quoting *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017)). "Such a violation, even for a minimal period of time, constitutes irreparable injury. *Id*. (citing *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271-72 (11th Cir. 2006)). "'[D]irect penalization, as opposed to incidental inhibition, of First Amendment rights constitutes irreparable injury.'" *KH Outdoor*, 458 F.3d at 1272 (citing and quoting *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983)).

## IV.    The equities favor CAIR and the injunction would serve the public interest.

"When the state is a party, the third and fourth [factors] are largely the same." *Scott v. Roberts*, 612 F.3d 1279, 1280 (11th Cir. 2010); *Nken v. Holder*, 556 U.S. 418, 435 (2009) (the balance of the equities and the public interest "factors merge when the Government is the opposing party."). CAIR's First Amendment injury is not outweighed by any threatened harm to Florida because the government has "no legitimate interest" in enforcing an unconstitutional law. Granting a preliminary injunction would preserve the status quo ante while this case is adjudicated and serve the public interest by preventing ongoing constitutional violations. *Honeyfund.com*, 94 F.4th at 1283 (quoting and citing *KH Outdoor*, 458 F.3d at 1272).

## REQUEST TO WAIVE RULE 65(C) SECURITY

Plaintiff respectfully requests that the Court waive any security under Rule 65(c). Courts in the Eleventh Circuit hold wide discretion in the amount of security required and "may elect to require no security at all." *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (citing *City of Atlanta v. Metro Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981)). In its First Amended Complaint, Plaintiff has alleged infringement of its fundamental First and Fourteenth Amendment rights, and, in this motion, has shown a substantial likelihood of success on its First Amendment claims. Defendant faces no risk of monetary loss from the requested injunction, which would merely prevent enforcement of an unconstitutional executive action pending final adjudication. As this Court noted in waiving security in *Florida Decides Healthcare, Inc. v. Boyd*, "'[w]aiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right.'" 790 F. Supp. 3d 1335, 1358 (N.D. Fla. July 8, 2025) (quoting *Complete Angler, LLC v. City of Clearwater*, 607 F. Supp. 2d 1326, 1335 (M.D. Fla. Apr. 9, 2009)).

## CONCLUSION

For these reasons, the Court should grant CAIR's motion and enjoin Defendant from enforcing, implementing, or otherwise giving effect to the Executive Order as it relates to CAIR, including by ordering Defendant to strike CAIR and

prohibiting any reliance on the designation for the duration of the injunction.

Respectfully submitted this 23rd day of January 2026.

> Arthur Ago
>> DC Bar No. 463681
>> Admitted *pro hac vice*
>> (202) 961-9325
>> arthur.ago@splcenter.org
> SOUTHERN POVERTY LAW CENTER
>> 1101 17th St. NW, Ste. 550
>> Washington, DC 20036
>> (202) 971-9205 (fax)
>
> Scott D. McCoy
>> FL Bar No. 1004965
>> scott.mccoy@splcenter.org
>> (786) 347-2056
> SOUTHERN POVERTY LAW CENTER
>> 2 S. Biscayne Blvd., Ste. 3200
>> Miami, FL 33131
>
> /s/ *Ahmed Soussi*
> Ahmed K. Soussi
>> LA Bar No. 38414
>> Admitted *pro hac vice*
>> ahmed.soussi@splcenter.org
>> (334) 213-8303
> Huey Fischer García
>> LA Bar No. 39571
>> Admitted *pro hac vice*
>> huey.fischergarcia@splcenter.org
>> (504) 884-7680
> SOUTHERN POVERTY LAW CENTER
>> 400 Washington Ave.
>> Montgomery, AL 36104
>
> Omar Saleh
>> FL Bar No. 91216
>> (833) 224-7352

osaleh@cair.com
CAIR-FLORIDA
    8076 N. 56th St.
    Tampa, FL 33617

Lena F. Masri
    DC Bar No. 1000019
    Admitted *pro hac vice*
    lmasri@cair.com
Gadeir I. Abbas
    VA Bar No. 81161; not licensed in DC
    Admitted *pro hac vice*
    gabbas@cair.com
CAIR LEGAL DEFENSE FUND
    453 New Jersey Ave. SE
    Washington, DC 20003
    (202) 742-6420
    ldf@cair.com

Charles D. Swift
    TX Bar No. 24091964
    *Pro hac vice* motion forthcoming
    cswift@clcma.org
MUSLIM LEGAL FUND OF AMERICA
    100 N. Central Expy., Ste. 1010
    Richardson, TX 75080
    (972) 914-2507

Shereef H. Akeel
    MI Bar No. P54345
    Admitted *pro hac vice*
    shereef@akeelvalentine.com
Samuel Simkins
    MI Bar No. 81210
    Admitted *pro hac vice*
    sam@akeelvalentine.com
AKEEL & VALENTINE, PLC
    888 W. Big Beaver Rd., Ste. 350
    Troy, MI 48084
    (248) 269-9595

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Local Rule 7.1(F), I certify that this memorandum contains 7,270 words, inclusive of headings, footnotes, and quotations, according to the word-processing system used to prepare it.

Date: January 23, 2026.

/s/ *Ahmed Soussi*
Ahmed K. Soussi

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served this document on Defendant by emailing a copy of this filing to the Florida Office of the Attorney General at oag.civil.eserve@myfloridalegal.com and delivered a copy to Ronald Desantis, Governor of Florida, c/o the Alliance Center, 113 S. Monroe St., Tallahassee, Fl 32301.

Date: January 23, 2026.

/s/ *Ahmed Soussi*
Ahmed K. Soussi