**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**CAIR-FOUNDATION INC.,
and CAIR-FLORIDA, INC.,**

  *Plaintiffs*,

  v.                                                      **Case No. 4:25-cv-00516-MW-MJF**

**RONALD DESANTIS, IN HIS
OFFICIAL CAPACITY AS
GOVERNOR, STATE OF
FLORIDA,**

  *Defendant.*

---

**DECLARATION OF MANAL FAKHOURY
ON BEHALF OF CAIR-FOUNDATION, INC.**

Pursuant to 28 U.S.C. § 1746, I, Manal Fakhoury, declare as follows:

1. I am over the age of 18. I have personal knowledge of the facts set forth in this declaration. If called to testify, I could and would testify competently to these facts under oath.

2. CAIR-Foundation, Inc. ("CAIR") is a Plaintiff in this action.

3. I am the Board Chair of CAIR. In that role, I am familiar with CAIR's programs, operations, and activities, including those conducted in and affecting Florida.

1

4. CAIR is a nonprofit corporation organized under the laws of the District of Columbia, with its headquarters in Washington, D.C., and recognized as tax-exempt under Section 501(c)(3) of the Internal Revenue Code.

5. CAIR was founded in 1994 and is America's largest Muslim civil rights and advocacy organization. Its faith-driven mission is to enhance the public's understanding of Islam, protect civil rights, promote justice, and empower American Muslims.

6. CAIR pursues its faith-driven mission through programs and advocacy conducted nationwide and works in coordination with affiliated chapters in multiple states, including CAIR-Florida.

7. CAIR primarily implements its mission through public education, advocacy, community engagement, and legal support. These activities include speaking publicly on civil rights issues, countering tropes and stereotypes and misconceptions about Islam, organizing educational events, communicating with elected officials, and working with individuals and organizations, including CAIR-Florida.

8. CAIR's activities take several forms.

9. CAIR educates people on their civil rights through presentations and advocacy materials. In Florida, for example, CAIR publishes general and Ramadan-specific "Know Your Rights" guides that address requests for religious

accommodation in workplaces, schools, and correctional settings. CAIR also creates and disseminates guides for Muslims who are traveling, and for those who are approached by law enforcement.

10. CAIR employees also travel to mosques and other community venues in Florida to conduct civic engagement trainings.

11. CAIR also publishes an annual civil rights report documenting incidents affecting Muslim communities nationwide.

12. CAIR engages in public advocacy related to issues affecting Muslims' civil rights. In Florida, CAIR regularly comments on proposed legislation. In 2025, for example, CAIR publicly opposed Florida House Bill 119, commonly referred to as the "No Shari'a Act," and expressed disagreement with statements made by Governor Ron DeSantis in support of the bill.

13. CAIR organizes civic engagement activities that encourage participation in the democratic process. For example, CAIR hosts Muslim Advocacy Day in Washington, D.C., which brings Muslims from across the country to meet with members of Congress.

14. CAIR also partners with CAIR-Florida to organize Muslim Day at the Capitol in Tallahassee, Florida. The 2025 event included more than 100 participants and addressed issues such as free speech, public safety, criminal justice reform, and Muslim American heritage.

15. As part of its civic engagement efforts, CAIR promotes voter participation through nonpartisan voter education and registration activities. For example, CAIR routinely participates in National Muslim Voter Registration Day.

16. CAIR addresses civil rights through activities such as providing pro bono legal assistance through its CAIR Legal Defense Fund, sending letters to government officials, and engaging in public communications. In Florida, for example, CAIR employees and volunteers travel to mosques and community locations to offer information and assistance to individuals who report experiencing discrimination.

17. CAIR publicly comments on issues that impact Muslim communities, including matters of United States foreign policy and state government action. In Florida, for example, CAIR and CAIR-Florida issued public statements urging the Florida legislature to censure then-State Representative Randy Fine in response to statements he made on social media concerning the death of a Turkish-American human rights activist. CAIR also issues press releases and actions alerts, and holds press conferences in further support of its advocacy.

18. As part of its broader civil rights work, CAIR engages in advocacy related to Palestinian human rights. For instance: (1) CAIR issued a February 2025 press release challenging President Donald Trump's assertion that the "U.S. will take over the Gaza Strip" and "own it"; and (2) CAIR issued an April 2025 letter to

the U.S. Department of Justice calling on it to prosecute the murder of an American citizen by Israeli settlers.

19. In Florida, CAIR and CAIR-Florida have engaged in advocacy and legal support related to Palestinian human rights. For example, CAIR, through its CAIR Legal Defense Fund, and CAIR-Florida represented and advocated on behalf of Students for Justice in Palestine ("SJP") chapters that were affected by actions taken by Florida government officials. CAIR and CAIR-Florida also successfully advocated for the return of Mohammed Ibrahim—a 16-year-old U.S. citizen who was detained by Israeli authorities beginning in February 2025. Part of this campaign involved sending a letter to U.S. Secretary of State Marco Rubio urging him to take urgent action to secure Mr. Ibrahim's release from Israeli custody through lawful diplomatic channels. In addition, CAIR and CAIR-Florida issued public statements concerning actions taken by the Mayor of Miami Beach to close a movie theatre that was screening an Oscar-winning Palestinian documentary.

20. CAIR also engages in advocacy, community education, and interfaith activities related to a range of civil rights issues. This advocacy includes, but is not limited to, educating individuals about Islam; and dispelling and countering misinterpretations of Islamic tenets, including with respect to sharia law, which is frequently invoked in political discourse.

21. On December 8, 2025, Governor DeSantis issued Executive Order 25-244, which unilaterally designates CAIR as a "terrorist organization" and imposes automatic punishments on CAIR and anyone who provides "material support" to CAIR.

22. However, there has not been any hearing, any adjudication, or any criminal charges related to this decree. There is also no appeals process that would permit CAIR to challenge Governor DeSantis's unilateral designation and the punitive consequences it imposes.

23. Following the issuance of Executive Order 25-244, CAIR experienced changes in how government entities and third parties in Florida interacted with the organization. For instance, plaintiffs in *Illoominate Media, Inc. v. CAIR Florida*, 2019-cv-81179 (S.D. Fla.), through their attorney informed CAIR that he was withholding monthly payments from an attorney fee and cost award to CAIR in that case and seeking a stay of the court order requiring plaintiffs to make the payments until CAIR's lawsuit against the Executive Order decided. In their motion for a stay, they state that the Executive Order's material support provision would subject them to the Executive Order's sanctions because the definition of material support includes any property including currency.

24. As a result of the Executive Order, CAIR's ability to engage in its regular advocacy and outreach activities has been affected, including through reactions

by individuals and organizations who have expressed concern about associating with CAIR. For example, CAIR and CAIR-Florida have been informed by some mosques that they are concerned about partnering with them due to the material support provision. CAIR relies on this partnership for its civic education outreach and to provide its legal services.

25. Following the issuance of Executive Order 25-244, CAIR fears how continued association with other individuals and organizations, including CAIR-Florida, may be perceived by government entities and third parties. CAIR has been informed by multiple organizations that they are reluctant to associate with CAIR because of the Order. As a result, CAIR has experienced disruptions to planned advocacy and public-facing activities, such as its Ramadan programming.

26. For example, CAIR was in the final stages of launching a new podcast and had entered into a proposed production agreement with a Florida-based company. The podcast was intended to support CAIR's public education and civil rights work through interviews, commentary, and other expressive content.

27. After Executive Order 25-244 was issued, the production company withdrew from the proposed agreement. The company informed CAIR that it had been advised not to proceed with the project due to concerns about the designation and the potential consequences of associating with CAIR.

7

28. As a result of the Executive Order, CAIR has serious concerns about its ability to continue engaging with government entities and participating in public programs in Florida, including whether government agencies or regulated entities will decline to work with CAIR or provide opportunities that were previously available. CAIR routinely petitions government officials at all levels to respond to hate crimes that occur to Muslims and to uphold the First Amendment rights of individuals in correctional facilities. Now, CAIR fears that government officials, staff at correctional facilities, and other agency employees will ignore any request or advocacy by it.

29. CAIR is also concerned about the impact of Executive Order 25-244 on its planned activities in Florida. For example, in February 2026, CAIR intends to host Ramadan events in partnership with CAIR-Florida. CAIR is concerned that the Order will interfere with its ability to hold these events as planned or to participate fully in them. CAIR also intends to participate in and partner with CAIR-Florida for its 2026 Muslim Day advocacy at the Capitol but were informed that the 22nd floor of the Capitol was no longer available to it.

30. CAIR is also concerned about how the Executive Order's vague directives to the Florida Department of Law Enforcement and the Florida Highway Patrol may affect the employees of CAIR-Florida, due to the heightened law enforcement scrutiny that comes with the "terrorist organization" designation.

8

31. CAIR intends to further its mission by associating with CAIR-Florida to empower, educate, and defend Florida Muslims. The Executive Order's material support provision places that association at risk by conditioning CAIR-Florida's access to government benefits on refraining from such partnership.

32. Since the issuance of Executive Order 25-244, CAIR has been required to divert staff attention away from its ordinary programming in order to respond to inquiries from the media and partner organizations and to address issues arising from the designation. This includes but is not limited to diverting resources to its communication department to address the heightened media attention from Governor DeSantis's Executive Order. In addition, CAIR has had to divert staff time and resources from its ordinary work to respond to the stay request and to seek recovery of the sequestered payments.

33. I declare under penalty of perjury that the foregoing is true and correct. This declaration was executed on January 22, 2026.

_Manal Fakhoury_
Manal Fakhoury (Jan 22, 2026 18:59:15 EST)

Manal Fakhoury

9