# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

CAIR-FOUNDATION, INC. and
CAIR-FLORIDA, INC.,

    *Plaintiffs*,

v.

                                 **Case No. 4:25-cv-00516-MW-MJF**

RONALD DESANTIS, in his official
capacity as Governor, State of Florida,

    *Defendant.*

_____/

## CAIR-FOUNDATION, INC.'S
## REPLY IN SUPPORT OF ITS
## MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Introduction ..................................................................................................................3

Argument......................................................................................................................5

I.    CAIR has shown it is substantially likely to have standing to
pursue its claims. ..............................................................................................5

II.    CAIR has met the requirements to obtain a preliminary injunction. .........7

     A.    CAIR is substantially likely to succeed on the merits of its
First Amendment claims. ..................................................................7

         1.    CAIR is likely to succeed on its Free Speech claim..............9

             a.    CAIR has shown viewpoint discrimination. ...............9

             b.    CAIR has shown retaliation. ....................................12

             c.    CAIR has shown coercion.........................................14

         2.    CAIR is likely to succeed on its Right to Association
claim.....................................................................................15

         3.    CAIR is likely to succeed on its Right to Petition
claim.....................................................................................16

     B.    CAIR will suffer irreparable injury absent an injunction. .............18

     C.    The equities favor CAIR and the injunction would serve the
public interest. .................................................................................19

Conclusion ................................................................................................................20

Certificate of Word Count ........................................................................................22

## INTRODUCTION

This Court should enjoin Executive Order 25-244 ("Executive Order") because Defendant's response does not challenge any of the essential facts that CAIR offered to show that it has standing and is substantially likely to succeed on the merits of its First Amendment claims:

- CAIR is an expressive association that engages in constitutionally protected advocacy, education, and civic participation in Florida. Doc. 24 ("Mem.") 7.

- Defendant issued the Executive Order, which designated CAIR as a terrorist organization and imposed on it and anyone who it associates with immediate and self-executing legal consequences and penalties. *Id.* at 5.

- The Executive Order has already harmed CAIR and it has lost opportunities to conduct First Amendment activities including, but not limited to, launching a civil rights podcast and visiting Florida mosques with CAIR-Florida to speak with Muslims about their rights. *Id.* at 8.

In the weeks since CAIR filed its motion, the harm to it has worsened. For example, the Florida Attorney General publicly warned the City of Coral Springs of consequences under the Executive Order if it allowed the South Florida Muslim Federation (the "Federation") to host a conference at a city facility there because CAIR and CAIR-Florida were partner organizations. *See* Supp. Decl. of Manal Fakhoury on Behalf of CAIR-Foundation, Inc., dated Feb. 20, 2026 ("CAIR Supp. Decl.") ¶ 2; Supp. Decl. of Ahmed Soussi, dated Feb. 20, 2026 ("Soussi Supp. Decl.") Ex. 22. This led the Federation to publicly cut ties with CAIR and CAIR-Florida. CAIR Supp. Decl. ¶ 3; Soussi Supp. Decl. Ex. 23. The Florida Attorney General celebrated

CAIR's banishment, stating that it was "a step in the right direction" and that "[a]ny entity that wants to do business or use state or local resource in Florida would be wise to dissociate from CAIR." CAIR Supp. Decl. ¶ 4; Soussi Supp. Decl. Ex. 24.

Defendant also does not dispute that he unilaterally designated CAIR as a terrorist organization without notice or process, imposing immediate penalties on it. Defendant claims this unprecedented action was justified because of CAIR's supposed ties to terrorists. Doc. 37 ("Resp.") 4-11. But CAIR has never been charged with any crime in Florida, nor has it been designated as a Foreign Terrorist Organization under federal law. And most of Defendant's purported "evidence" is decades old—from before CAIR (or CAIR-Florida) was even founded in 1994—and thus is irrelevant to the designation and this lawsuit.

In any event, even if every allegation against CAIR were true, the First Amendment would still prohibit Defendant's actions. The First Amendment forbids state officials from targeting and silencing a nonprofit civil rights organization that has repeatedly criticized state action. Moreover, although this Court need not look beyond the text of the Executive Order to see its illegality, Defendant's public statements are telling. At a press conference the day after the Executive Order was issued, Defendant stated that he welcomed this lawsuit because it would provide him with discovery "to get the information that we need to make sure." Doc. 24-1 ¶ 21 (20:04-20:10). In other words, Defendant does not view the instant lawsuit as an opportunity

to defend the Executive Order's legality but rather as a post hoc means to obtain information about CAIR otherwise unavailable to him.

Because Defendant's actions have deprived CAIR of its rights to Free Speech, Free Association, and Petition, strict scrutiny must be applied. *See, e.g.*, *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415 (1963). Defendant cannot show any compelling government interest for targeting CAIR, much less that the Executive Order is narrowly tailored to achieve that interest. Ultimately, the Executive Order is about punishing and silencing a civil rights organization with a faith-driven mission to educate, empower, and defend Muslim Americans. But attacks on organizations that uphold the rights of minorities are not new. *See Button*, 371 U.S. 415. Just as the Supreme Court upheld the First Amendment rights of the NAACP in *Button*, this Court should do the same and enter the injunctive relief requested in CAIR's motion.

## <u>ARGUMENT</u>

**I.     CAIR has shown it is substantially likely to have standing to pursue its claims.**

In its opening brief, CAIR demonstrated that at the time of the filing of its lawsuit it had standing because it had suffered injury in fact that was directly traceable to the Executive Order and would be redressed by the entry of the requested preliminary injunction. Mem. 10-11; Doc. 24-2 ¶¶ 26-27. In addition, CAIR showed

that third parties dissociated with CAIR because of the Executive Order.[1] *See* CAIR Supp. Decl. ¶¶ 2-7; Soussi Supp. Decl. Exs. 22-24. More recently, CAIR was disinvited from a convention because of the Executive Order. CAIR Supp. Decl. ¶¶ 2-4; Soussi Supp. Decl. Ex. 23. Those harms constitute injury-in-fact sufficient to establish standing.

Regarding traceability and redressability, Defendant asserts that CAIR's harms are insufficient because they are dependent on the actions of third parties and unlikely to occur because they are dependent on a sequence of uncertain contingencies. Resp. 13 (relying on *Murthy v. Missouri*, 603 U.S. 43 (2024)). *Murthy* is distinguishable and supports CAIR's standing.

In *Murthy*, plaintiffs sought a prospective preliminary injunction against various government entities they claimed were pressuring social-media platforms to suppress plaintiffs' posts about COVID. Consistent with CAIR's position, *Murthy* held that "[t]o obtain forward-looking relief, the plaintiffs must establish a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them." *Id*. at 58. The Court found that plaintiffs

---

[1] Since the filing of CAIR's opening brief, the judge in *Illoominate Media, Inc. v. CAIR Florida, Inc.*, No. 9:19-cv-81179-RAR, (S.D. Fla. Jan. 29, 2026), denied the motion to stay the payment of attorney's fees. While this may have resolved the harm in this instance, it remains as evidence that third parties have and continue to interpret the Executive Order as a threat to which they respond by dissociating with CAIR, to its detriment.

failed to show sufficient factual proof of an ongoing pressure campaign by the defendants and that it was speculative that the platforms' future moderation decisions would be attributable, even in part, to the defendants. *Id*. at 69.

Here, however, CAIR has shown through uncontroverted facts that third parties are "react[ing] in predictable ways to the defendant['s] conduct," *i.e.*, the Executive Order, and that its past injuries are in fact predictive." *Id*. at 58-59. Despite Defendant's assertion to the contrary, no contingencies are involved. Defendant issued the Executive Order which is self-executing and immediate and ongoing until enjoined; third parties consistently interpret it as a prohibition on associating with CAIR, and third parties have then dissociated or refused to associate with CAIR. All this occurs to the detriment of CAIR, thus accomplishing the intended result of the Executive Order. Indeed, the third parties themselves have indicated that their actions are traceable directly to the Executive Order and that they would associate with CAIR if the Executive Order was enjoined. *See* CAIR Supp. Decl. ¶ 7; *see also* Doc. 24-2 ¶¶ 23-29; Doc. 24-3 ¶¶ 21-27. That is sufficient to establish standing.

## II. CAIR has met the requirements to obtain a preliminary injunction.

### A. CAIR is substantially likely to succeed on the merits of its First Amendment claims.

In response to CAIR's First Amendment claims, Defendant essentially argues that (1) as Governor, he has inherent power to designate terrorist organizations, and (2) such organizations have no First Amendment rights. Resp. 19. Thus, according

to Defendant, CAIR is unlikely to succeed on the merits of its First Amendment claims because he has designated it as a terrorist organization. This flawed syllogism swallows the First Amendment and effectively allows executive nullification of constitutional protections.

Defendant claims that the Supreme Court allows these expansive powers, repeatedly citing *Holder v. Humanitarian League Project*, 561 U.S. 1, 33 (2010). Resp. 19. But that case involved vastly different circumstances. *Holder* focused on a federal law that provided neutral criteria for the Secretary of State to designate entities as Foreign Terrorist Organizations, complete with judicial review. 561 U.S. at 9 (citing 8 U.S.C. §1189). Here, by contrast, Florida has no similar law providing criteria for its governor to designate terrorist organizations. Nor does the Executive Order allow judicial review. So this is not a case where a court should defer to the "considered judgment of Congress and the Executive." *Id*. at 36. Deference presupposes a lawful framework.

*Holder* is also distinguishable because it analyzed the limits of regulating *foreign* terrorist organizations. 561 U.S. at 33. Here, though, Defendant acted against a *domestic* nonprofit organization. Indeed, the Supreme Court cautioned that it was "not suggest[ing] that Congress could extend the same prohibition on material support at issue here to domestic organizations." *Id.* at 39. Thus, *Holder* provides no support to Defendant's arguments.

**1.      CAIR is likely to succeed on its Free Speech claim.**

CAIR offered three grounds to show that it was substantially likely to succeed on the merits of its Free Speech claim: first, the Executive Order discriminates based on viewpoint; second, the Executive Order retaliates against CAIR for its protected speech; and third, the Executive Order coerces third parties into disassociating with CAIR. Mem. 15-26. Defendant does not dispute that CAIR need only show a substantial likelihood of success on just one of these grounds.

**a.      CAIR has shown viewpoint discrimination.**

As CAIR previously demonstrated, courts have consistently ruled that content-based discrimination is presumptively unconstitutional and subject to strict scrutiny. Mem. 15-16 (collecting cases). Defendant does not challenge this well-established legal principle. Instead, he urges this Court to dispense with the First Amendment analysis altogether because the Executive Order could be read to prohibit only conduct, not speech. Resp. 20-21. But CAIR's uncontested allegations and evidence refute this implausible reading of the Executive Order. *See* Doc. 36, Answer, ¶ 11 (admitting that CAIR representatives discuss issues of public concern as part of their public education and advocacy efforts); Doc. 24-2 ¶¶ 24-25 (explaining how CAIR's advocacy efforts have been limited by the Executive Order). Thus, the Executive Order very much regulates First Amendment speech.

Defendant next argues that even if the Executive Order implicates the First

Amendment, the Executive Order is content neutral and thus not subject to strict scrutiny. Resp. 21. This argument also crumbles under examination. First, CAIR is not relying on an effects-based theory of liability, as Defendant claims. Resp. 21. To the contrary, CAIR argued that the Executive Order "*directly* punishes and restricts CAIR's speech and expressive activities." Mem. 17 (emphasis added). Second, CAIR is not asking this Court to "look beyond the text." Resp. 22. Quite the opposite: the text of the order itself—which singles out CAIR by name—is all this Court needs to conclude that the Executive Order discriminates based on viewpoint.

By targeting the source of the speech, Defendant has violated the core First Amendment principle that the government cannot impose "restrictions distinguishing among different speakers, allowing speech by some but not others." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010). "Speaker-based laws run the risk that the State has left unburdened those speakers whose messages are in accord with its own views." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 778 (2018) (quotations omitted). Defendant's response, that the Executive Order does not restrict the speech of similar civil rights organizations, Resp. 23, only underscores why the Executive Order is unconstitutional.

To be sure, differential treatment may sometimes be "justified by some special characteristic of the particular speaker being regulated." *TikTok v. Garland*, 604 U.S. 56, 73 (2025) (cleaned up) (quotations omitted). But unlike in *TikTok*, where the

restrictions were based on "content neutral" standards, *id.*, here every justification for the Executive Order is based on purported conduct by CAIR or its agents. Moreover, *TikTok* involved extraordinary circumstances not present here—the risk of a foreign adversary accessing sensitive data of 170 million people in the United States. *See id.* (emphasizing "the inherent narrowness of our holding"). Thus, no justification exists for the Executive Order to single out and stifle CAIR, and strict scrutiny must be applied.

Defendant does not challenge CAIR's arguments that he lacks a compelling interest and that the Executive Order is not narrowly tailored to serve any such interest. Mem. 17-18. Instead, Defendant claims that because the Executive Order implicates national security, this Court need only determine whether the Executive Order is legitimate and if so, uphold it. Resp. 23 (citing *Trump v. Hawaii*, 585 U.S. 667 (2018)). But *Trump v. Hawaii* dealt with a "fundamental sovereign attribute," admission and exclusion of foreign nationals, that was "largely immune from judicial control." 585 U.S. at 702. Not so here. Redressing state censorship falls well within this Court's domain.

Perhaps recognizing that the Executive Order cannot survive strict scrutiny, Defendant asks this Court to apply intermediate scrutiny. Resp. 24-25. But even under that more relaxed standard, CAIR still would be substantially likely to succeed on the merits. First, based on the proffered stale and inapt record, Defendant has no

"important or substantial" interest in designating CAIR—the nation's largest Muslim civil rights and advocacy organization—as a terrorist organization. *United States v. O'Brien*, 391 U.S. 367, 377 (1968); *see also* Mem. 17-18. Second, the Executive Order's sweeping scope and expansive prohibitions likewise show that it is far "greater than is essential" to serve that interest. *O'Brien*, 391 U.S. at 377; *see also* Mem. 18. The Executive Order imposes immediate legal penalties on CAIR and excludes it from opportunities otherwise available to nonprofit organizations in Florida, among other harms.

Finally, contrary to Defendant's contention, Resp. 25, this Court would be breaking no ground in granting CAIR's motion. *See Al Haramain Islamic Found. v. United States Dep't of Treasury*, 686 F.3d 965, 997 (9th Cir. 2012). In *Al Haramanim*, the Ninth Circuit applied strict scrutiny to a terrorist designation against a domestic nonprofit organization that had ties to a foreign entity. The court held that the government's content-based restrictions violated the First Amendment because those restrictions prevented the nonprofit organization from engaging in advocacy. So too here.

#### b. CAIR has shown retaliation.

CAIR previously has shown that it is likely to succeed on its retaliation claim because (1) its speech was constitutionally protected; (2) it suffered adverse action that would deter others from engaging in such speech; and (3) a causal relationship

existed between the adverse action and the protected speech. Mem. 18-24. Defendant fails to contest the first two elements, effectively conceding that CAIR has met its burden. Although Defendant does challenge the causation element, he applies the wrong legal framework in doing so.

Defendant devotes much ink to arguing that probable cause existed for him to designate CAIR as a terrorist organization. But this Court need not reach that issue because that argument presupposes an existing legal process. Here, there was none: no statute authorizes CAIR's designation, no evidentiary standards exist, no neutral decisionmaker reviewed the designation, and no adversarial process exists for CAIR to challenge the designation. So this is not a case where "the governmental defendant has utilized the legal system to arrest or prosecute the plaintiff" and thus requires a plaintiff to prove a lack of probable cause. *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).

Defendant identifies no case applying the "lack of probable cause" standard outside of retaliatory arrests or legal proceedings. Resp. 25-26. For good reason— the whole point of the probable cause requirement is to "bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action." *Hartman v. Moore*, 547 U.S. 250, 263 (2006). Here, no gap needs to be filled—all the harm suffered by CAIR can be traced to a single action by a single person: the Executive Order issued by Defendant. Thus, this Court need only apply the standard three-part

test to determine whether Defendant's actions were retaliatory. *See, e.g.*, *Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268 (11th Cir. 2025); *Jarrard v. Sheriff of Polk Cnty.*, 115 F.4th 1306 (11th Cir. 2024), *cert. denied sub nom. Moats v. Jarrard*, 145 S. Ct. 2702 (2025).

On the causation prong, Defendant is correct that CAIR must show that its protected speech "was a but-for cause of" Defendant issuing the Executive Order against it. *Huggins*, 151 F.4th at 1282. As the Eleventh Circuit has explained, because "direct evidence of an official's inner motivations is often not possible, we have relied on circumstantial evidence to establish the causal link." *Id.* That circumstantial evidence can include temporal proximity between the protected speech and the adverse action—even when the adverse action occurs two months later. *Id.* Here, the Executive Order was issued after CAIR's criticism of Defendant on matters of public policy. Mem. 21-24. That is sufficient.

### c. CAIR has shown coercion.

In addition to the claims above, CAIR has also shown that the Executive Order violates the First Amendment by coercing third parties to join Defendant's effort to suppress CAIR's protected speech. Mem. 24-26. Contrary to Defendant's characterization, Resp. 34, CAIR has explained how Defendant successfully coerced third parties to do his bidding; for example, one third party canceled a podcast agreement, and another disinvited CAIR from a convening—both citing the Executive Order.

*See* Doc. 24-2 ¶¶ 25-27; CAIR Supp. Decl. ¶¶ 2-4, 7; Soussi Supp. Decl. Exs. 22-24. These actions are more than enough to show a substantial likelihood of success on the coercion theory.

**2.      CAIR is likely to succeed on its Right to Association claim.**

CAIR's freedom of association claim is unrebutted by Defendant because he does not address the strict scrutiny standard. Instead, he relies entirely on *Holder*, but as explained above, that case is distinguishable because it involved a foreign plaintiff challenging a federal law—not a domestic nonprofit organization challenging a governor's unilateral order. *See supra* Section II.A. Indeed, *Holder* emphasized that "we in no way suggest that a regulation of independent speech would pass constitutional muster, even if the Government were to show that such speech benefits foreign terrorist organizations." 561 U.S. at 39. This is also why Defendant's lone string citation fails. Resp. 35 (citing cases involving federally designated Foreign Terrorist Organizations).

Defendant posits that the Executive Order does not "obstruct any right of association," Resp. 35, but that contradicts the text of the Executive Order, and how it has been interpreted and implemented with Attorney General Uthmeier's threats. *See* CAIR Supp. Decl. ¶ 2; Soussi Supp. Decl. Ex. 22. The Executive Order prohibits CAIR from conducting core First Amendment activities with third parties by automatically denying it Government Benefits and by denying third parties from access

to those same Government Benefits through the material support provision if they associate with CAIR. Mem. 33-34. Defendant seeks to rewrite the Executive Order by arguing that the material support provision includes an intent requirement, Resp. 15, but he cites to a provision of a statute that is not referenced in or a part of the Executive Order and only applies to federally designated Foreign Terrorist Organizations. *Id.* (citing Fla. Stat. § 775.33(3) instead of 775.33(1)(c), the latter of which is merely a definition of "material support or resources").

In fact, the sweeping material support prohibition is why *Button* controls here. In a footnote, Defendant argues that *Button* dealt with prohibiting the NAACP from advising its members to seek legal assistance. Resp. 36 n.69. But that is exactly what CAIR does when, for example, it associates with CAIR-Florida to provide legal assistance to Muslims at Florida mosques. *See e.g.*, Doc. 24-2 ¶ 31, Doc. 24-3 ¶ 14. Those legal services are needed here because CAIR's members have been denied entry to Florida mosques because of the Executive Order. Doc. 24-3 ¶ 23. Thus, *Button* is analogous to the instant case.

### 3. CAIR is likely to succeed on its Right to Petition claim.

In a single paragraph, Defendant conclusively states that, by regulating "conduct other than petitioning," the Executive Order avoids scrutiny under the Petition Clause. Resp. 36. This fact-evasive conclusion ignores the practical reality of how petitioning happens. Section 2 of the Executive Order prevents CAIR from accessing

Florida's government buildings and facilities and significantly impairs its ability to engage with agencies and public officials. State employees are either directly prevented from meeting with CAIR employees or advocates or indirectly deterred from any engagement with CAIR for fear of allowing CAIR to receive Government Benefits or being known themselves to have provided material support to CAIR. Mem. 27-30.

This is not speculative. On January 23, 2026, the Florida Attorney General referenced the Executive Order's terrorist organization designation and accompanying prohibitions in seeking to deter a Local Government from permitting a group affiliated with CAIR from hosting a conference in a city facility: "Coral Springs should remember that state and local resources cannot be used by any organization affiliated with CAIR, which is a designated terrorist organization. The city commission is on notice." Soussi Supp. Decl. Ex. 22.

Defendant claims that, if the Executive Order did burden CAIR's right to petition, it survives scrutiny because it is the "least restrictive means of advancing compelling government interests." Resp. 36. Not so. Section 2 of the Executive Order is a blanket prohibition with sweeping language prohibiting "material support or resources," the definition of which itself broadly includes, among other things, any property or services, and "any contract, employment, funds, or other benefit or privilege," and restricting such from any "Executive or Cabinet Agency or from any

17

County or Municipality of the State." Doc. 24-2 Ex. 1. This language shuts CAIR out of the ability to petition the Florida government for redress at multiple levels. *See, e.g.*, Doc. 24-2 ¶ 28 (CAIR may not be able to access correctional facilities); Mem. 27-30.

**B.     CAIR will suffer irreparable injury absent an injunction.**

As CAIR stated in its opening brief, because the Executive Order violates its First Amendment rights, CAIR has suffered irreparable injury, and no further inquiry on this prong of the preliminary injunction standard is required. *See Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1283 (11th Cir. 2024) (First Amendment violation, "even for a minimal period of time, constitutes irreparable injury"); Mem. 33-34. Defendant does not engage with this argument, instead focusing on the allegedly speculative nature of the harms Plaintiff asserts, which is unavailing. *See supra* Section I; Mem. 10-14.

An examination of those harms, though, reveals that CAIR has suffered irreparable injury, and continues to suffer irreparable injury, just as predicted. The very fact that the government has labeled CAIR as a terrorist organization brands it with a stigma that is, in and of itself, a harm. *See, e.g.*, *Talbott v. United States*, 775 F. Supp. 3d 283, 332 (D.D.C. 2025) ("transgender servicemembers suffer from the irreparable reputational stigma the Military Ban espouses"). Its chilling effects are further harms. For example, the South Florida Muslim Federation cut ties with CAIR

after the Florida Attorney General called on the City of Coral Springs to cancel the Federation's convention due to CAIR's involvement with it. *See* CAIR Supp. Decl. ¶¶ 2-3; Soussi Supp. Decl. Exs. 22-23. Such a real and concrete injury is a far cry from the concerns about "consumer confusion"—for which there was a "paucity of evidence"—in the out-of-circuit trademark infringement case that Defendant stretches to equate with this case. *See H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 951-52 (8th Cir. 2023).

Defendant also points to CAIR's "delay" in seeking injunctive relief. However, CAIR filed the instant motion just a month and a half after Defendant issued the Executive Order. That time allowed CAIR to obtain counsel; meaningfully evaluate the actual consequences of the Executive Order, rather than merely speculate about potential injuries at the outset; and prepare the record necessary to support this motion. As this Court has said when addressing a one-month delay in filing a motion for preliminary injunction, "a one-month delay, however, is akin to no delay." *Austin v. Univ. of Fla. Bd. of Trustees*, 580 F. Supp. 3d 1137, 1174 (N.D. Fla. 2022) (Walker, J.), *vacated and appeal dismissed*, No. 22-10448-GG, 2023 WL 5051221 (Mar. 20, 2023 11th Cir.).

C. **The equities favor CAIR and the injunction would serve the public interest.**

If the Court finds that CAIR is likely to succeed on its First Amendment claims, it necessarily follows that the equities favor CAIR, because the government

can have no legitimate interest in acting in an unconstitutional manner. While Defendant asserts that he has an interest in "protecting public safety," Resp. 37, that purported interest is a mere cover for his desire to punish CAIR because he disagrees with CAIR's viewpoint. The Executive Order, in fact, does nothing to advance safety or any other public interest, while violating CAIR's constitutional rights, and the equities therefore favor CAIR.

## **CONCLUSION**

For these reasons, the Court should grant CAIR's motion and enjoin Defendant from enforcing, implementing, relying on, or otherwise giving effect to the Executive Order as it relates to CAIR, including by ordering Defendant to strike CAIR from the Executive Order for the duration of the litigation.

Respectfully submitted this 20th day of February 2026.

Omar Saleh
FL Bar No. 91216
(833) 224-7352
osaleh@cair.com
CAIR-FLORIDA
8076 N. 56th St.
Tampa, FL 33617

Lena F. Masri
DC Bar No. 1000019
Admitted pro hac vice
lmasri@cair.com

Arthur Ago
DC Bar No. 463681
Admitted pro hac vice
(202) 961-9325
arthur.ago@splcenter.org
SOUTHERN POVERTY LAW CENTER
1101 17th St. NW, Ste. 550
Washington, DC 20036
(202) 971-9205 (fax)

Scott D. McCoy
FL Bar No. 1004965
scott.mccoy@splcenter.org
(786) 347-2056

Gadeir I. Abbas
VA Bar No. 81161; not licensed in DC
Admitted pro hac vice
gabbas@cair.com
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave. SE
Washington, DC 20003
(202) 742-6420
ldf@cair.com

Charles D. Swift
TX Bar No. 24091964
Pro hac vice motion forthcoming
cswift@clcma.org
MUSLIM LEGAL FUND OF AMER-
ICA
100 N. Central Expy., Ste. 1010
Richardson, TX 75080
(972) 914-2507

Shereef H. Akeel
MI Bar No. P54345
Admitted pro hac vice
shereef@akeelvalentine.com
Samuel Simkins
MI Bar No. 81210
Admitted pro hac vice
sam@akeelvalentine.com
AKEEL & VALENTINE, PLC
888 W. Big Beaver Rd., Ste. 350
Troy, MI 48084
(248) 269-9595

SOUTHERN POVERTY LAW CENTER
2 S. Biscayne Blvd., Ste. 3200
Miami, FL 33131

/s/ *Ahmed K. Soussi*
Ahmed K. Soussi
LA Bar No. 38414
Admitted pro hac vice
ahmed.soussi@splcenter.org
(334) 213-8303
SOUTHERN POVERTY LAW CENTER

Huey Fischer García
LA Bar No. 39571
Admitted pro hac vice
huey.fischergarcia@splcenter.org
(504) 884-7680
SOUTHERN POVERTY LAW CENTER
400 Washington Ave.
Montgomery, AL 36104

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Local Rule 7.1(F), I certify that this memorandum contains 4176 words, inclusive of headings, footnotes, and quotations, according to the word-processing system used to prepare it. This enlarged response is permitted under the Court's Order dated January 30, 2026 (Doc. 34).

Date: February 20, 2026.

/s/Ahmed K. Soussi
Counsel for Plaintiffs