# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

CAIR-FOUNDATION, INC.
and CAIR-FLORIDA, INC.,

    *Plaintiffs,*

v.

RONALD DESANTIS, in his
official capacity as Governor,
State of Florida,

    *Defendant.*

Case No. 4:25-cv-00516-MW-MJF

## <u>DEFENDANT'S MOTION TO COMPEL DISCOVERY AND MEMORANDUM OF LAW</u>

## MOTION TO COMPEL

Pursuant to Fed. R. Civ. P. 37(a)(3) and N.D. Loc. R. 26.1(D), Defendant Ronald DeSantis hereby files his Motion to Compel Discovery.

Plaintiffs brought this lawsuit to seek an injunction against enforcement of Defendant's Executive Order that designates certain entities as terrorist organizations and prohibits state agencies from lending material support to those agencies. Yet, Plaintiffs improperly refuse to answer basic discovery requests that are relevant to the claims and defenses at issue in this case. Defendant asks this Court to resolve five discovery issues.

First, Plaintiffs assert baseless relevance objections to virtually every Request for Production relating in any way to Plaintiffs' current or historical connections to terrorism.

Second, Plaintiffs manufacture unsupported vagueness and burden objections throughout their responses.

Third, Plaintiffs improperly object to Defendant's definitions in favor of their own self-serving definitions.

Fourth, Plaintiffs assert unsupported First Amendment privilege claims.

Finally, Plaintiffs have asserted numerous boilerplate and unsupportable objections to multiple discovery requests; they improperly refuse to provide *any* documents in response to 26 of the 51 Requests for Production.[1] And the substantive responses that Plaintiffs do provide are predominantly incomplete, evasive, and non-compliant.

Defendant has met and conferred with Plaintiffs in a good faith attempt to resolve these issues without this Court's intervention, but Plaintiffs have refused to meaningfully supplement their deficient responses. Defendant therefore brings this Motion and respectfully requests that the Court order Plaintiffs to respond fully and completely to Defendant's Requests for Production.

For the reasons stated in Defendant's Memorandum of Law, Defendant respectfully requests that this Court GRANT the Motion.

---

[1] Due to the number of Requests for Production to which Plaintiffs' have asserted boilerplate objections and failed to respond, it is not feasible to quote the full text of the requests and objections within the body of the Motion. *See* N.D. Fla. Loc. R. 26.1(D). For that reason, Defendant has attached the Requests for Production as Exhibit A and Plaintiffs' amended objections and responses as Exhibit B. The Memorandum of Law sets out the specific reasons that discovery should be compelled as to each of the Requests at issue.

ii

# MEMORANDUM OF LAW

**Table of Contents**

**Page**

BACKGROUND ......................................................................................1

LEGAL STANDARD ..............................................................................3

ARGUMENT ...........................................................................................4

I.  General Deficiencies in Plaintiffs' Responses.................................4

  A.  Baseless Relevance Objections ....................................................4

    1.  Plaintiffs' Terrorist Ties Are Relevant to Plaintiff's Own Allegations...................................................................................5

    2.  Plaintiffs' Terrorist Ties Are Relevant to Defendant's Defenses ....................................................................................6

  B.  Improper Vagueness and Burden Objections............................10

  C.  Improper Objections to Definitions.............................................11

  D.  Unsupported First Amendment Privilege Claims.....................12

II.  Specific Deficiencies in Plaintiffs' Responses ...............................14

## BACKGROUND

Plaintiffs brought this lawsuit to seek an injunction against enforcement of Defendant's Executive Order that designates certain entities as terrorist organizations and prohibits state agencies from lending material support to those organizations. In response to the lawsuit, Defendant seeks relevant discovery that is tailored to the claims and defenses at issue in this case.

On April 16, 2026, Defendant served his first set of Requests for Production. Plaintiffs served their objections and responses to Defendant's Requests for Production on June 4, 2026. Plaintiffs' discovery answers recited numerous improper objections and improperly refused to provide *any* substantive response to 35 of the 51 Requests for Production. And the few substantive responses that Plaintiffs did provide are predominantly incomplete, evasive, and non-compliant.

Defendant's counsel sent a letter to Plaintiffs on June 18, 2026 that identified each of those deficiencies. Ex. C. Counsel then met and conferred with Plaintiffs on June 29, 2026, via teleconference, and on July 17, Plaintiffs' counsel responded to Defendant's letter and served amended responses to Defendant's Requests for Production. Exs. D

1

(letter) and B (amended responses).  Defendant's counsel and Plaintiffs' counsel met again via teleconference on July 22, 2026, to attempt yet again to narrow the issues in dispute.  The issues raised in this motion remain in dispute despite these attempts.

Although Plaintiffs' July 17 letter asserted that they have "amended certain responses" to the Requests for Production "in the interest of compromise," Plaintiffs' concurrently-served amendments removed virtually *none* of their objections. *See* Exs. B and D. The amended responses still refuse to provide *any* documents for 26 of the 51 Requests for Production. Plaintiffs continue to withhold the bulk of their responsive documents by asserting baseless relevance and privilege objections to Requests related to Plaintiffs' current and historical ties to terrorism. And the few documents that Plaintiffs agreed to produce have not been forthcoming: these Requests were served over four months ago and Plaintiffs have produced a mere two documents to date.

Despite Defendant's good faith efforts to resolve this dispute without Court intervention, Plaintiffs have refused to meaningfully supplement their responses and Defendant has no choice but to seek relief from this Court. Defendant respectfully requests that the Court

2

issue an order compelling Plaintiffs to respond completely to Defendant's Requests for Production.

## LEGAL STANDARD

Rule 26 provides that parties to litigation "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "In determining whether discovery is relevant, the Court must consider the allegations, claims, and defenses raised." *Westchester Surplus Lines Ins. Co. v. Portofino Masters Homeowners Assoc., Inc.*, 345 F.R.D. 532, 536 (N.D. Fla. 2024) (citing *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020)). "The bar for relevance in discovery is low, and 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Travis L. v. Robinson Helicopter Co. Inc.*, No. 1:24-cv-3-MW/MJF, 2024 WL 6953106, at *2 (N.D. Fla. Dec. 12, 2024) (Walker, C.J.). "[A] relevance objection should not be sustained on the basis that a party is "fishing" if there is a possibility that the matter into which a party is inquiring reasonably could lead to the discovery of evidence that is relevant to the case." *Felicia*

3

*v. Celebrity Cruises, Inc.*, 286 F.R.D. 667, 671 (S.D. Fla. 2012) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978)).

## ARGUMENT

## I.   General Deficiencies in Plaintiffs' Responses

### A.   Baseless Relevance Objections

Plaintiffs object that virtually every Request relating in any way to Plaintiffs' current or historical connections to terrorism are somehow "irrelevant to … whether Governor DeSantis violated Plaintiffs' constitutional rights to free speech, to petition the government, to freedom of association, and to procedural due process by issuing the challenged Executive Order." This is baseless and improper. "The bar for relevance in discovery is low, and 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Travis L. v. Robinson Helicopter Co. Inc.*, No. 1:24-cv-3-MW/MJF, 2024 WL 6953106, at *2 (N.D. Fla. Dec. 12, 2024) (Walker, C.J.). Indeed, in the context of this case—in which Plaintiffs ask the Court to remove and forever enjoin Florida from designating them as terrorist organizations—this position is facially absurd.

### 1. Plaintiffs' Terrorist Ties Are Relevant to Plaintiff's Own Allegations

Discovery requests seeking information regarding Plaintiffs' ties to terrorism or material support for terrorist organizations are highly relevant to Plaintiffs' own allegations putting into issue, for example: (1) whether Plaintiffs have "ever been investigated, prosecuted, indicted, or convicted for any act of violence, terrorism, or material support for terrorism" (FAC ¶ 32); (2) the veracity of "allegations … that CAIR's finances warranted heightened scrutiny" (FAC ¶ 62)[2]; (3) whether the Executive Order affects Plaintiffs "solely … because of Plaintiff's constitutionally protected advocacy" (FAC ¶¶ 87–88); (4) whether Plaintiffs engaged in relevant conduct other than "public education, interfaith work, and civil rights and policy advocacy" (FAC ¶ 101); (5) whether there is "any legitimate" or "compelling" "governmental interest" or "justification" for the Executive Order (FAC ¶¶ 89, 91, 96); (6) whether the Executive Order is "narrowly tailored … to further any purported governmental interest" (FAC ¶¶ 91, 105); whether the Executive Order is

---

[2] What's more, CAIR certainly denies that its finances warrant closer review. But *CAIR* brought this lawsuit. And that is just one burden of discovery: once you sue another, you subject yourself to the scrutinous discovery process.

5

"necessary to advance the Executive Order's stated purpose" (FAC ¶ 105); and (7) whether the Executive Order was "issued in response to any identified, ongoing, or imminent emergency or threat to public safety" (FAC ¶ 133). Plaintiffs made those allegations; they cannot now deny their relevance. *Cf. Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir. 1994) (explaining that even a party's privileged communication may be discoverable if that party puts forth allegations that implicate privileged communications). Indeed, Plaintiffs themselves served a request on Defendant for "[a]ll documents … that support the designation that Plaintiffs are terrorist organizations." Plfs' Mar. 9, 2026 Request for Production No. 4. "[I]t is inconsistent to request that one party provide information and discovery and then object to that same discovery when it is requested by one's opponent." *Proflex Products, Inc. v. Protecto Wrap Co.*, No. 12-21280-CIV-ZLOCH/HUNT, 2013 WL 12064531, at *6 (S.D. Fla. Jul. 18, 2023) (Hunt, Mag. J).

### 2. Plaintiffs' Terrorist Ties Are Relevant to Defendant's Defenses

Moreover, the Requests at issue are highly relevant to Defendant's defenses to Plaintiffs' claims. They are likely to lead to relevant evidence of Plaintiffs' past conduct that will support Defendant's defenses that (1)

Defendant's evaluation of the facts is entitled to deference; (2) that the Executive Order addresses conduct falling outside the First Amendment; (3) that the Executive Order is viewpoint and content neutral; (4) that the Executive Order serves a valid, non-retaliatory government purpose; (5) that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism; (6) that the Executive Order is narrowly tailored; and (7) that Defendant had probable cause to issue the Executive Order.

Rule 26 expressly entitles a defendant to obtain discovery relevant to its own defenses. *See, e.g.*, *Herron v. Eastern Indus., Inc.*, No. 5:07-cv-35, 2007 WL 2781211, at *1–5 (N.D. Fla. Sept. 19, 2007) (Timothy, Mag. J.) (denying protective order and holding that defendants are entitled to discover information that is "directly relevant to Defendants' defenses"); *Luczak v. Nat'l Beverage Corp.*, No. 18-61631-CIV-Moore/Snow, 2020 WL 10505310, at *3–4 (S.D. Fla. Nov. 2, 2020) (granting motion to compel plaintiff to produce "evidence that is directly relevant to Defendants' defense in this action"); *Traveler's Ins. Co. v. Commercial Cool-Temp Corp.*, No. 11-61748CIV-Dimitrouleas/Snow, 2012 WL 13134027, at *6 (S.D. Fla. May 16, 2012) (granting defendant's motion to compel answer

7

to interrogatory because it is "highly relevant to [a] defense"). Plaintiffs' attempt to circumscribe the relevant issues by focusing exclusively on *their own* allegations and *their own* theory of the case is improper. *See Solomon v. United Specialty Ins. Co.*, No. 0:22-CV-62405, 2024 WL 552187, at *4 (S.D. Fla. Feb. 12, 2024) (holding that a defendant has a right to discovery on its own affirmative defenses without a threshold determination of the merits of those defenses). Information is discoverable under the Federal Rules where "[t]he defendants have at least argued that the [discovery is] relevant to their defense," regardless of whether the plaintiff— or even the court—believes Defendants are likely to prevail on their theory. *Props. of the Vills., Inc. v. Kranz*, No. 5:19-cv-647-Oc-30PRL, 2020 WL 6393834, at *3–4 (M.D. Fla. Nov. 2, 2020).

Plaintiffs also miss the point when they suggest that discovery is irrelevant to the extent that the information was not available to the Governor at the time he issued the Executive Order. But the Governor could not have known what Plaintiffs would allege in their lawsuit before he issued the Order. Even putting Plaintiffs' allegations aside, the defenses at issue are not solely contingent on the information that was available to the Governor at the time the Executive Order was issued.

For example, discovery related to Plaintiffs' terrorist ties is relevant to the defense that the Order is narrowly tailored to serve a compelling governmental interest in thwarting terrorism. Discovery related to terrorist ties is not a "*post hoc* rationalization[]" because "concerns about terrorism motivated the adoption of [the Executive Order]" from the outset, and the Order identifies specific evidence supporting those concerns. *Contra Bourgeois v. Peters*, 387 F.3d 1303, 1322–23 (11th Cir. 2004) (holding that terrorism concerns did not qualify as a compelling interest where there was no indication that such "concerns" were the "basis" for the challenged policy). Here, the Order itself enumerates—and identifies evidence of—past conduct by Plaintiffs that supports the Order's findings regarding Plaintiffs' current and historical ties to terrorism. Additional evidence that corroborates the government's *pre-enactment* rationale is therefore relevant to the government's compelling interest even assuming strict scrutiny applies. And the issue of whether Plaintiffs' activities qualify for First Amendment protection does not hinge on which facts were known to the government at the time of enactment.

9

Defendant respectfully requests that the Court order Plaintiffs to withdraw their improper relevance objections and to provide full and complete amended responses and productions.

These deficiencies apply to Requests for Production 5–9, 11, 15, 21–25, 27–39, and 42–48.

## B.    Improper Vagueness and Burden Objections

Plaintiffs also assert improper vagueness and burden objections throughout their Answers.  In many of these objections, Plaintiffs claim they are unable to know how to respond to Requests because of common terms like "agent," "member," "affiliate," "governance," "reporting," and "involving."  These words all have common meanings that Plaintiffs and their counsel can reasonably understand.  Plaintiffs fail to explain how or why any of these terms are vague in context, and cannot seriously claim these terms are so esoteric as to preclude an answer.  "An attorney responding to a document request must interpret the request reasonably and naturally in light of the facts and circumstances of the particular case." *Badger v. S. Farm Bureau Life Ins. Co.*, No. 606CV637ORL28KRS, 2008 WL 906561, at *2 (M.D. Fla. Apr. 2, 2008) (holding "valuation" was not vague).

10

Similarly, Plaintiffs' "recitation of expense and burdensomeness are merely conclusory." *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985). Plaintiffs' boilerplate burden objections merely conclude, without explanation or evidence, that the burden would likely outweigh any "likely benefit."

Defendant respectfully requests that the Court order Plaintiffs to withdraw their improper vagueness and burden objections and to provide full and complete amended responses and productions.

As to the improper vagueness objections, these deficiencies apply to Requests for Production 8, 11, 15, 19, 22–23, 25, 27, 30, 40, and 41.

As to the improper burden objections, these deficiencies apply to Requests for Production 5–9, 11, 15–18, 22–25, 27–39, 42–50.

## C.    Improper Objections to Definitions

Plaintiffs' objection to Defendant's definition of "Palestine Committee-Associated Entity" improperly changes the meaning of the term and, by extension, the Requests that incorporate it.

Defendant's definition of "Palestine Committee-Associated Entity" is not vague because it includes specific organizations identified by name. Plaintiffs may disagree with the inclusion of those organizations in the

11

definition, but that does not render the definition vague.  Plaintiffs may not substitute their own self-serving (and truly vague) definition—which turns upon whom "either *Plaintiff* has identified, discussed, or treated … as connected to … the Palestine Committee"—to avoid answering Requests about the specific organizations Defendant identified.

Plaintiffs should be ordered to withdraw their objection to this definition and amend their responses to Requests for Production 23, 25, and 43 accordingly.

### D.    Unsupported First Amendment Privilege Claims

Plaintiffs improperly object to numerous Requests on the grounds that they seek identities or other information about donors and coalition partners, but Plaintiffs do not even attempt to carry their "burden of making a *prima facie* showing of infringement on the right by the requested discovery."  *Fla. State Conf. of Branches and Youth Units of NAACP v. Lee*, 568 F. Supp. 3d 1301, 1307 (S.D. Fla. 2021).  And even if they had, information about Plaintiffs' donors and coalition partners is highly relevant to Plaintiffs' connections to terrorism-related entities and individuals, including through its donors and coalition partners, which is a key disputed fact in this action and central to Plaintiffs' own allegations

12

and Defendant's defenses. It is beyond reasonable dispute that thwarting terrorism and barring government resources from supporting terrorism is a compelling governmental interest of the highest order. *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 28 (2010) ("Everyone agrees that the Government's interest in combating terrorism is an urgent objective of the highest order."). Thus, there is "a substantial relation between the disclosure requirement and a sufficiently important governmental interest," and these Requests are narrowly tailored to that interest. *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 607 (2021) (Opinion of Roberts, C.J.) (quotation omitted); *cf. Christ Covenant Church v. Town of S.W. Ranches*, No. 07-60516-CIV, 2008 WL 2686860, at *11 (S.D. Fla. June 29, 2008) (Rosenbaum, Mag. J.) (granting motion to compel disclosure of members of plaintiff religious organization because, "in order to defend itself, the [government defendant] must have the means to investigate the [plaintiff's] factual assertions" alleged in the complaint).

Moreover, to the extent that Plaintiffs object to the disclosure of foreign donors or its relationships with foreign organizations, there is no constitutional interest to assert in the first place. *Agency for Int'l Dev. v.*

13

*All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 436 (2020) ("As foreign organizations operating abroad, plaintiffs' foreign affiliates possess no rights under the First Amendment."); *cf. Meese v. Keene*, 481 U.S. 465, 469 (1987) (explaining that federal law "requir[es] public disclosure by persons engaging in propaganda activities and other activities for or on behalf of foreign governments, foreign political parties, and other foreign principals"). Florida has a well-founded interest to determine if CAIR has received donations from, or has funded, sponsors of terrorism, such as Libyan Dictator Muammar Gaddafi.[3]

Defendant respectfully requests that the Court order Plaintiffs to produce the responsive documents.

These deficiencies apply to Requests for Production 3–4, 12–13, 21, 24, 25, 28–31, 34–39, and 48.

## II.   Specific Deficiencies in Plaintiffs' Responses

**RFPs  3–4,  12–13,  21,  24–25,  28–31,  34–39,  48**: Plaintiffs improperly object to these Requests on the grounds that they seek

---

[3] For example, a Congressional hearing revealed that in September 2009, Nihad Awad wrote a personal fundraising letter to Muammar Gaddafi that concluded by thanking Gaddafi for his "generous support." Ben Evansky, *Lawmaker Criticizes Muslim Group Director's 2009 Fundraising Letter to Qaddafi*, Fox News, April 6, 2011.

identities or other information about donors and coalition partners, but (as discussed above) fail to carry their "burden of making a *prima facie* showing of infringement on the right by the requested discovery." *Fla. State Conf. of Branches and Youth Units of NAACP v. Lee*, 568 F.Supp.3d 1301, 1307 (S.D. Fla. 2021).[4]

**RFPs 5–6**: These Requests seek documents related to specific allegations that the Plaintiffs make in their FAC; they are therefore relevant, narrowly tailored, and proportional to the needs of this case because the Plaintiffs have put them in issue. Plaintiffs' response that they will cherry-pick *public* documents *supporting* Plaintiffs' allegations that they "condemn[]" terrorism is an improper and self-serving limitation on the Request. Defendant is entitled to discovery to test the veracity of Plaintiffs' allegations.

**RFP 7**: This Request relates specifically to Plaintiffs' allegations denying any connection to violence or terrorism.  As explained in detail

---

[4] While Plaintiffs have amended their responses to RFPs 3, 4, 12, and 13 and have claimed that production is forthcoming, their amended responses to each still leave much to be desired.  Specifically, the scope of Plaintiffs' First Amendment objection is still unclear regarding whether Plaintiffs claim that the First Amendment extends to foreign donors, which is certainly relevant to Plaintiffs' assertion that they are not a terrorist organization.

above, any such connections are directly relevant to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).  Further, Plaintiffs' response solely as to specific federal designations is evasive and incomplete; the Request relates to any actual or potential designation by any federal agency, state government or agency, or non-U.S. government.

**RFP 8**: This Request relates specifically to Plaintiffs' allegations denying any connection to violence or terrorism.  As explained in detail above, discovery regarding that connection is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).  Further, and contrary to Plaintiffs' objection, the Request is perfectly clear that it seeks documents concerning "either Plaintiff, or any officer, employee, member, or affiliate of either Plaintiff."  Plaintiffs baselessly assert that the terms "member" and "affiliate" are not "clear," but those terms have commonly accepted

16

definitions that are clear from the context of the request—*i.e.* persons or individuals who are a part of, or connected to, either Plaintiff's organization.

**RFP 9**: This Request relates specifically to Plaintiffs' allegations denying any connection to violence or terrorism.  As explained in detail above, discovery regarding that connection is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).  Further, Plaintiffs' objection that the individuals may not have "any *current* connection" is misplaced because their connection to Plaintiffs, whether current or not, is clearly relevant to the government interest and tailoring at issue in this case.

**RFP 11**: This Request seeks documents related to specific assertions that the Plaintiffs deny in their FAC; it is therefore relevant, narrowly tailored, and proportional to the needs of this case because the Plaintiffs have put them in issue. Plaintiffs' response that they "will not produce documents" is unacceptable.  *Supra* pg. 5; *id.* at n.2.

**RFP 15**: This Request relates specifically to certain grounds—*i.e.* the "Whereas" clauses—that Defendant has cited as supporting the issuance of the Executive Order that Plaintiff is challenging in this action. Therefore, the documents relating to the factual basis for each of those grounds are central to the disputed issues in this case. Plaintiffs cannot "contend that there are no legitimate factual bases for the Executed Order" and then object in the same breath to producing documents that specifically relate to the factual bases identified in the Order. Defendant is entitled to test Plaintiffs' allegations and contentions through discovery.

**RFP 16**: This Request seeks documents related to the Plaintiffs' own allegations; they are therefore relevant, narrowly tailored, and proportional to the needs of this case because the Plaintiffs have put them in issue. Having made such allegations, Plaintiffs have no basis to object to their relevance.

**RFP 17**: This Request relates specifically to allegations that Plaintiffs have engaged in criminal activity, which—as established above—is directly relevant and narrowly tailored to Defendant's defenses. Documents showing Plaintiffs' responses to such allegations,

18

including to refute them, are therefore relevant and proportional to the needs of the case.

**RFP 18**: This Request seeks documents related to the Plaintiffs' own allegations; they are therefore relevant, narrowly tailored, and proportional to the needs of this case because the Plaintiffs have put them in issue. Having made such allegations, Plaintiffs have no basis to object.

**RFP 20**: Plaintiffs improperly limit their response to recent organization charts and documents. However, the ways that Plaintiffs have organized themselves throughout their history, and any changes to that structure (including in response to the HLF Prosecution or perhaps even in response to the Executive Order), are relevant and proportional to the issues in this case. For example, the identity and organizational roles of Plaintiffs' leaders are relevant to Plaintiffs' allegations denying any connection to violence or terrorism. As explained in detail above, discovery regarding that connection is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).

19

**RFP 21**: This Request seeks documents concerning the relationship between the Plaintiffs and the relationship between CAIR National and its affiliate chapters generally. The former is relevant to standing and the latter is relevant to the disputed issue of CAIR National's awareness, control, or endorsement of its affiliate chapters' conduct as it relates to potential ties to terrorism. Moreover, this Request is already narrowly drawn to require only documents "sufficient to show" financial transactions between the two named Plaintiffs.

**RFP 22**: Documents related to CAIR's founding, including its founders and its seed funding, are plainly relevant because they bear on the objectives and actions of the organization, including on the key issue of whether those objectives and actions are other than what Plaintiffs allege in their complaint and present to the public. Those are disputed issues that are relevant to the claims and defenses in this action.

**RFP 23**: This Request relates specifically to Plaintiffs' allegations denying any connections to violence or terrorism. As explained in detail above, any such connections are directly relevant to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism

20

and barring government resources from supporting terrorism). Plaintiffs' response that they will cherry-pick *public* documents *supporting* Plaintiffs' allegations that they "condemn[]" terrorism is an improper and self-serving limitation on the Request. Plaintiffs must supplement their response to include all responsive Documents.

Moreover, Plaintiffs' objection that "it is not clear what is meant by 'any Palestine Committee-Associated Entity'" ignores that Defendant provided a specific definition of "Palestine Committee-Associated Entity" in his Requests, and Plaintiffs *themselves* proposed their own definition of it in their Answers.  It is clear that Plaintiffs understand what Defendant means by it, and also what they would prefer it to mean. Plaintiffs' disagreement with Defendant's definition is not a basis to refuse to produce relevant documents.

**RFP 24**: Financial records Plaintiffs used or relied upon for tax purposes relate specifically to Plaintiffs' own allegations that they are an advocacy organization operating within the bounds permitted by 501(c)(3), and that they do not have a connection to violence or terrorism.  The Request is therefore directly relevant and narrowly tailored to both Plaintiffs' allegations and Defendant's defenses.

21

**RFP 25**: This Request relates specifically to Plaintiffs' allegations denying any connections to terrorist organizations. As explained in detail above, discovery regarding that connection is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism). To the extent that Plaintiffs acknowledge that there is a "wide swath" of payments or transfers between Plaintiffs and the organizations at issue in this Request, those documents are all the more relevant to this dispute and any asserted "burden" is therefore outweighed.

Moreover, Plaintiffs' objection that "it is not clear what is meant by 'any Palestine Committee-Associated Entity'" ignores that Defendant provided a specific definition of "Palestine Committee-Associated Entity" in his Requests, and Plaintiffs *themselves* proposed their own definition of it in their Answers. It is clear that Plaintiffs understand what Defendant means by it, and also what they would prefer it to mean. Plaintiffs' disagreement with Defendant's definition is not a basis to refuse to produce relevant documents.

22

**RFP 27**: This Request relates specifically to evidence that Plaintiffs or their agents have engaged in criminal activity, which—as established above—is directly relevant and narrowly tailored to Defendant's defenses. Documents identifying employees or agents of Plaintiffs who were allegedly involved in criminal activity, and Plaintiffs' responses to such allegations, are therefore relevant and proportional to the needs of the case. Plaintiffs baselessly assert that the terms "agent," "member," and "affiliate" are not "clear," but those terms have commonly accepted definitions that are clear from the context of the request—*i.e.* persons or individuals who represent, who are a part of, or who are connected to either Plaintiff's organization. Further, it is not burdensome for Plaintiffs to search their own personnel files for individuals who have been convicted of a crime or deported. To the extent that Plaintiff asserts burden based on the volume of responsive documents, those documents are all the more relevant to this dispute and any asserted "burden" is therefore outweighed.

**RFP 28–29**: The travel records sought by these Requests are relevant to the issue of contacts between Plaintiffs and organizations or individuals with known or potential ties to terrorism. As explained in

23

detail above, those contacts are directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).

**RFP 30**: This Request seeks specific categories of documents concerning Plaintiffs' connections to sanctioned persons and entities. Plaintiffs improperly limit their response to recent "communications," but the Request seeks all documents concerning certain of Plaintiffs' connections to sanctioned persons and entities. As explained in detail above, those connections are directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).

**RFP 31**: This Request seeks Communications between CAIR-National's co-founder and executive director and an individual who has

24

been publicly reported to have ties to terrorism.[5] As explained in detail above, those connections are directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).

**RFP 32**: This Request seeks Communications between Plaintiffs and terrorism-sanctioned entities and individuals. As explained in detail above, such communications are directly relevant to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism). Plaintiffs refuse to provide *any* responsive Communications related to several of the terrorism-sanctioned entities and individuals in the Request, and they improperly restrict the rest of their response to *recent* communications.

---

[5] *See, e.g.*, Susannah Johnston, *Hamas's Friends in America*, National Review, Oct. 21, 2023.

Further, Plaintiffs incorrectly assert that there is no "specificity as to whose communications are sought." But the Request specifically seeks *Plaintiffs'* communications—*i.e.* communications of CAIR National or CAIR-FL themselves, or of agents communicating on their behalf.  It is commonly understood that an organization may *speak* through individuals that represent it. Thus, Plaintiffs' limitation of their response to communications of their "executives" is improper.

Finally, Plaintiffs' objection that the Request seeks their communications with non-parties is misplaced; the Request seeks communications within *Plaintiffs'* possession, custody, or control.

**RFP 33**: This Request seeks "Documents" in Plaintiffs' possession that are "related to" specific terrorist entities. Plaintiffs improperly limit their response to "communications," and they further restrict their response to recent communications involving Plaintiffs' "executives," just as in their response to RFP 32. As explained in detail above, discovery regarding Plaintiffs' connection to terrorist entities is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government

26

resources from supporting terrorism).  Plaintiffs' objection that the Request seeks documents related to "entities, none of whom are Party to this case," is misplaced; the Request seeks documents within *Plaintiffs'* possession, custody, or control.

**RFPs 34–38**: Plaintiffs' contacts with foreign funding sources are directly relevant to the claims and defenses at issue in this case (including, *inter alia,* that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).  Moreover, as discussed above, there is no constitutional interest to assert as to the identities of foreign funding sources, *see Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 436 (2020) ("As foreign organizations operating abroad, plaintiffs' foreign affiliates possess no rights under the First Amendment."), and any such interest, if it existed, would nonetheless be outweighed by the need for disclosure here, *cf. Meese v. Keene*, 481 U.S. 465, 469 (1987) (explaining that federal law "require[es] public disclosure by persons engaging in propaganda activities and other activities for or on behalf of foreign governments, foreign political parties, and other foreign principals" (quotation omitted)).

27

**RFP 39**: Documents related to excess benefit transactions and disclosure of related entities relate specifically to Plaintiffs' own allegations that they are an advocacy organization operating within the bounds permitted by 501(c)(3), and that they thus do not have a connection to violence or terrorism. The Request is therefore directly relevant and narrowly tailored to both Plaintiff's allegations and Defendant's defenses. Further, retrieving discrete sets of documents that are filed annually with the IRS presents virtually no burden to Plaintiffs.

**RFP 40:** Plaintiffs baselessly object that "partner-vetting," "event co-sponsorship review," and "related-party transaction review" are "vague." To the contrary, the Request is clear and describes with particularity the documents sought. Specifically, "partner-vetting" refers to Plaintiffs' review processes for engaging in partnerships with other organizations or individuals. "Event co-sponsorship review" refers to Plaintiffs' vetting processes for organizations or individuals with whom it jointly sponsors an event. "Related-party transaction review" refers to Plaintiffs' processes for review of transactions with related organizations, as that term is used in Schedule R.

28

**RFP 41**: Plaintiffs baselessly object that "partner groups," "donor source concerns," and "related-party transactions" are "vague." To the contrary, the Request is clear and describes with particularity the documents sought. Specifically, "partner groups" refers to organizations with whom either Plaintiff has jointly engaged in events, initiatives, sponsorships, statements, or transactions. "Donor source concerns" refers to concerns that have been raised regarding the sources of either Plaintiff's funding. "Related-party transactions" refers to transactions with related organizations, as that term is used in Schedule R. Further, Plaintiffs' objection to the temporal scope of this Request is improper. The timeframe is limited by default to the lifespan of Plaintiffs' existence as organizations, and Documents dating back to Plaintiffs' founding are relevant to the Defendant's defense that ties to terrorism have infected Plaintiffs' organizations from their inception.

**RFP 42**: This Request seeks documents concerning policies and practices relating to key factual questions in dispute—Plaintiffs' connections to terrorist entities and individuals, and their allegation that they comply with 501(c)(3). As explained in detail above, such connections and compliance issues are directly relevant and narrowly tailored to the

29

claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).

**RFP 43**: This Request seeks documents bearing on Plaintiffs' self-description and attempts to craft their public image. Those issues concern whether Plaintiffs have connections to violence or terrorism, and whether they have attempted to cover up those connections. Thus, Plaintiffs' response that they will cherry-pick *public* documents *supporting* Plaintiffs' allegations that they "condemn[]" terrorism is an improper and self-serving limitation on the Request. As explained in detail above, Plaintiffs' connections to violence and terrorism are directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism). Further, Plaintiffs baselessly object, without explanation, that they "do not understand what is meant" by "public-relations plans," "media kits," "rapid response memoranda," "messaging guidance," and "Palestine Committee-Associated Entities." To the contrary, the Request is clear and describes with particularity the

30

documents sought.  As an initial matter, Defendant's Requests provided a specific definition of "Palestine Committee-Associated Entities," and Plaintiffs *themselves* proposed their own definition of it in their Answers. It is clear that Plaintiffs understand what Defendant means by it, and also what they would prefer it to mean.  Plaintiffs' disagreement with Defendant's definition is not a basis to refuse to produce relevant documents. The remaining phrases all have commonly accepted definitions that are clear from the context of the request. "Public-relations plans" refers to plans to manage brand reputation or shape public perception.  "Media kits" refers to sets of informational materials aimed at relations with the press.  "Rapid-response memoranda" refers to urgent policy documents or public relations documents created in response to a critical event, crisis, or sudden policy change.  "Messaging guidance" refers to talking points and other messaging strategies used by either Plaintiff.

**RFP 44**: This Request seeks documents specifically concerning Plaintiffs' responses to certain violent events, organizations, individuals, and ideologies, and it is therefore highly relevant to Plaintiffs' allegations that, *e.g.*, they "consistently condemn[] all forms of unjust violence."  FAC

31

¶ 30. Plaintiffs' response that they will cherry-pick *public* documents *supporting* Plaintiffs' allegations that they "condemn[]" terrorism is an improper and self-serving limitation on the Request. Defendant is entitled to discovery to test the veracity of Plaintiffs' allegations.

**RFP 45**: This Request seeks documents concerning Plaintiffs' responses to allegations of ties to violent, terrorist organizations.  Thus, the Request relates specifically to Plaintiffs' allegations denying any connection to violence or terrorism and alleging that no legitimate basis exists for the Executive Order.  As explained in detail above, discovery regarding that connection is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).

**RFP 46**: This Request seeks documents related to a specific university program (and related publications) that have produced research relating to Plaintiffs' ties to terrorist organizations.  Thus, the Request relates specifically to Plaintiffs' allegations denying any connection to violence or terrorism.  As explained in detail above,

32

discovery regarding that connection is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism). Finally, Plaintiffs' objection that the Request seeks documents created by non-parties is misplaced; the Request merely seeks documents within *Plaintiffs'* possession, custody, or control.

**RFP 47**: This Request seeks Documents and Communications related to Plaintiffs' connections to terrorist organizations (a–b, d) and related to the Florida House resolution that preceded the Executive Order (c). Thus, the Request relates specifically to Plaintiffs' allegations denying any connection to violence or terrorism. As explained in detail above, discovery regarding that connection is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).

**RFP 48**: This Request seeks documents regarding Plaintiffs' involvement in coalitions and coordinated conduct with other

33

organizations, which is relevant to show any connections Plaintiffs may have to terrorist groups through such coalitions or coordinated conduct. As explained in detail above, discovery regarding such connections is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism). Plaintiffs' response that they will cherry-pick *public* documents *supporting* Plaintiffs' allegations that they "condemn[]" terrorism is an improper and self-serving limitation on the Request.

Further, Plaintiffs baselessly object, without explanation, that they "do not know what is meant" by "coalition agreements," "event co-sponsorship records," "cross-promotional materials," "list-sharing records," "advocacy-planning materials," and "any related partner group." To the contrary, the Request is clear and describes with particularity the documents sought. Specifically, "coalition agreements" refers to any agreement by either Plaintiff to coordinate with another organization to achieve a common objective. "Event co-sponsorship records" refers to records relating to any event that either Plaintiff jointly

34

sponsored with the groups described in the Request. "Cross-promotional materials" refers to materials that either Plaintiff has used to promote the groups described in the Request, or vice versa. "List-sharing records" refers to lists of policies, members, funding sources, and the like that have been exchanged between Plaintiff and the groups described in the Request. "Advocacy-planning materials" refers to documents created to facilitate advocacy activities. "Any related partner group" refers to any entity that is organizationally related to the entities enumerated in this Request.

* * *

For these reasons, Defendant respectfully requests that the Court order Plaintiffs to produce all responsive documents and communications.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court GRANT the Motion to Compel Discovery.

July 22, 2026

Respectfully submitted,

JAMES UTHMEIER
*Attorney General*

RYAN D. NEWMAN
*Chief Deputy Attorney General*

DAVID M. S. DEWHIRST
*Solicitor General*

*/s/ Tyler E. Gustafson*
JEFFREY P. DESOUSA
(FBN 110951)
JASON J. MUEHLHOFF
*Chief Deputy Solicitors General*
TYLER E. GUSTAFSON
(FBN 1049292)
*Assistant Solicitor General*
COLEMAN BATSON
(FBN 110018)
*Special Counsel*

OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, Florida 32399
Phone: (850) 414-3300
*jeffrey.desousa@myfloridalegal.com*
*jenna.hodges@myfloridalegal.com*

*Counsel for Governor DeSantis*

36

## CERTIFICATE OF WORD COUNT

Pursuant to N.D. Fla. Loc. R. 7.1(F), the undersigned hereby certifies that this motion contains 6,395 words, inclusive of headings, footnotes, and quotations, according to the word-processing system used to prepare the motion.

DATE: July 22, 2026                              */s/ Tyler E. Gustafson*

## CERTIFICATE OF CONFERRAL

Pursuant to Fed. R. Civ. P. 37(a)(1) and N.D. Loc. R. 7.1(B), the undersigned counsel state that on June 29, 2026, and July 22, 2026, Defendant's counsel met and conferred via teleconference in good faith with Plaintiffs' counsel. At that conference, counsel for the parties discussed the issues raised in this Motion but were unable to reach agreement on those issues.

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record was delivered a true and correct of this motion via CMECF on July 22, 2026.

/s/ Tyler E. Gustafson

37