# Exhibit C



June 18, 2026

Scott D. McCoy, Deputy Legal Director
Southern Poverty Law Center
2 South Biscayne Boulevard, Suite 3200
Miami, FL 33131
splcenter.org

Mr. McCoy,

I write in response to Plaintiffs' June 1 and June 4 answers to Defendant's First Set of Interrogatories ("Interrogatories"), First Set of Requests for Production ("RFPs), and First Set of Requests for Admission ("RFAs") (collectively, the "Discovery Requests" and, the answers thereto, the "Answers"). The Answers state numerous improper objections and improperly refuse to provide *any* substantive response to 16 of the 22 Interrogatories, 35 of the 51 Requests for Production, and 106 of the 175 RFAs. And the few substantive responses that Plaintiffs do provide are predominantly incomplete, evasive, and non-compliant. Defendant specifically addresses the general and specific deficiencies in Plaintiffs' Answers below. Please cure these deficiencies by no later than June 26, 2026. We welcome and anticipate that we may meet and confer before that date. Please let us know when you are available prior to the June 26 deadline so that we may schedule a time for this meet and confer.

**General Deficiencies**

**A. Baseless Relevance Objections**

Plaintiffs object that virtually every Discovery Request relating in any way to Plaintiffs' current or historical connections to terrorism are somehow "irrelevant to … whether Governor DeSantis violated Plaintiffs' constitutional rights to free speech, to petition the government, to freedom of association, and to procedural due process by issuing the challenged Executive Order." This is baseless and improper. "The bar for relevance in discovery is low, and 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Travis L. v. Robinson Helicopter Co. Inc.*, No. 1:24-cv-3-MW/MJF, 2024 WL 6953106, at *2 (N.D. Fla. Dec. 12, 2024) (Walker,

C.J.). Indeed, in the context of this case—in which Plaintiffs ask the Court to remove and forever enjoin Florida from designating them as terrorist organizations—this position is facially absurd.

The Discovery Requests at issue are highly relevant to Defendant's defenses to Plaintiffs' claims. They are likely to lead to relevant evidence of Plaintiffs' past conduct that will support Defendant's defenses that (1) Defendant's evaluation of the facts is entitled to deference; (2) that the Executive Order addresses conduct falling outside the First Amendment; (3) that the Executive Order is viewpoint and content neutral; (4) that the EO serves a valid, non-retaliatory government purpose; (5) that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism; (6) that the Executive Order is narrowly tailored; and (7) that Defendant had probable cause to issue the Executive Order; etc. Rule 26 expressly entitles a defendant to obtain discovery relevant to its own defenses.[1]

Plaintiffs' attempt to circumscribe the relevant issues by focusing exclusively on *their own* allegations and *their own* theory of the case is improper. *See Solomon v. United Specialty Ins. Co.*, No. 0:22-CV-62405, 2024 WL 552187, at *4 (S.D. Fla. Feb. 12, 2024) (holding that a defendant has a right to discovery on its own affirmative defenses without a threshold determination of the merits of those defenses). Information is discoverable under the Federal Rules where "[t]he defendants have at least argued that the [discovery is] relevant to their defense," regardless of whether the plaintiff—or even the court—believes Defendants are likely to prevail on their theory. *Props. of the Vills., Inc. v. Kranz*, No. 5:19-cv-647-Oc-30PRL, 2020 WL 6393834, at *3–4 (M.D. Fla. Nov. 2, 2020).

Moreover, Discovery Requests seeking information regarding Plaintiffs' ties to terrorism or material support for terrorist organizations are relevant to *Plaintiffs'* own allegations putting into issue, for example: (1) whether Plaintiffs have "ever been

---

[1] *See, e.g.*, *Herron v. Eastern Indus., Inc.*, No. 5:07-cv-35, 2007 WL 2781211, at *1–5 (N.D. Fla. Sept. 19, 2007) (Timothy, Mag. J.) (denying protective order and holding that defendants are entitled to discover information that is "directly relevant to Defendants' defenses"); *Luczak v. Nat'l Beverage Corp.*, No. 18-61631-CIV-Moore/Snow, 2020 WL 10505310, at *3–4 (S.D. Fla. Nov. 2, 2020) (granting "motion to compel plaintiff to produce "evidence that is directly relevant to Defendants' defense in this action"); *Traveler's Ins. Co. v. Commercial Cool-Temp Corp.*, No. 11-61748-CIV-Dimitrouleas/Snow, 2012 WL 13134027, at *6 (S.D. Fla. May 16, 2012) (granting defendant's motion to compel answer to interrogatory because it is "highly relevant to [a] defense").

investigated, prosecuted, indicted, or convicted for any act of violence, terrorism, or material support for terrorism" (FAC ¶ 32); (2) the veracity of "allegations … that CAIR's finances warranted heightened scrutiny" (FAC ¶ 62); (3) whether the Executive Order affects Plaintiffs "solely … because of Plaintiff's constitutionally protected advocacy" (FAC ¶¶ 87–88); (4) whether Plaintiffs engaged in relevant conduct other than "public education, interfaith work, and civil rights and policy advocacy" (FAC ¶ 101); (5) whether there is "any legitimate" or "compelling" "governmental interest" or "justification" for the Executive Order (FAC ¶¶ 89, 91, 96); (6) whether the Executive Order is "narrowly tailored … to further any purported governmental interest" (FAC ¶¶ 91, 105); whether the Executive Order is "necessary to advance the Executive Order's stated purpose" (FAC ¶ 105); and (7) whether the Executive Order was "issued in response to any identified, ongoing, or imminent emergency or threat to public safety" (FAC ¶ 133).  Plaintiffs made those allegations; they cannot now deny their relevance. Indeed, Plaintiffs themselves served a request on Defendant to produce "all documents … that support the designation that Plaintiffs are terrorist organizations."

Plaintiffs must withdraw the improper relevance objections and provide full and complete amended responses.

### B. Improper Vagueness and Burden Objections

Plaintiffs also assert improper vagueness and burden objections throughout their Answers.  In many of these objections, Plaintiffs claim they are "unable to know how to respond" to entire Discovery Requests because of common terms like, "authorization," "seed funding," "agent," "representative," "involvement," "relationship," "review," "remediation effort," "collection effort," "data-preservation," and "offenses relating to terrorism."  These words and phrases all have common meanings that Plaintiffs and their counsel can reasonably understand.  Plaintiffs fail to explain how or why any of these terms are vague in context, and cannot seriously claim these terms are so esoteric as to preclude an answer.  "An attorney responding to a document request must interpret the request reasonably and naturally in light of the facts and circumstances of the particular case." *Badger v. S. Farm Bureau Life Ins. Co.*, No. 606CV637ORL28KRS, 2008 WL 906561, at *2 (M.D. Fla. Apr. 2, 2008) (holding "valuation" was not vague).

Elsewhere, Plaintiffs object to *defined terms* such as "Known Representatives" as vague, without explaining what is supposedly vague about the definition provided. These boilerplate objections are also improper.  *Hatfield v. A+ Nursetemps, Inc.*, No. 5:11-CV-416-OC-10TBS, 2012 WL 1326120, at *2 (M.D. Fla. Apr. 17, 2012).

Similarly, Plaintiffs' "recitation of expense and burdensomeness are merely conclusory." *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985). Plaintiffs' burden objections merely conclude, without explanation or evidence, that the burden would likely outweigh any "likely benefit." Such boilerplate objections are improper and must be withdrawn.

### C. Improper Objections to Definitions

Plaintiffs' objections to Defendant's defined terms are boilerplate and, even more troublingly, appear to significantly change the meaning of the terms and, by extension, the Discovery Requests that incorporate them.

- Plaintiffs' objections to the definition of "Plaintiff" to include officers, employees, principals, representatives, agents, etc. of CAIR-Foundation, Inc. and CAIR-Florida, Inc. is improper. As Plaintiffs themselves state, Plaintiffs are "organizations comprised of individuals." That is precisely why Defendant defined "Plaintiff" to include those individuals. Plaintiffs may not ignore that definition simply to manufacture an utterly frivolous objection that Plaintiffs are incapable of their own communications (discussed below).

- Defendant's definition of "Palestine Committee-Associated Entity" is not vague because it includes specific organizations identified by name or because Plaintiffs disagree with the inclusion of those organizations in the definition. Plaintiffs may not substitute their own self-serving (and truly vague) definition—which turns upon whom "either *Plaintiff* has identified, discussed, or treated as connected to … the Palestine Committee"—to avoid answering Discovery Requests about the specific organizations Defendant identified.

Plaintiffs must withdraw their objections to these definitions and amend their Answers accordingly.

### D. Frivolous Assertions that Plaintiffs Are Incapable of Communication

Plaintiffs' objections that they "are organizations and thus incapable of their own communications," and similar "objections" scattered throughout their Answers, are factually and legally frivolous. The very first allegation in Plaintiffs' complaint states that CAIR is "an expressive association engaged in civil rights advocacy" (FAC ¶ 1), and the complaint is rife with allegations about Plaintiffs' communications. *E.g.,* FAC ¶ 11 ("Plaintiffs regularly make posts … on social media outlets … to *communicate*…."). If organizations were "incapable of their own communications," then they would categorically lack standing to bring First Amendment claims, which is plainly not the law. And, in any case, the Discovery Requests expressly define

4

"Plaintiff" to include each Plaintiff's officers, employees, and agents.  Plaintiffs' use of these patently frivolous objections to avoid answering relevant Discovery Requests amounts to clear discovery misconduct.  Plaintiffs must withdraw these objections immediately.

### E. Unsupported First-Amendment Privilege Claims

Plaintiffs improperly object to numerous Requests on the grounds that they seek identities of donors, but Plaintiffs do not even attempt to carry their "burden of making a *prima facie* showing of infringement on the right by the requested discovery." *Fla. State Conf. of Branches and Youth Units of NAACP v. Lee*, 568 F. Supp. 3d 1301, 1307 (S.D. Fla. 2021).  And even if they had, Plaintiffs' donor identities are highly relevant to Plaintiffs' connections to terrorism-related entities and individuals, which is a key disputed fact in this action and central to Plaintiffs' own allegations and Defendant's defenses.  It is beyond reasonable dispute that thwarting terrorism and barring government resources from supporting terrorism is a compelling governmental interest of the highest order.  *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 28 (2010) ("Everyone agrees that the Government's interest in combating terrorism is an urgent objective of the highest order.").  Thus, there is "a substantial relation between the disclosure requirement and a sufficiently important governmental interest," and these Requests are narrowly tailored to that interest. *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 607 (2021) (quotation omitted).

Moreover, to the extent that Plaintiffs object to the disclosure of foreign donors, there is no constitutional interest to assert in the first place.  *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 436 (2020) ("As foreign organizations operating abroad, plaintiffs' foreign affiliates possess no rights under the First Amendment."); *cf. Meese v. Keene*, 481 U.S. 465, 469 (1987) (explaining that federal law "requir[es] public disclosure by persons engaging in propaganda activities and other activities for or on behalf of foreign governments, foreign political parties, and other foreign principals").  Florida has a well-founded interest to determine if CAIR is, or has, received donations from sponsors of terrorism, such as Libyan Dictator Muammar Gaddafi.[2]

---

[2] For example, a Congressional hearing revealed that in September 2009, Nihad Awad wrote a personal fundraising letter to Muammar Gaddafi that concluded by thanking Gaddafi for his "generous support." Ben Evansky, *Lawmaker Criticizes Muslim Group Director's 2009 Fundraising Letter to Qaddafi*, Fox News, April 6, 2011.

## Specific Deficiencies

### A. Interrogatories

**Interrogatory 1**:  Plaintiffs object to this interrogatory "to the extent it seeks information about donors to either Plaintiff" as "information [that] is protected from disclosure under the First Amendment to the U.S. Constitution."  To the extent that Plaintiffs claim any alleged injury relating to donors or donations, Plaintiffs have put those donors or donations in issue and waived any applicable protection.  Defendant reserves the right to discovery relating to any such claim.

**Interrogatories Nos. 2–6**:  Plaintiffs' relevance, vagueness, and burden objections are invalid for the reasons stated above.  Plaintiffs must answer the Interrogatories fully and completely.

**Interrogatory No. 7**:  Plaintiffs' objection that "*any* steps" they "may have taken in reaction to the HLF Prosecution would not be relevant" is factually and legally incorrect.  The scope of discovery is not unilaterally defined by Plaintiffs, and as Plaintiffs acknowledge, "In the HLF Prosecution in 2007," the federal government listed CAIR among 245 unindicted co-conspirators "in a criminal case brought against other entities."  The Interrogatory asks what, if anything, Plaintiffs did in response to the allegations against the defendant entities and the other unindicted co-conspirators.  Plaintiffs' "objection" is not an objection at all; Plaintiffs merely argue that the government's allegations were "untested" or somehow improper.  This is non-responsive and evasive.  Plaintiffs must describe whatever they did in response to the allegations, regardless of what they thought of the allegations' merits.  If the answer is nothing, then Plaintiffs must so state.

**Interrogatory Nos. 8–9**:  Plaintiffs' relevance, vagueness, and burden objections are invalid for the reasons stated above.  Plaintiffs must answer the Interrogatories fully and completely.

**Interrogatory No. 10**:  Plaintiffs' relevance, vagueness, and burden objections are invalid for the reasons stated above.  Plaintiffs must answer the Interrogatory fully and completely.

Additionally, Plaintiffs' objection that they are "unable to determine who Known Representatives of any of these groups would be" is non-sensical.  The interrogatory asks about *Known* Representatives, i.e. individuals *known* by Plaintiffs to be representatives.  *Unknown* representatives are not within the scope of this interrogatory.  Plaintiffs must answer based on the information in its possession, custody, or control, which is all that this interrogatory asks them to do.

6

**Interrogatory No. 11**:  Plaintiffs' relevance, vagueness, and burden objections are invalid for the reasons stated above.  Plaintiffs must answer the Interrogatory fully and completely.

**Interrogatory No. 12**:   Plaintiffs' two objections to this Interrogatory are so meritless as to indicate bad faith.  First, as discussed above, Plaintiffs' objection that they "are organization and thus incapable of their own communications" is factually and legally frivolous.

Second, Plaintiffs' objection that this Interrogatory seeks "all Communications related to Gaza, Lebanon, or Iran" is a willful misreading of the Interrogatory.  The Interrogatory explicitly asks only about communications *with Sanctions-Listed* persons and entities, and then further narrows in scope to communications with such persons and entities about the enumerated topics.  Using such an obvious and willful misreading of the Interrogatory as an excuse not to answer it smacks of bad faith. Plaintiffs must withdraw this objection as well.

**Interrogatory No. 13**:  Plaintiffs' relevance, vagueness, and burden objections are invalid for the reasons stated above.   Plaintiffs' objection that they, as organizations, are incapable of communications is also invalid and frivolous for the reasons explained above.  Plaintiffs must answer the Interrogatory fully and completely.

**Interrogatory No. 14**: Plaintiffs' response is incomplete as it does not answer the Interrogatory with respect to the entire relevant time period. The Interrogatories instructed Plaintiffs to treat "January 1, 2019, through the date of response" as the relevant time period.  Plaintiffs did not object to that instruction and therefore must comply with it.  Please amend your answer to cover policies and practices in place since January 1, 2019.

**Interrogatory No. 15**:  Plaintiffs' relevance, vagueness, and burden objections are invalid for the reasons stated above.  Plaintiffs must answer the Interrogatory fully and completely.

**Interrogatory No. 16**: Defendant inadvertently omitted definitions of IIRO, IDB, OIC, and WAMY from its Interrogatories.  While Defendant expects that Plaintiffs know well what these terms refer to, Defendant provides the following definitions to clear up any possible confusion:

- "JIRO" was intended to read "IIRO" and refer to the International Islamic Relief Organization, which is based in Saudi Arabia;
- "IDB" refers to the Islamic Development Bank, also based in Saudi Arabia;

7

- "OIC" refers to the "Organization of Islamic Cooperation," also based in Saudi Arabia;
- "WAMY" refers to the World Assembly of Muslim Youth, which is headquartered in Riyadh, Saudi Arabia;
- "UBK" refers to the United Bank of Kuwait, which is based in Kuwait.

Plaintiffs' other objections are invalid for the reasons stated above. Plaintiffs must answer the Interrogatory fully and completely.

**Interrogatory No. 17–18**: Plaintiffs' relevance, vagueness, and burden objections are invalid for the reasons stated above. Plaintiffs must answer the Interrogatory fully and completely.

**Interrogatory No. 19**: Plaintiffs' response is incomplete as it does not answer the Interrogatory with respect to the entire relevant time period. The Interrogatory specifically requests policies, trainings, and practices from January 1, 2019, to the present. Plaintiffs' response that it will produce documents going back only to January 1, 2023, is incomplete and inadequate. Please amend your answer to cover policies and practices in place since January 1, 2019.

**Interrogatory No. 20**: Plaintiffs' relevance, vagueness, and burden objections are invalid for the reasons stated above.

Plaintiffs' privilege objection is also invalid. This interrogatory seeks underlying facts about Plaintiffs' conduct concerning sanctions and terrorism-related compliance. Those facts are discoverable. Neither attorney-client privilege nor the work-product doctrine protects underlying facts merely because such facts are later incorporated into an attorney-client communication or attorney work product, and this Interrogatory does not seek the contents of any such protected communication or work product. *Stern v. O'Quinn*, 253 F.R.D. 663, 687 (S.D. Fla. 2008) ("The work-product doctrine does not protect factual *information* from disclosure. Rather, it protects a party only from disclosing particular *documents* containing the information. To accommodate these principles, a party may propound interrogatories and take depositions to obtain the sought-after factual information."); *see also Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981) (attorney-client privilege "extends only to *communications* and not to facts").

Plaintiffs must answer the Interrogatory fully and completely.

**Interrogatory No. 21**: Plaintiffs' response is incomplete as it does not answer the Interrogatory with respect to the entire relevant time period. The Interrogatory specifically requests information for the period of January 1, 2019, to the present.

Plaintiffs' answer as to communication platforms it has used since January 1, *2023*, is incomplete and inadequate.  Please amend your answer to cover communications platforms used since January 1, 2019.

**Interrogatory No. 22**:  Plaintiffs' response to Interrogatory No. 22 is incomplete because it fails to "identify the custodians, devices, accounts, and repositories covered" by the formal litigation holds.  Such information is not privileged or protected work-product.  *Colonial BancGroup Inc. v. PriceWaterhouseCoopers LLP*, Nos. 2:11-cv-746-WKW, 2:12-cv-957, 2016 WL 9687001, at \*5 (M.D. Ala. Jan. 22, 2016) (holding that the "names and titles of the persons notified of the litigation holds" is "in no way subject to an assertion of attorney work product or a claim of attorney-client privilege" and that the "types of documents and files (including ESI) subject to the litigation holds" is "non-privileged categorical information"). Plaintiffs' objection that litigation holds and preservation notices are protected is misplaced because this Interrogatory does not request any litigation hold or the contents thereof, it requests underlying facts about who and what is subject to them.  *Stern*, 253 F.R.D. at 687.  Plaintiffs must withdraw their non-responsive objection and answer the Interrogatory fully and completely.

## B.  Requests for Production

**RFP 2**:  Plaintiff's vagueness objection to the phrase "any other identified counterparty" is meritless because, among other things, Plaintiffs have specifically identified counterparties in their pleadings and responses to interrogatories. Please supplement your response to include all responsive Communications with other identified counterparties.

**RFPs 3–4, 12–13, 21, 24–25, 28–29, 34–38, 39**: Plaintiffs improperly object to these Requests on the grounds that they seek identities of donors, but (as discussed above) fail to carry their "burden of making a *prima facie* showing of infringement on the right by the requested discovery." *Fla. State Conf. of Branches and Youth Units of NAACP v. Lee*, 568 F.Supp.3d 1301, 1307 (S.D. Fla. 2021).

**RFPs 5–6**:  These Requests seek documents related to specific allegations that the Plaintiffs make in their FAC; they are therefore relevant, narrowly tailored, and proportional to the needs of this case because the Plaintiffs have put them in issue. Plaintiffs' response that they will cherry-pick the documents they perceive as "sufficient to substantiate" their allegations is an unacceptable and self-serving limitation on Defendant's Request for all Documents and Communications *relating* to those allegations. Please supplement your response to include all responsive Documents and Communications.

9

**RFP 7**:   This Request relates specifically to Plaintiffs' allegations denying any connection to violence or terrorism.   As explained in detail above, any such connections are directly relevant to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).   Further, Plaintiffs' response solely as to specific federal designations is evasive and incomplete; the Request relates to any actual or potential designation by any federal agency, state government or agency, or non-U.S. government.   Please supplement your response to include all responsive Documents.

**RFP 8**:   This Request relates specifically to Plaintiffs' allegations denying any connection to violence or terrorism.  As explained in detail above, discovery regarding that connection is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).   Further, and contrary to Plaintiffs' objection, the Request is perfectly clear that it seeks documents concerning "either Plaintiff, or any officer, employee, member, or affiliate of either Plaintiff."   Plaintiffs baselessly assert that the terms "member" and "affiliate" are not "clear," but those terms have commonly accepted definitions that are clear from the context of the request—*i.e.* persons or individuals who are a part of, or connected to, either Plaintiff's organization.  Please supplement your response to include all responsive Documents.

**RFP 9**:   This Request relates specifically to Plaintiffs' allegations denying any connection to violence or terrorism.  As explained in detail above, discovery regarding that connection is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).   Further, Plaintiffs' objection that the individuals may not have "any *current* connection" is misplaced because their connection to Plaintiffs, whether current or not, is clearly relevant to the government interest and tailoring at issue in this case.   Please supplement your response to include all responsive Documents.

**RFPs 10–11**:   These Requests seek documents related to specific allegations the Plaintiffs make in their FAC; they are therefore relevant, narrowly tailored, and proportional to the needs of this case because the Plaintiffs have put them in issue. Plaintiffs' response that they "will not produce documents" is unacceptable.   Please supplement your response to include all responsive Documents.

10

**RFP 13**:  This Request seeks documents related to specific allegations the Plaintiffs make in their FAC; they are therefore relevant, narrowly tailored, and proportional to the needs of this case.  Plaintiffs' response that they will cherry-pick the documents they perceive as "sufficient to show" their allegations is an unacceptable limitation on Defendant's Request for all Documents and *relating* to those allegations.  Please supplement your response to include all responsive Documents.

**RFP 15**: This Request relates specifically to certain grounds—*i.e.* the "Whereas" clauses—that Defendant has cited as supporting the issuance of the Executive Order that Plaintiff is challenging in this action.  Therefore, the documents relating to factual basis for each of those grounds are central to the disputed issues in this case.  Plaintiffs cannot "contend that there are no legitimate factual bases for the Executed Order" and then object in the same breath to producing documents that specifically relate to the factual bases identified in the Order.  Defendant is entitled to test Plaintiffs' allegations and contentions through discovery.  Please supplement your response to include all responsive Documents.

**RFP 16**:  This Request seeks documents related to the Plaintiffs' own allegations; they are therefore relevant, narrowly tailored, and proportional to the needs of this case because the Plaintiffs have put them in issue.  Having made such allegations, Plaintiffs have no basis to object to their relevance.  Please supplement your response to include all responsive Documents.

**RFP 17**:  This Request relates specifically to allegations that Plaintiffs have engaged in criminal activity, which—as established above—is directly relevant and narrowly tailored to Defendant's defenses.  Documents showing Plaintiffs' responses to such allegations, including to refute them, are therefore relevant and proportional to the needs of the case.

**RFP 18**:  This Request seeks documents related to the Plaintiffs' own allegations; they are therefore relevant, narrowly tailored, and proportional to the needs of this case because the Plaintiffs have put them in issue.  Having made such allegations, Plaintiffs have no basis to object. Please supplement your response to include all responsive Documents.

**RFP 20**:  Plaintiffs improperly limit their response to "current" organization charts and documents.  However, the ways that Plaintiffs have organized themselves throughout their history, and any changes to that structure (including in response to the HLF Prosecution or perhaps even in response to the Executive Order), are relevant and proportional to the issues in this case. For example, the identity and organizational roles of Plaintiffs' leaders are relevant to Plaintiffs' allegations

11

denying any connection to violence or terrorism.  As explained in detail above, discovery regarding that connection is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).  Please supplement your response to include all responsive Documents, without the improper and artificial temporal limitation.

**RFP 21**:  This Request seeks documents concerning the relationship between the Plaintiffs and the relationship between CAIR National and its affiliate chapters generally.  The former is relevant to standing and the latter is relevant to the disputed issue of CAIR National's awareness, control, or endorsement of its affiliate chapters' conduct as it relates to potential ties to terrorism.  Moreover, this Request is already narrowly drawn to require only documents "sufficient to show" financial transactions between the two named Plaintiffs.  Plaintiffs must produce documents responsive to this Request.

**RFP 22**:  Documents related to CAIR's founding, including its founders and its seed funding, are plainly relevant because they bear on the objectives and actions of the organization, including on the key issue of whether those objectives and actions are other than what Plaintiffs allege in their complaint and present to the public.  Those are disputed issues that are relevant to the claims and defenses in this action.  Please supplement your response to include all responsive Documents.

**RFP 23**:  This Request relates specifically to Plaintiffs' allegations denying any connections to violence or terrorism. As explained in detail above, any such connections are directly relevant to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).  Please supplement your response to include all responsive Documents.

Moreover, Plaintiffs' objection that "it is not clear what is meant by 'any Palestine Committee-Associated Entity'" ignores that Defendant provided a specific definition of "Palestine Committee-Associated Entity" in its Discovery Requests, and Plaintiffs *themselves* proposed their own definition of it in their Answers.  It is clear that Plaintiffs understand what Defendant means by it, and also what they would prefer it to mean.  Plaintiffs' disagreement with Defendant's definition is not a basis to refuse to produce relevant documents.

**RFP 24**:  Financial records Plaintiffs used or relied upon for tax purposes relate specifically to Plaintiffs' own allegations that they are an advocacy organization

operating within the bounds permitted by 501(c)(3), and that they do not have a connection to violence or terrorism.  The Request is therefore directly relevant and narrowly tailored to both Plaintiff's allegations and Defendant's defenses.  Please supplement your response to include all responsive Documents.

**RFP 25**:  This Request relates specifically to Plaintiffs' allegations denying any connections to terrorist organizations.  As explained in detail above, discovery regarding that connection is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).  To the extent that Plaintiffs acknowledge that there is a "wide swath" of payments or transfers between Plaintiffs and the organizations at issue in this Request, those documents are all the more relevant to this dispute and any asserted "burden" is therefore outweighed. Please supplement your response to include all responsive Documents.

**RFP 26**: The prosecution of HLF—and Plaintiffs' connection to HLF and that prosecution—is a highly relevant basis for the Executive Order, and is therefore relevant to the claims and defenses in this action.  As explained in detail above, discovery regarding that connection is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).  Please supplement your response to include all responsive Documents.

**RFP 27**:  This Request relates specifically to evidence that Plaintiffs or their agents have engaged in criminal activity, which—as established above—is directly relevant and narrowly tailored to Defendant's defenses.  Documents identifying employees or agents of Plaintiffs who were allegedly involved in criminal activity, and Plaintiffs' responses to such allegations, are therefore relevant and proportional to the needs of the case.  Plaintiffs baselessly assert that the terms "agent," "member," and "affiliate" are not "clear," but those terms have commonly accepted definitions that are clear from the context of the request—*i.e.* persons or individuals who represent, who are a part of, or who are connected to either Plaintiff's organization.  Further, it is not burdensome for Plaintiffs to search their own personnel files for individuals who have been convicted of a crime or deported.  To the extent that Plaintiff asserts burden based on the volume of responsive documents, those documents are all the more relevant to this dispute and any asserted "burden" is therefore outweighed.  Please supplement your response to include all responsive personnel files.

13

**RFP 28–29**:  The travel records sought by these Requests are relevant to the issue of contacts between Plaintiffs and organizations or individuals with known or potential ties to terrorism.  As explained in detail above, those contacts are directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).  Please supplement your response to include all responsive Documents.

**RFP 30**:  This Request seeks specific categories of documents concerning Plaintiffs' connections to sanctioned persons and entities.  As explained in detail above, those connections are directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).  Please supplement your response to include all responsive Documents.

**RFP 32**:  This Request seeks Communications between Plaintiffs and terrorism-sanctioned entities and individuals.  As explained in detail above, such communications are directly relevant to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).

Further, Plaintiffs incorrectly assert that there is no "specificity as to whose communications are sought."  But the Request specifically seeks *Plaintiffs'* communications—*i.e.* communications of CAIR National or CAIR-FL themselves, or of agents communicating on their behalf.  Finally, Plaintiffs' objection that the Request seeks their communications with non-parties is misplaced; the Request seeks communications within *Plaintiffs'* possession, custody, or control.  Please supplement your response to include all responsive Communications.

**RFP 33**:  This Request seeks Documents in Plaintiffs' possession related to terrorist entities.  As explained in detail above, discovery regarding that connection is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).  Plaintiffs' objection that the Request seeks documents related to "entities, none of whom are Party to this case," is misplaced; the Request seeks documents within *Plaintiffs'* possession, custody, or control.  Please supplement your response to include all responsive Documents.

14

**RFPs 34–38**:  Plaintiffs' contacts with foreign funding sources are directly relevant to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).  Moreover, as discussed above, there is no constitutional interest to assert as to the identities of foreign-funding sources, *see Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 436 (2020) ("As foreign organizations operating abroad, plaintiffs' foreign affiliates possess no rights under the First Amendment."), and any such interest, if it existed, would be nonetheless be outweighed by the need for disclosure here, *cf. Meese v. Keene*, 481 U.S. 465, 469 (1987) (explaining that federal law "require[es] public disclosure by persons engaging in propaganda activities and other activities for or on behalf of foreign governments, foreign political parties, and other foreign principals" (quotation omitted)).

**RFP 39**:  Documents related to excess benefit transactions and disclosure of related entities relate specifically to Plaintiffs' own allegations that they are an advocacy organization operating within the bounds permitted by 501(c)(3), and that they thus do not have a connection to violence or terrorism.  The Request is therefore directly relevant and narrowly tailored to both Plaintiff's allegations and Defendant's defenses.  Further, retrieving discrete sets of documents that are filed annually with the IRS presents virtually no burden to Plaintiffs.  Please supplement your response to include all responsive Documents.

**RFP 40:**  Plaintiffs baselessly object, without explanation, that "partner-vetting," "event co-sponsorship review," and "related-party transaction review" are "vague." To the contrary, the Request is clear and describes with particularity the documents sought.  Specifically, "partner-vetting" refers to Plaintiffs' review processes for engaging in partnerships with other organizations or individuals.  "Event co-sponsorship review" refers to Plaintiffs' vetting processes for organizations or individuals with whom it jointly sponsors an event.  "Related-party transaction review" refers to Plaintiffs' processes for review of transactions with related organizations, as that term is used in Schedule R.  Please supplement your response to include all responsive Documents.

**RFP 41**:  Plaintiffs baselessly object, without explanation, that "remediation effort," "governance response," "partner groups," "donor source concerns," and "related-party transactions" are "vague."  To the contrary, the Request is clear and describes with particularity the documents sought.  Specifically, "remediation effort" refers to either Plaintiff's efforts to correct or mitigate issues concerning sanctions, partner groups, donor source concerns, or related-party transactions.  "Governance response" refers

15

to any changes in either Plaintiff's policies, practices, or organizational structure in response to issues concerning sanctions, partner groups, donor source concerns, or related-party transactions. "Partner groups" refers to organizations with whom either Plaintiff has jointly engaged in events, initiatives, sponsorships, statements, or transactions. "Donor source concerns" refers to concerns that have been raised regarding the sources of either Plaintiff's funding. "Related-party transactions" refers to transactions with related organizations, as that term is used in Schedule R. Further, Plaintiffs' objection to the temporal scope of this Request is improper. The timeframe is limited by default to the lifespan of Plaintiffs' existence as organizations, and Documents dating back to Plaintiffs' founding are relevant to the Defendant's defense that ties to terrorism have infected Plaintiffs' organizations from their inception. Please supplement your response to include all responsive Documents.

**<u>RFP 42</u>**: This Request seeks documents concerning policies and practices relating to key factual questions in dispute—Plaintiffs' connections to terrorist entities and individuals, and their allegation that they comply with 501(c)(3). As explained in detail above, such connections and compliance issues are directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism). Please supplement your response to include all responsive Documents.

**<u>RFP 43</u>**: This Request seeks documents bearing on Plaintiffs' self-description and attempts to craft their public image. Those issues concern whether Plaintiffs have connections to violence or terrorism, and whether they have attempted to cover up those connections. As explained in detail above, such connections are directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism). Further, Plaintiffs baselessly object, without explanation, that they "do not understand what is meant" by "public-relations plans," "media kits," "rapid-response memoranda," "messaging guidance," and "Palestine Committee-Associated Entities." To the contrary, the Request is clear and describes with particularity the documents sought. As an initial matter, Defendant's Requests provided a specific definition of "Palestine Committee-Associated Entities." The remaining phrases all have commonly accepted definitions that are clear from the context of the request. "Public-relations plans" refers to plans to manage brand reputation or shape public perception. "Media kits" refers to sets of informational materials aimed at relations with the press. "Rapid-response memoranda" refers to urgent policy documents or

16

public relations documents created in response to a critical event, crisis, or sudden policy change. "Messaging guidance" refers to talking points and other messaging strategies used by either Plaintiff. Please supplement your response to include all responsive Documents.

**RFP 44**: This Request seeks documents specifically concerning Plaintiffs' responses to certain violent events, organizations, individuals, and ideologies, and it is therefore highly relevant to Plaintiffs' allegations that, *e.g.*, they "consistently condemn[] all forms of unjust violence." FAC ¶ 30. Please supplement your response to include all responsive Documents.

**RFP 45**: This Request seeks documents concerning Plaintiffs' responses to allegations of ties to violent, terrorist organizations. Thus, the Request relates specifically to Plaintiffs' allegations denying any connection to violence or terrorism and alleging that no legitimate basis exists for the Executive Order. As explained in detail above, discovery regarding that connection is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism). Please supplement your response to include all responsive Documents.

**RFP 46**: This Request seeks documents related to a specific university program (and related publications) that have produced research relating to Plaintiffs' ties to terrorist organizations. Thus, the Request relates specifically to Plaintiffs' allegations denying any connection to violence or terrorism. As explained in detail above, discovery regarding that connection is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism). Finally, Plaintiffs' objection that the Request seeks documents created by non-parties is misplaced; the Request merely seeks documents within *Plaintiffs'* possession, custody, or control. Please supplement your response to include all responsive Documents.

**RFP 47**: This Request seeks Documents and Communications related to Plaintiffs' connections to terrorist organizations (a–b, d) and related to the Florida House resolution that preceded the Executive Order (c). Thus, the Request relates specifically to Plaintiffs' allegations denying any connection to violence or terrorism. As explained in detail above, discovery regarding that connection is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting

17

terrorism and barring government resources from supporting terrorism). Please supplement your response to include all responsive Documents and Communications.

**RFP 48**: This Request seeks documents regarding Plaintiffs' involvement in coalitions and coordinated conduct with other organizations, which is relevant to show any connections Plaintiffs may have to terrorist groups through such coalitions or coordinated conduct. As explained in detail above, discovery regarding such connections is directly relevant and narrowly tailored to the claims and defenses at issue in this case (including, *inter alia*, that the Executive Order serves a compelling government interest in thwarting terrorism and barring government resources from supporting terrorism).

Further, Plaintiffs baselessly object, without explanation, that they "do not know what is meant" by "coalition agreements," "event co-sponsorship records," "cross-promotional materials," "list-sharing records," "advocacy-planning materials," and "any related partner group." To the contrary, the Request is clear and describes with particularity the documents sought. Specifically, "coalition agreements" refers to any agreement by either Plaintiff to coordinate with another organization to achieve a common objective. "Event co-sponsorship records" refers to records relating to any event that either Plaintiff jointly sponsored with the groups described in the Request. "Cross-promotional materials" refers to materials that either Plaintiff has used to promote the groups described in the Request, or vice versa. "List-sharing records" refers to lists of policies, members, funding sources, and the like that have been exchanged between Plaintiff and the groups described in the Request. "Advocacy-planning materials" refers to documents created to facilitate advocacy activities. "Any related partner group" refers to any entity that is organizationally related to the entities enumerated in this Request.

Please supplement your response to include all responsive Documents.

## C. Requests for Admission

Based primarily on the meritless relevance and vagueness objections already discussed above, Plaintiffs improperly fail to answer—*i.e.*, either admit or deny—numerous relevant RFAs.  For example, Plaintiffs refuse to answer whether either Nihad Awad or Omar Ahmad is "a co-founder of CAIR National" (RFAs 24–25); whether Awad and Ahmad have held roles in certain other organizations, including sanctions-listed entities (RFAs 26–27, 29, 36); whether any employee of Plaintiffs has ever held a concurrent role in a sanctions-listed entities (RFAs 37–41, 82–83); whether CAIR National has ever received money from HLF (RFA 32); whether CAIR National has received funding from foreign governments (RFAs 69–71, 74); whether Plaintiffs have communicated with certain sanctions-listed entities (RFAs 102–103, 107, 109, 111); or whether either Plaintiff has communicated with a designated terrorist organization or terrorist (RFAs 168–175).  For the reasons discussed above, Plaintiffs must withdraw their meritless relevance, vagueness, burden, and privilege objections, as well as their frivolous assertion that they are incapable of communications, and answer the RFAs.

In response to other RFAs, Plaintiffs give evasive and non-responsive answers that do not squarely admit or deny the requested matters.  For example, in response to RFA No. 9, Plaintiffs refuse to admit or deny whether "Royer pleaded guilty to weapons and explosives charges" and was "sentenced to twenty years," and they instead rewrite the Request entirely and merely admit the issuance of a "press release … regarding the prosecution and sentencing."  Similarly, in response to RFA No. 5, Plaintiffs "admit the existence" of a "district court opinion" but refuse to admit or deny that "a federal judge found 'ample evidence' of CAIR National's association with Hamas in the HLF Prosecution."  Plaintiffs provide similarly evasive and non-responsive answers in response to RFAs Nos. 31, 47, 49, 119, and 155–57.  Plaintiffs must supplement their answers and admit or deny the Requests as written, without evading them by impermissibly rewriting the Requests.

We look forward to your amended responses no later than June 26, 2026.


Respectfully,

/s/ Tyler E. Gustafson
Assistant Solicitor General

19