**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION**

CAIR-FOUNDATION, INC., *et al.*,

Plaintiffs,

v. Case No. 4:25-cv-516-AW-MJF

RONALD DESANTIS, in his official capacity as Governor of the State of Florida,

Defendant.

_________________________________/

# ORDER

This matter is before this court on Defendant Ronald DeSantis's ("DeSantis") motion to compel supplemental responses to over forty requests for production ("RFPs") and associated document production from both Plaintiff CAIR-Foundation, Inc. and Plaintiff CAIR-Florida, Inc. (collectively, "CAIR").[1] Doc. 91. Plaintiffs filed a joint response in opposition. Doc. 92. For the reasons set forth below, Defendant DeSantis's motion to compel will be granted.

---

[1] This court refers to Plaintiffs collectively not only for convenience, but also because Plaintiffs filed a joint complaint (Doc. 21) and a joint response brief to the instant motion (Doc. 92), which indicates the parties' joint posture in this discovery dispute.

## BACKGROUND

On January 16, 2026, CAIR filed the operative complaint. Doc. 21. On February 10, 2026, DeSantis answered. Doc. 36. Because relevance objections figure prominently in this discovery dispute, this court begins with a thorough review of the pertinent allegations and discovery responses to date.

### A. The Allegations at Issue

Plaintiff CAIR-Foundation, Inc. is a nonprofit corporation headquartered in Washington, D.C. Doc. 21 at 2 ¶ 1; Doc. 36 at 2 ¶ 1. Plaintiff CAIR-Florida, Inc. is an affiliated chapter of CAIR-Foundation located in Tampa, Florida. Doc. 21 at 2 ¶ 2; Doc. 36 at 3 ¶ 2. CAIR alleges that it engages in "advocacy against Islamophobia, including with respect to sharia law[.]" Doc. 21 at 13 ¶ 34. Defendant is the Governor of the State of Florida. Doc. 21 at 2 ¶ 3; Doc. 36 at 3 ¶ 3.

#### 1. *The Executive Order*

DeSantis promulgated Executive Order 25-244 (Doc. 21-1, the "Executive Order"), which is attached to CAIR's complaint and is the subject of this litigation. Doc. 36 at 3 ¶ 3; Doc. 92-3.

The decretal portion of the Executive Order orders the following:

> Section 1. The Muslim Brotherhood and any chapter or subdivision thereof; the Council on American-Islamic Relations; and any other organization designated by the United States Government as a Foreign Terrorist Organization . . . are hereby designated as terrorist organizations for the purpose of this Executive Order.
>
> Section 2. The Florida Department of Law Enforcement and the Florida Highway Patrol are directed to undertake all lawful measures to prevent unlawful activities in Florida by the terrorist organizations designated in Section 1. Unless prohibited by federal or state law, all other Executive and Cabinet Agencies shall further undertake all lawful action to prevent any terrorist organization designated in Section 1, or any person known to have provided material support or resources to such organization . . . , from receiving any contract, employment, funds, or other benefit or privilege from such Executive or Cabinet Agency . . . or from any County or Municipality of the State.

Doc. 21-1 at 3–4.

The recitals of the Executive Order's preamble state the following regarding CAIR specifically:

> **WHEREAS**, on November 24, 2025, President Trump issued Executive Order 14362 to initiate "a process by which certain chapters or other subdivisions of the Muslim Brotherhood shall be considered for designation as Foreign Terrorist Organizations"; and
>
> **WHEREAS**, the United States Government designated Hamas as a foreign terrorist organization on October 8, 1997; and
>
> **WHEREAS**, the Palestine Committee, an organization affiliated with the Muslim Brotherhood and created to

> support Hamas in the United States, expressly sought to "increase the financial and moral support for Hamas" and oversaw front organizations designed to raise money for Hamas; and
>
> **WHEREAS**, the Palestine Committee founded the Council on American-Islamic Relations (CAIR) in the United States in 1994; and
>
> **WHEREAS**, CAIR was founded by persons connected to the Muslim Brotherhood and was created, in the words of persons affiliated with CAIR, as "an official U.S. cover representing the Islamic community" to conceal ties to Islamic extremist groups; and
>
> **WHEREAS**, CAIR was designated as an unindicted co-conspirator by the United States Government in the largest terrorism-financing case in American history, and the court found "ample evidence to establish the association[]" of CAIR with terrorist organizations, *see United States v. Holy Land Found. For Relief & Dev.*, No. 3:04-cv-240, 2009 WL 10680203, at *7 (N.D. Tex. July 1, 2009); and
>
> **WHEREAS**, individuals associated with CAIR have been convicted of providing, and conspiring to provide, material support to designated terrorist organizations[.]

*Id.* at 1–3 (emphasis in original). The case referenced in the above recitals, *United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-cr-240, 2009 WL 10680203 (N.D. Tex. July 1, 2009), *rev'd in part on other grounds* 624 F.3d 685 (5th Cir. 2010) states the following:

> This dispute is related to the criminal charges of conspiracy brought against the Holy Land Foundation for Relief and Development ("HLF") and seven other named defendants. On

> May 29, 2007, the Government filed its Trial Brief outlining the scope of the alleged conspiracy and identifying the different types of evidence it would seek to admit at trial, as well as the evidentiary bases for the admissions of that evidence. In its attempt to illustrate the breadth of the conspiracy, the Government provided the List, which contains the names of 246 individuals and organizations that the Government identified as unindicted co-conspirators. The Government listed CAIR, ISNA, and NAIT as entities who are or were members of the U.S. Muslim Brotherhood's Palestine Committee and/or its organizations.

*Holy Land Found. for Relief & Dev.*, 2009 WL 10680203, at *1 (internal citations omitted). The opinion continues:

> The Government identifies four portions of the record from the first trial that purportedly establish that CAIR was a "joint venturer and co-conspirator": (1) a Government exhibit showing the objective of the Palestine Committee is to support Hamas; (2) a Government exhibit showing that CAIR founder Omar Ahmad is part of the Palestine Committee and Mousa Abu Marzook is its head; (3) a Government exhibit listing CAIR as part of the Palestine Committee; and (4) the testimony of Special Agent Lara Burns and accompanying exhibits placing the CAIR founder at the 1993 Philadelphia conference and describing the CAIR founder's mediation of a dispute between HLF and Ashqar over Hamas fundraising . . . . The four pieces of evidence the government relies on . . . do create at least a prima facie case as to CAIR's involvement in a conspiracy to support Hamas[.]"

*Id.* at *3 (internal citations omitted).

The court also found that "[t]he Government has produced ample evidence to establish the associations of CAIR . . . with [the Holy Land

Foundation], the Islamic Association for Palestine ("IAP"), and with Hamas." *Id*. at *7.

**2. *To Whom Does the Executive Order Apply?***

DeSantis's position apparently is that the phrase "Council on American-Islamic Relations" in the Executive Order refers to both Plaintiff CAIR-Foundation, Inc. and Plaintiff CAIR-Florida, Inc. Doc. 92-3 at 3. Plaintiffs' joint response brief to the motion to compel states that "Governor DeSantis does not distinguish between CAIR and CAIR-Florida and also considers the latter a 'terrorist organization.'" Doc. 92 at 4 n.1. Based on the language of the Executive Order, DeSantis's positions in this litigation, and CAIR's interpretation of DeSantis's positions, it appears that the Executive Order applies to both Plaintiffs.

**3. *DeSantis's Discovery Responses and Production*[2]**

In his response to CAIR's request for admission, DeSantis admits that the declaration of Jay K. Arnold (Doc. 37-1) provides a list of sources upon which DeSantis relied when deciding to promulgate the Executive

---

[2] The theories supporting claims or defenses may be revealed not only by the pleadings, but also by discovery responses. *See, e.g., Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 n.37 (11th Cir. 1997); *Stern v. O-Quinn*, 253 F.R.D. 663, 680 n.7 (S.D. Fla. 2008).

Order. Doc. 92-3 at 3. This declaration lists, among other things, third-party scholarly works, an executive order of President Trump, a hearing before the House Oversight and Government Reform Subcommittee on National Security, and materials from the criminal prosecution of the Holy Land Foundation. Doc. 37-1 at 3–4.

In his answer to CAIR's Interrogatory No. 10, DeSantis supplies factual allegations that he "contend[s] establishes that Plaintiffs qualify as a 'terrorist organization' under the definition referenced in the Executive Order[.]" Doc. 64-1 at 4–5, 10–12.

In document production, DeSantis produced a report alleging that in 2014, the United Arab Emirates designated CAIR a terrorist organization along with ISIS, al Qaeda, and the Muslim Brotherhood. Doc. 92-8 at 4.

DeSantis produced a report alleging that "at least six CAIR or CAIR-affiliate members or staff have been sent to prison or been deported," for terrorism-related convictions, a bank and visa fraud conviction, lying to authorities about links to the Muslim Brotherhood and Hamas, and a conviction for violating U.S. sanctions against Saddam Hussein's Iraq. Doc. 92-8 at 5.

DeSantis produced third-party reports alleging the following related to the Holy Land Foundation prosecution in 2008-2009:

> [T]hree leaders of the Hamas-supporting Islamic Association of Palestine—Nihad Awad, Omar Ahmad, and Rafeeq Jaber—formed the new organization. The name "CAIR" appears on a July 1994 meeting agenda for the Palestine Committee—the Muslim Brotherhood entity created to promote Hamas and the Palestinian cause. The agenda, presented as evidence in the Holy Land Foundation trial, lists CAIR among its "working organizations." Other listed were the Islamic Association of Palestine, Holy Land Foundation, and the United Association for Studies and Research.

Doc. 92-8 at 7.

> The Muslim Brotherhood's U.S. Palestine Committee founded the IAP in 1981 "to serve the cause of Palestine on the political and media fronts," an internal Muslim Brotherhood document declares. Defunct since 2004, it was the primary voice for Hamas in the U.S., says terror researcher Steve Emerson.
>
> One former Islamic Association for Palestine president, Mohammad Al-Hanooti, helped raise $6 million for Hamas, according to the FBI. Hanooti, who attended the 1993 Hamas summit in Philadelphia, was an unindicted co-conspirator in the 1993 World Trade Center bombing plot and the 2008 Holy Land Foundation terror financing trial. And a former member of IAP's board of directors. Mousa Abu Marzook, is now deputy chairman of Hamas' political bureau.
>
> Three Islamic Association for Palestine leaders—Omar Ahmad, Nihad Awad, and Rafeeq Jaber—provided the brain trust who formed CAIR in 1994. Another former IAP employee, Ibrahim Hooper, came to CAIR in 1994 as CAIR's communications director. So, connecting the dots, the Muslim

> Brotherhood commissioned the U.S. Palestine Committee, which formed IAP, after which key IAP leaders created CAIR.

Doc. 92-8 at 11.

> In 2008, however, the FBI did sever links with the Council on American-Islamic Relations after the government named CAIR an unindicted co-conspirator in a plot to send more than $12 million to Hamas. The FBI had partnered with CAIR after 9/11 at the state and national levels to address civil liberty and hate-crime concerns. The FBI announced in a 2009 letter to Sen. John Kyl that "until we can resolve whether there continues to be a connection between CAIR or its executives and HAMAS, the FBI does not view CAIR as an appropriate liaison partner."

Doc. 92-7 at 39.

> [T]he FBI's former counterterrorism chief, Steven Pomerantz, said "CAIR, its leaders, and its activities effectively give aid to international terrorist groups."

Doc. 92-8 at 12.

## B. The Claims and Defenses at Issue

### 1. *CAIR's First Amendment Claims*[3]

CAIR's operative complaint claims that the Executive Order infringes CAIR's First-Amendment rights. Doc. 21 at 27–42 ¶¶ 79–136. Count I essentially alleges that the Executive Order constitutes an act of

[3] CAIR also asserts Fourteenth-Amendment claims, but it is not apparent that the discovery requests at issue relate to those claims. So, this court does not address them in this summary of the allegations.

viewpoint-based discrimination against CAIR's First-Amendment right to engage in "religiously grounded advocacy concerning Islam and sharia law." *Id.* at 31–32 ¶ 99.

Count II essentially alleges that the Executive Order constitutes an act of retaliation against CAIR for its history of "engag[ing] in the constitutionally protected right to petition through advocacy directed at government officials." *Id.* at 35 ¶ 112.

Count III essentially asserts that the Executive Order constitutes a violation of CAIR's "protected right to associate to carry out their faith-based mission by educating, advocating, empowering, organizing, and defending American Muslims in Florida and nationwide." *Id.* at 38 ¶ 121.

Additionally, for all of the First-Amendment claims, CAIR essentially asserts that, to the extent that the Executive Order infringes its First-Amendment rights, the Executive Order cannot survive any level of judicial scrutiny. *Id.* at 29–33 ¶¶ 89, 91, 96, 105. For example, CAIR alleges that some provisions of the Executive Order are not "necessary to advance the Executive Order's stated purpose," *id.* at 33 ¶ 105, and that it was not "issued in response to any identified, ongoing, or imminent emergency or threat to public safety," *id.* at 41 ¶ 133.

### 2. *DeSantis's First-Amendment Defenses*[4]

First, DeSantis contends that the Executive Order does not infringe CAIR's First-Amendment rights. Doc. 91 at 6–7; *see, e.g., Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 776 (1994) ("The freedom of association protected by the First Amendment does not extend to joining with others for the purpose of depriving third parties of their lawful rights."); *United States v. El-Mezain*, 664 F.3d 467, 537 (5th Cir. 2011) ("It is well established under First Amendment principles that there is no prohibition on 'the evidentiary use of speech to establish the elements of a crime or to prove motive or intent'" and "Congress could criminalize speech that provides material support to designated terrorists."); *United States v. Choate*, 576 F.2d 165, 181 (9th Cir. 1978) ("Speech thought to promote a criminal scheme . . . is hardly within the ambit of the First Amendment. Moreover, the practice of associating with compatriots in crime is not a protected associational right.").

---

[4] DeSantis also pleads Eleventh-Amendment immunity and state sovereign immunity, as well as a lack of subject-matter jurisdiction. But the discovery requests at issue likely do not relate to those defenses. This court, therefore, does not address them here.

Second, DeSantis contends that, even if the Executive Order inhibits CAIR's exercise of First-Amendment rights, the First-Amendment nevertheless allows the State of Florida to combat terrorism. Doc. 91 at 6–7; *see, e.g., Holder v. Humanitarian L. Project*, 561 U.S. 1, 28 (2010) (in the context of a First Amendment analysis, "[e]veryone agrees that the Government's interest in combating terrorism is an urgent objective of the highest order."); *Bourgeois v. Peters*, 387 F.3d 1303, 1322–23 (11th Cir. 2004) (holding that a challenged policy was a content-based regulation of speech because, in part, there was no indication that concerns over terrorism were the basis for the policy).

In his answer to CAIR's Interrogatory No. 2—a contention interrogatory—DeSantis explained what he believes to be the governmental interests supporting the promulgation of the Executive Order.

> Defendant responds that the Executive Order serves to divert state benefits and resources from terrorist organizations for the health, safety, and welfare of Floridians. After all, material support toward a terrorist organization—whether from the state or third parties—allows said terrorist organizations to devote more attention toward extremism. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 36 (2010). Thus, keeping state resources from terrorist organizations and discouraging third parties from providing material support to terrorist organizations furthers the health, safety,

> and welfare of Floridians. Moreover, the EO serves an interest in protecting Floridians from being deceived into unwittingly supporting terrorist organizations in that such organizations typically solicit funds in a deceptive manner. This EO deters Floridians from falling prey to that deception.

Doc. 64-1 at 4–5.

### C. <u>The Discovery Process in this Proceeding</u>

On January 29, 2026, the District Court's initial scheduling order launched the discovery process. Doc. 30 at 1 ¶ (1)(a).

On February 27, 2026, the parties held a Rule 26(f) conference. Doc. 49 at 1 ¶ 1.

On March 9, 2026, CAIR served forty-four RFPs on DeSantis. Doc. 62 at 2.

On March 13, 2026, the parties filed their Rule 26(f) report, proposing a discovery deadline of July 27, 2026, Doc. 49, which the District Court granted.

On April 17, 2026, DeSantis served fifty-one RFPs on CAIR. Doc. 54 at 2 ¶ 2; Doc. 91-1.

On April 28, 2026, in response to CAIR's RFPs, DeSantis produced documents and a privilege log. Doc. 62 at 2; Doc. 64-3.

On June 4, 2026, CAIR served its responses to DeSantis's RFPs "pursuant to an agreed extension." Doc. 67 at 2 ¶ 2. Initially, CAIR's responses were due on May 18, 2026. Doc. 54 at 2 ¶ 2.

On June 22, 2026, the parties jointly moved for a 30-day extension of the discovery deadline. Doc. 62. The joint motion states, "the Parties plan to meet and confer later this month. During the meet and confer, the Parties plan to discuss the status of responses . . . for both sides." Doc. 62 at 2 ¶ 4. The joint motion explains, "[t]he Parties continue to exchange correspondence to narrow the disputed discovery issues," *id.* at 2 ¶ 5, and "extending discovery and dispositive motion deadlines by 30 days will help the Parties work together to ensure that discovery is completed efficiently and with the minimum amount of court involvement possible," *id.* at 2 ¶ 7. That same day, the District Court extended the deadline as requested. Doc. 63.

It seems that extending the deadline did not "help the Parties work together to ensure . . . the minimum amount of court involvement possible," because the next day, CAIR filed a motion to compel, to which DeSantis responded. CAIR's motion to compel focused exclusively on the

scope of DeSantis's amended privilege log and the motion explains that the parties conferred repeatedly on the scope of the log. Doc. 64 at 4.

On July 2, 2026, CAIR withdrew its motion to compel, acknowledging that DeSantis produced all documents that he previously had withheld. Doc. 67 ¶ 7; Doc. 68.

As of July 1, 2026, the parties were still "meeting and conferring over the sufficiency of Plaintiffs' responses and objections" to DeSantis's RFPs. Doc. 67 at 2 ¶ 2.

On July 14, 2026, the parties jointly moved for a 60-day extension, which the District Court granted. Doc. 89.

On July 17, 2026, CAIR served amended responses to DeSantis's RFPs at issue. Doc. 91-2 at 46.

On July 22, 2026, DeSantis filed the instant motion to compel, Doc. 91, to which Plaintiffs responded. Doc. 92 at 1.

As of September 4, 2026, CAIR represented that it had not produced any privilege logs. Doc. 97.

On September 25, 2026, the undersigned ordered the parties to confer on discovery issues that the parties did not adequately address in their Rule 26(f) conference related to electronically stored information

("ESI") discovery and discovery of documents that contain any language other than English.[5] Doc. 102.

On October 8, 2026, the parties filed a joint notice confirming that they corrected these deficiencies by conferring on the matters as ordered. Doc. 104.

On October 27, 2026, the parties jointly moved for entry of an ESI order that would govern the ESI discovery issues discussed during the recent conferral, Doc. 113, which this court entered, Doc. 115.

To date, CAIR has not moved for a protective order.

Currently, discovery closes on January 15, 2027. Doc. 100.

## CAIR'S OBJECTIONS

If a party's document production under Rule 34(a) or interrogatory answer under Rule 33 is insufficient, Rule 37(a) authorizes a party to "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Here, DeSantis moves to compel supplemental responses and production regarding RFPs 3–9, 11–13, 15–18, 20–25, and 27–48. Doc. 91. CAIR objects to every RFP at issue. Doc. 91-2. The issue is whether

---

[5] CAIR brought these deficiencies in the parties' Rule 26(f) conference to this court's attention in three declarations. Docs. 92-1, 92-14, 92-15.

CAIR properly lodged its objections and, if it did not, whether its failure to do so now results in the waiver of those objections.

## A. <u>Rule 34 Requirements for Objections to Document Requests</u>

Rule 34 sets forth both substantive and procedural requirements for all objections to any document request lawfully served by a party in a proceeding.

### 1. *Improper Substantive Form of Objections under Rule 34(b)(2)(B)*

A party who objects to a discovery request must "state *with specificity* the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B) (emphasis added). Regarding enforcement of this specificity requirement, Rule 34(b)(2) does not contain an explicit "waiver" sanction like Rule 33(b)(4) for interrogatory objections (*i.e.*, "[a]ny ground not stated in a timely objection is waived . . . ."). *Compare* Fed. R. Civ. P. 34(b)(2), *with* Fed. R. Civ. P. 33(b)(4). However, according to the advisory committee notes for Rule 34(b), "[t]he procedure provided in Rule 34 is essentially the same as that in Rule 33[.]" Fed. R. Civ. P. 34(b) advisory committee's note to 1970 amendment.

Furthermore, asserting an objection that does not meet Rule 34(b)(2)'s specificity requirement "is to engage in the abusive practice of objecting to discovery requests reflexively – but not reflectively – and without a factual or legal basis that Federal Rule of Civil Procedure 26(g) was enacted to stop. Serving unsupported . . . objections does not preserve or accomplish anything other than waiver and subjecting the responding party to sanctions" under Rule 26(g)(3). *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 420 (N.D. Tex. 2021) (alterations adopted). Consequently, "if the responding party fails to make a timely objection, or fails to state the reason for an objection, the party may have waived any or all objections or has in fact waived the objections, unless the court excuses the failure." *Otto Brands, LLC v. Otto's Express Car Wash, LLC*, 2020 WL 5845739, at *4 n.4 (N.D. Fla. Feb. 19, 2020) (collecting cases), *awarding attorney fees* 2020 WL 5845736; *see also Markel Am. Ins. Co. v. Jones*, 2007 WL 9747750, at *2 (N.D. Fla. June 8, 2007) (comparing waiver of objections under Rule 33 and Rule 34).

**(a). <u>Boilerplate Objections are Deemed Waived</u>**

In keeping with the specificity requirement of Rule 34(b)(2)(B), "[b]oilerplate objections are strongly disfavored." N.D. Fla. Loc. R.

26.1(C). Although "it may be a common practice to raise boilerplate objections and then produce documents subject to the objection the practice is prohibited by" the Local Rules of the Northern District of Florida. *F.D.I.C. v Brudnicki*, 291 F.R.D. 669, 674 n.4 (N.D. Fla. 2013); *see also Sharbaugh v. Beaudry*, 2017 WL 5988221, at *3 (N.D. Fla. May 5, 2017) ("[S]uch objections really tell the court nothing[.]" (punctuation omitted)). As explained by one court:

> Boilerplate objections such as "vague," "ambiguous," "overly broad," "not proportional to the needs of this case," or "burdensome," without an explanation, do not inform this Court or [the requesting party] of the justification underlying [the responding party's] objections. That is to say, boilerplate objections beg the question—why, for example, is the request vague or ambiguous? Further, they do not provide [the requesting party] a reasonable roadmap to correct any defect in their requests before asserting their remedies through a motion to compel.

*Harvard v. Inch*, 2020 WL 701990, at *2 (N.D. Fla. Feb. 7, 2020); *see also Allen v. Lyons & Farrar, P.A.*, 2021 WL 9596127, at *1 (N.D. Fla. Oct. 18, 2021); *Le v. Asset Campus USA LLC*, 2021 WL 4144776, at *2 (N.D. Fla. Apr. 22, 2021); *Ellis v. Pilot Travel Ctrs.*, 2019 WL 13198255, at *1 (N.D. Fla. Sept. 26, 2019).

As a rule of thumb, an objection that appears to have been copy-and-pasted verbatim throughout many responses, although not

dispositive, is immediately suspect as being boilerplate. *See VeroBlue Farms*, 345 F.R.D. at 419 ("objections are typically deemed boilerplate when they are identical and not tailored to the specific discovery request"); *Brudnicki*, 291 F.R.D. at 674 n.4 ("Simply intoning the 'overly broad and burdensome' litany, without more, does not express a valid objection." (citation omitted and alteration adopted)).

Courts generally deem boilerplate objections to be waived. *See Brudnicki*, 291 F.R.D. at 674 n.4; *see also Allen*, 2021 WL 9596127, at *1; *Le*, 2021 WL 4144776, at *2; *Harvard*, 2020 WL 701990, at *2; *Ellis*, 2019 WL 13198255, at *1. Some courts even punish boilerplate objections with sanctions. *See, e.g., Covington v. Sailormen Inc.*, 274 F.R.D. 692, 693–94 (N.D. Fla. 2011); *see also Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 371 (11th Cir. 2009) (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1358) ("We have noted that boilerplate objections may border on a frivolous response to discovery requests.")); *Tonya Zimmern v. Midland Credit Mgmt., Inc.*, 2024 WL 7143633, at *4 (N.D. Fla. Oct. 30, 2024) ("[M]ore than one court has found the assertion of such objections is sanctionable[.]")

Furthermore, a party cannot cure this defect by later elaborating on the boilerplate objection in a response to a motion to compel. *See Allen*, 2021 WL 9596127, at *1; *Le*, 2021 WL 4144776, at *2; *Harvard*, 2020 WL 701990, at *2; *Ellis*, 2019 WL 13198255, at *1; *Hales v. Cook*, 2025 WL 3540341, at *2 (N.D. Fla. Feb. 5, 2025), *reconsideration denied* 2025 WL 3535054 (collecting cases); *All. Laundry Sys. v. Adams*, 2024 WL 3831409, at *1 (N.D. Fla. Aug. 15, 2024); *see also Dempsey v. Brevard Cnty.*, 2023 WL 7926881, at *3 (M.D. Fla. Mar. 6, 2023); *McCort v. ADCS Clinics, LLC*, 2021 WL 3194989, at *6 (M.D. Fla. Mar. 23, 2021).

**(b). <u>General Objections are Deemed Waived</u>**

As a corollary to the rule against boilerplate objections, general objections are disfavored also. N.D. Fla. Loc. R. 26.1(C) ("[A]n objection cannot be set out generally for an entire set of discovery requests."). General objections are acceptable only in "those rare cases where the same objection specifically applies to every" discovery request. *Otto Brands*, 2020 WL 5845739, at *5 (collecting cases).

In other words, a preamble of general objections at the beginning of a discovery response—even if there is subsequent language that such objections are 'incorporated' broadly into the responses that follow

them—are deemed to be waived. *See Covington*, 274 F.R.D. at 693 ("The boilerplate, shotgun-style 'General Objections' were incorporated into every answer and thus made each of the answers problematic. Thus, the plaintiff made clear that she objected to every answer on this basis. These boilerplate, shotgun-style objections are not consistent with the Federal Rules of Civil Procedures' goal of securing 'the just, speedy, and inexpensive determination of every action.'"); *see also Border States Indus., Inc. v. Nisewonger*, 2026 WL 1983861, at *3 (N.D. Fla. July 8, 2026); *Hales*, 2025 WL 3540341, at *2; *All. Laundry Sys.*, 2024 WL 3831409, at *1; *Otto Brands*, 2020 WL 5845739, at *5.

### (c). <u>Objections Based on Vagueness or Ambiguity</u>

A document request "must describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b). In keeping with the specificity requirement of Rule 34(b)(2)(B), "[a] party who objects to a discovery request on the ground of vagueness or ambiguity 'must explain the particular ways in which a request is vague' or ambiguous." *Cosby v. MHM Health Pro., LLC*, 2020 WL 13902554, at *2 (quoting *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007)); *Border States Indus.*, 2026 WL 1983861, at *3. "The party

objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity by demonstrating that 'more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases.'" *Cosby*, 2020 WL 13902554, at *2 (quoting *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1030 (E.D. Cal. 2010)).

Furthermore, after objecting based on vagueness, the objecting party nevertheless must respond to the discovery request based on the allegedly vague term's ordinary and common meaning, and must state in the response the chosen definition upon which the response relies. *See Elite Mitigation Servs., LLC v. Westchester Surplus Lines Ins. Co.*, 2020 WL 6127140, at *2 (N.D. Fla. Apr. 6, 2020) ("A party responding to discovery requests should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in discovery requests. If necessary, to clarify its answers, the responding party may include any reasonable definition of the term or phrase at issue.") (cleaned up).

Generally, courts interpret unspecified vagueness objections to be boilerplate objections and, accordingly, deem them to be waived. *See Border States Indus.*, 2026 WL 1983861, at *4; *Cosby*, 2020 WL 13902554, at *3.

### 2. *Incorrect Procedural Assertion of Objections under Rule 34(b)(2)(C)*

In addition to the substantive requirements of Rule 34(b)(2)(B), Rule 34 requires a substantively proper objection to be asserted correctly in a discovery response as a matter of procedure. Specifically, an otherwise proper objection must "specify the part" of the request to which it applies and "must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C).

Consequently, courts strongly disfavor the practice of providing discovery responses 'subject to' or 'without waiving' objections because such qualifications fail to specify the objectionable part of the request. Generally, if a respondent fails to specify the portion of the request to which an objection applies, courts deem such objections waived. A qualification that a response is 'subject to' all preceding objections does not cure this defect. *See Border States Indus.*, 2026 WL 1983861, at *1; *Tonya Zimmern*, 2024 WL 7143633, at *4; *All. Laundry Sys.*, 2024 WL 3831409, at *2; *Otto Brands*, 2020 WL 5845739, at *6 ("[T]he practice of responding to interrogatories and documents requests 'subject to' and/or 'without waiving' objections is manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil

Procedure."); *Ellis*, 2019 WL 13198255, at *2; *Sharbaugh*, 2017 WL 5988221, at *3; *Network Tallahassee, Inc. v. Embarq Corp.*, 2010 WL 4569897, at *1 (N.D. Fla. Sept. 20, 2010).

## B. Rule 26 Requirements for Specific Types of Objections

In addition to Rule 34's substantive and procedure requirements for objections to document requests, the Federal Rules of Civil Procedure set forth requirements for specific types of objections.

### 1. *Rule 26(b)(1) Objections for Relevance or Proportionality*

"A party may serve on any other party a request within the scope of Rule 26(b)[.]" Fed. R. Civ. P. 34(a). Under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

#### (a). Relevance Objections

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). "As indicated by the language of Rule 26, the relevance of information sought in discovery depends on the claims asserted in the underlying action and the legal standards that govern

those claims." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020) (citing Fed. R. Civ. P. 26(b)(1)). "Relevance is not, on its own, a high bar." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). Federal courts construe relevance "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheim Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011); *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991). Relevant information may be discoverable even if it is not admissible at trial. *See* Fed. R. Civ. P. 26(b)(1); *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991).

The party resisting the discovery based on a purported lack of relevance bears the burden of demonstrating "that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1) or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *AFSCME Council 79 v. Scott*, 277 F.R.D. 474, 477 (S.D. Fla. 2011) (punctuation omitted) (collecting

cases). When the relevance of requested material is not readily apparent, however, the party seeking discovery bears the burden of demonstrating relevance. *Id.*

**(b). <u>Proportionality Objections</u>**

Even relevant evidence must satisfy the proportionality standard of Rule 26. *See* Fed. R. Civ. P. 26(b)(1); *Hernandez v. Results Staffing, Inc.*, 907 F.3d 354, 361 (5th Cir. 2018); *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018); *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016). The Federal Rules list six proportionality factors: (i) the importance of the issues at stake in the action, (ii) the amount in controversy, (iii) the parties' relative access to relevant information, (iv) the parties' resources, (v) the importance of the discovery in resolving the issues, and (vi) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

The "burden is on the refusing party to show that the movant's request is burdensome[.]" *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 33 (D.D.C. 2012). "A specific showing of burden is commonly required by district judges faced with objections to the scope

of discovery." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 598 (7th Cir. 2011) (collecting cases). Thus, a party who objects on proportionality grounds "bears the burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by Rule 26(b)(1) by coming forward with specific information to address—insofar as that information is available to it—the six proportionality factors listed in the Rule." *Tonya Zimmern*, 2024 WL 7143633, at *4 (cleaned up) (citing *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 591–92 (N.D. Tex. 2017)); *Otto Brands, LLC*, 2020 WL 5845739, at *4–5.

A proportionality objection under Rule 26(b)(1) must address at least some of the Rule's proportionality factors, otherwise it constitutes a boilerplate objection. *See Cosby*, 2020 WL 13902554, at *3 (finding improper a proportionality objection that did not mention any of the six proportionality factors); *Durrah v. Bowling Green Inn of Pensacola, LLC*, 2020 WL 8910886, at *5 (N.D. Fla. 2020) (noting that a party did not address any Rule 26 proportionality factors); *Otto Brands, LLC*, 2020 WL 5845739, at *4–5. Also, when a party asserts that compliance with a discovery request would be unduly burdensome, that party should

provide "the district court an estimate of the number of documents that it would be required to provide," "the number of hours of work by lawyers and paralegals required, and the expense." *Heraeus Kulzer*, 633 F.3d at 598.

### 2. *Rule 26(b)(2)(B) Objections for ESI Accessibility*

A party may request production or inspection of electronically stored information. Fed. R. Civ. P. 34(a)(1)(A). However, in addition to the relevance and proportionality limitations of Rule 26(b)(1) that apply to all responsive materials, responsive ESI materials also are subject to an accessibility limitation.

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery . . . , the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.

Fed. R. Civ. P. 26(b)(2)(B).

As with any discovery objection, a party raising a Rule 26(b)(2)(B) inaccessibility objection must state whether it is withholding responsive ESI pursuant to such objection. Fed. R. Civ. P. 34(b)(2)(C).

> The responding party must also identify, by category or type, the sources containing potentially responsive information that it is neither searching nor producing. The identification

> should, to the extent possible, provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and *the likelihood of finding responsive information on the identified sources*.

Fed. R. Civ. P. 26(b)(2) advisory committee's notes to 2006 amendment (emphasis added); *see also Owen v. Hyundai Motor America*, 344 F.R.D. 531, 535 (E.D. Ca. 2023) (holding that an inaccessibility objection is improper when it does not satisfy Rule 34(b)(2)(C) or the requirements of the advisory committee's notes); *Moser v. Health Ins. Innovations, Inc.*, 2019 WL 2271804, at *23–24 (S.D. Cal. May 28, 2019).

**C. <u>Misusing Confidentiality Concerns to Delay Production</u>**

A party lawfully served with a document request theoretically has four options:

(1) respond to the document request by agreeing to produce documents as requested (Fed. R. Civ. P. 34(b));

(2) respond to the document request by objecting (Fed. R. Civ. P. 34(b));

(3) move for a protective order (Fed. R. Civ. P. 26(c) and 37(d)); or

(4) ignore the request.

*Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1362 (Fed. Cir. 1990). "If the party chooses the last option, he is subject to sanctions under Rule

37(d)." *Id.*; *see also* Fed. R. Civ. P. 34(b)(2)(B) ("The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.").

Under the Federal Rules of Civil Procedure, a party may not "withhold responsive documents as a method of coercing the requesting party to enter into a confidentiality agreement. Rather, Rule 26(c) requires the party form whom discovery is sought to move for a protective order if good cause exists to support such an order." *Rebman v. Follett Higher Educ. Grp., Inc.*, 2007 WL 1303031, at *4 (M.D. Fla. May 3, 2007); *see also DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 682 (D. Kan. 2004) ("[I]nformation and documents are not shielded from discovery merely because they are confidential."); *United States EEOC v. MJC, Inc.*, 2019 WL 11201543, at *3 (D. Haw. May 6, 2019) (citing Fed. R. Civ. P. 26(c)) (rejecting a party's attempt to withhold responsive documents subject to the parties entering into a protective order—"[b]ecause the parties did not agree to a stipulated protective order, it was [the movant's] obligation, as the responding party, to file a motion seeking a protective order from the Court."), *rev'd in part on other grounds*, 2019 WL 2505030 (D. Haw. June 17, 2019); *Adventist Health Sys./Sunbelt Inc. v. Med.*

*Savs. Ins. Co.*, 2005 WL 8159878, at *1 (M.D. Fla. Apr. 26, 2005) ("It is improper for a party to withhold responsive information from discovery as an attempt to compel an opposing party to enter into a confidentiality agreement."); *Dean v. Anderson*, 2002 WL 1377729, at *3 (D. Kan. June 6, 2002) ("[C]onfidentiality does not act as a bar to discovery and is generally not grounds to withhold documents from discovery.").

Decisions in the Northern District of Florida are consistent with this rule. *See Le*, 2021 WL 4144776, at *2 ("Defendant points to no authority that makes confidential and proprietary information privileged from discovery. The usual mechanism of protecting confidential information is to move for a confidentiality order that facilitates discovery and protects the confidential information."); *Markel Am. Ins. Co. v. Jones*, 2007 WL 9747750, at *4 (N.D. Fla. June 8, 2007) ("The trade secrets objection was insufficient to block discovery as a protective order was all that was needed.").

## D. <u>CAIR's RFP Objections are Waived</u>

Here, at issue are CAIR's objections to DeSantis's RFPs 3–9, 11–13, 15–18, 20–25, and 27–48. Doc. 91-2. CAIR's amended RFP responses served on July 17, 2026, attempt to object on grounds of relevance,

proportionality, vagueness, ESI accessibility, and harassment. *Id*. For the reasons explained below, this court deems all of CAIR's objections to these RFPs to be waived. CAIR's privilege claims will be addressed separately below.

**1. *CAIR Asserted its Objections Incorrectly***

Regarding RFPs 8–9, 11, 15–18, 21–22, 24–25, 27–29, 31, 34–42, and 45–47, CAIR objects, refuses based on those objections to produce documents in response to any part of the requests, and fails to state whether it is withholding any responsive documents. Doc. 91-2. Consequently, it is unclear whether responsive documents exist. This alone warrants this court deeming all of these deficient objections to be waived.

For RFPs 5–6, 23, 30, 32–33, 43–44, and 48, CAIR objects, states that it will produce documents "based on" or "without waiving" its objections, fails to identify the portion of the request to which it objects, and fails to state whether it is withholding any responsive documents. Doc. 91-2. This alone is sufficient for this court to deem all of these objections to be waived.

Regarding RFP 7, CAIR objects and, "without waiving" its objections, states that it has no responsive documents. Doc. 91-2. If it is true that CAIR has no responsive documents in its possession, custody, or control, there is no reason to object, and such an objection has no legal effect. *See, e.g., Silver v. Tenet Health Care Corp.*, 2010 WL 11444064, at *7 (S.D. Fla. Aug. 6, 2010).

For RFPs 3–4, 12–13, and 40–41, CAIR objects to a portion of the request and states that it will produce documents responsive to the remainder of the request, but fails to state whether it is withholding any responsive documents. Doc. 91-2. It is worth noting that for many RFPs, CAIR's responses explicitly limit its document production to exclude "publicly available social media posts" that "are already accessible" to DeSantis. CAIR represents that DeSantis does not dispute such objection. Doc. 92 at 29 n.11. There is a colorable argument that social media posts could be considered accessible to both parties, and that a district court could excuse a party from any requirement to produce such materials. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

Therefore, even if the substance of CAIR's objections were proper, CAIR's improper assertion of such objections is a sufficient ground for

this court to deem them waived.

**2. *CAIR's General Objections are Improper***

CAIR's responses begin with a preamble section titled "Objections to Defendant's Definitions" containing objections to DeSantis's defined terms of "Sanctions-Listed Person or Entity," "Later-Designated Person or Entity," "Palestine Committee-Associated Entity," and "CAIR National." Doc. 91-2 at 1–4.

Regardless of whether CAIR seeks to raise legitimate arguments with these general objections, CAIR does not explicitly reference any of these arguments in any specific objection to any specific RFP. *Id.* at 5–43. Because CAIR's "Objections to Defendant's Definitions" are impermissible general objections, this court deems them to be waived.

**3. *CAIR's Specific Objections are Improper***

Furthermore, CAIR's objections are improper boilerplate objections. All of CAIR's objections to the RFPs at issue fail to provide notice of their bases and require both DeSantis and this court to guess as to their meaning and scope. Doc. 91-2 at 4–43.

Regarding relevance, CAIR's objections to RFPs 3–9, 11–13, 15–18, 20–25, and 27–48 fail to establish that the RFPs seek irrelevant or only marginally relevant materials.

Regarding ESI inaccessibility, in RFPs 7–9, 15–18, 22–23, 25, and 27, CAIR objects that these RFPs seek documents "going back over 30 years." Doc. 91-2. Based on the representations of Thania Diaz Clevenger and Wilfredo Ruiz in their respective affidavits,[6] CAIR appears to be asserting a Rule 26(b)(2)(B) inaccessibility objection. Consistent with such representations, this court construes any language in CAIR's responses referencing a "30 years," or other substantial, length of time to

---

[6] Clevenger states in part:

> Over the 33 years covered by Defendant's document requests, CAIR has used dozens of current and legacy communications and document management platforms, including physical mail and fax, email, various text and other messaging platforms, event management software, various fundraising and donor related software, file sharing applications, and a number of social media platforms, among others. There may be additional communications and document storage platforms from prior years that current staff are not aware of—ascertaining which platforms may have been used more than a decade ago would be challenging, and require significant internal resources.

Doc. 92-14 at 2–3 ¶ 3 (Clevenger Affidavit); *see also* Doc. 92-15 at 2–3 ¶ 3 (Ruiz Affidavit).

constitute an ESI accessibility objection pursuant to Rule 26(b)(2)(B). Following such construction, CAIR's ESI accessibility objections fail to establish facts under the ESI limitation rules of Rule 26(b)(2)(B).

Regarding CAIR's objections to RFPs 3–9, 11–13, 15–18, 20–25, and 27–48 based on proportionality, CAIR's objections fail to set forth facts relevant to the proportionality factors of Rule 26(b)(1).

Regarding CAIR's objections to RFPs 5–6, 8, 11, 15, 22–23, 25, 27, 30, 32, 40–41 based on vagueness, these objections fail to demonstrate that any specific term in the RFPs is vague. Furthermore, CAIR impermissibly fails to produce materials based on the ordinary and common meaning of the purportedly vague terms, and CAIR impermissibly fails to propose a reasonable definition for the purportedly vague terms.

Regarding CAIR's harassment objections, CAIR has not alleged facts that indicate that DeSantis has violated Rule 11(b).

#### 4. ***CAIR's Act of Withholding Documents to Negotiate a Stipulated Protective Order is Improper***

None of CAIR's responses at issue explicitly object on grounds of confidentiality or mention the desire for a protective order. Doc. 91-2. Yet,

the parties' joint status report states that CAIR is withholding responsive documents on such grounds:

> The parties have recently met and conferred over the terms of a protective order to limit disclosure of protected information. Once the parties reach agreement and the Court enters the order, Plaintiffs will produce responsive documents that are not subject to the motion to compel.

Doc. 93 at 3 ¶ 12 (Sixth Joint Status Report).

Confusingly, although the joint status report states that CAIR's withheld documents "are not subject to the motion to compel," CAIR's response memorandum regarding the instant motion references this confidentiality concern in its statement of facts: "And as Plaintiffs have conveyed to Defendant during their meet and confers, they are prepared to make significant document productions once the parties agree to a protective order; those negotiations are ongoing." Doc. 92 at 6. Based on the above representations by counsel, it is unclear to which RFPs CAIR's confidentiality concerns apply. It is clear, however, that CAIR is withholding documents that are responsive to at least some RFPs based on these concerns.

The District Court has not issued a protective order in this case. As noted above, unless and until the District Court issues a protective order

regarding discovery materials addressed in this order, it is improper for CAIR to object to production on confidentiality grounds, and improper for CAIR to withhold production on such grounds.

More disconcerting is CAIR's decision not to raise this issue until the eleventh hour. CAIR filed its initial complaint on December 15, 2025. Doc. 1. The discovery period began on January 29, 2026. Doc. 30 at 1 ¶ (1)(a). The District Court initiated the discovery process only three days after DeSantis first appeared in this proceeding, well before he reasonably could file an answer.[7] Yet CAIR waited *more than six months* to raise the issue of a protective order. Doc. 93 at 3 ¶ 12 (Sixth Joint Status Report filed on August 6, 2026) ("The parties have recently met and conferred over the terms of a protective order to limit disclosure of protected information."). In the Rule 26(f) report and the interim status reports, CAIR never mentions the need or desire for a protective order.

**Any other matters which the parties deem appropriate with regard to specific aspects or the uniqueness of this case, and including any applicable subject within Rule 16(c).** There are no other matters with regard to specific

[7] Plaintiffs served DeSantis with a summons and complaint on January 20, 2026. Doc. 23. Counsel for DeSantis appeared on January 26. Docs. 27 & 28. The District Court initiated the discovery process on January 29. Doc. 30. DeSantis filed an answer to the operative complaint on February 10, 2026. Doc. 36.

> aspects or the uniqueness of this case, including any applicable subject within Rule 16(c), that the parties deem appropriate for the Court to address at this time.

Doc. 49 at 8 ¶ 5(vii) (Rule 26(f) Report) (emphasis in original).

The "applicable subject[s] within Rule 16(c)," for which CAIR represented that it had no issues worthy of the District Court's attention, includes "orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37[,]" Fed. R. Civ. P. 16(c)(2)(F), which, in turn, includes the following:

- protective orders "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[,]" Fed. R. Civ. P. 26(c)(1)(G);

- stipulations by the parties that "other procedures governing or limiting discovery be modified[,]" Fed. R. Civ. P. 29(b); and

- the Federal Rules' default that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond[,]" Fed. R. Civ. P. 37(a)(4).

In short, CAIR's handling of its purported confidentiality concerns is not the expected behavior of a party with legitimate confidentiality concerns.

In light of the lengthy improprieties discussed above, this court deems all of CAIR's objections to the RFPs at issue to be waived.

True, in its response memorandum, CAIR attempts to correct some of the deficiencies—highlighted above—in its objections to the RFPs. Doc. 92 at 11–36 (Argument §§ I–III). That is simply too little too late. The federal discovery rules are designed to minimize the involvement of district courts in the discovery process. *Chudasama*, 123 F.3d at 1367–68; *In re Stone*, 986 F.2d 898, 904 (5th Cir. 1993). Accordingly, it is imperative that parties plainly state with specificity any objections to discovery requests *when they lodge their objections with opposing counsel*. This ensures that counsel for all parties can then discuss the objections intelligently, perhaps make some compromises consistent with the law, and seek a reasonable resolution that does not entail involvement of the district court.

By belatedly attempting to provide some specificity only after DeSantis has moved to compel discovery, CAIR has thwarted one of the key purposes of the federal discovery rules. For this and other reasons, courts have repeatedly rejected such attempts to marshal *post hoc* justifications and refuse to consider them. *See, e.g., Allen*, 2021 WL 9596127, at *1; *Le*, 2021 WL 4144776, at *2; *Harvard*, 2020 WL 701990, at *2; *Ellis*, 2019 WL 13198255, at *1; *Hales*, 2025 WL 3540341, at *2;

*All. Laundry Sys.*, 2024 WL 3831409, at *1; *Dempsey*, 2023 WL 7926881, at *3; *McCort*, 2021 WL 3194989, at *6. This court does likewise.

**CAIR'S PRIVILEGE CLAIMS**

As explained above, if a party's document production under Rule 34(a) is insufficient, Rule 37(a) authorizes a party to "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Recall that DeSantis moves to compel supplemental responses and production regarding RFPs 3–9, 11–13, 15–18, 20–25, and 27–48. Doc. 91. Here, for RFPs 3–4, 12–13, 21, 24–25, 28–31, 34–39, and 48, CAIR's amended RFP responses served on July 17, 2026, attempt to assert privilege claims. Doc. 91-2. The issue is whether CAIR followed proper procedures when asserting its privilege claims and, if it did not, whether its failure to follow such procedures now results in waiver of those privilege claims.

**A. <u>Procedural History Specific to CAIR's Privilege Claims</u>**

DeSantis served the RFPs at issue on April 17, 2026. Doc. 54 at 2 ¶ 2 (Third Joint Status Report); Doc. 91-1. Initially, CAIR's responses were due thirty days later, on May 18, 2026. *Id.* DeSantis gave CAIR a two-week extension, resulting in a deadline of June 1, 2026. Doc. 61 at 2 ¶ 2 (Fourth Joint Status Report).

On June 4, 2026, CAIR served its responses "pursuant to an agreed extension" beyond the June 1 deadline. Doc. 67 at 2 ¶ 2 (Fifth Joint Status Report). Neither party submitted to this court a copy of CAIR's initial responses to the RFPs at issue. Therefore, this court presumes that CAIR's initial responses provide no further details relevant to this dispute beyond the fact that they were served.

Two weeks later, on June 18, 2026, DeSantis sent to CAIR a discovery dispute letter arguing, among other things, that CAIR's privilege claims in its initial responses were unsupported. Doc. 91-3 at 6 (Section E – Unsupported First-Amendment Privilege Claims). DeSantis explained:

> Plaintiffs improperly object to numerous Requests on the grounds that they seek identities of donors, but Plaintiffs do not even attempt to carry their "burden of making a *prima facie* showing of infringement on the right by the requested discovery." *Fla. State Conf. of Branches and Youth Units of NAACP v. Lee*, 568 F. Supp. 3d 1301, 1307 (S.D. Fla. 2021).

A month later, on July 17, 2026, CAIR served the amended RFP responses now at issue. Doc. 91-2. CAIR claims privilege, pursuant to "the First Amendment to the U.S. Constitution," over the following information:

- "information [or documents] about [or related to] the identities of donors," Doc. 91-2 at 5, 12, and 19–20 (RFPs 3–4, 12, and 24);
- "the identities of donors," *Id.* at 19–20 (RFP 24);
- "donor information," *Id.* at 13, 31–33 (RFPs 13 and 36–39); and
- "information that is protected under the First Amendment," *Id.* at 17, 20, 23–25, 30, and 42 (RFPs 21, 25, 28–31, 34–35, and 48).

CAIR's discovery dispute letter to DeSantis dated July 17, 2026—the same day that it served the above-described privilege claims—provides the following explanation of its privilege claims.

> Further, CAIR—as an American organization, along with its American members and donors—has a First Amendment right to freedom of association that protects against these demands for private donor information. *See First Choice Women's Res. Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114, 1123 (2026) ("[D]emands for private donor information 'inevitabl[y]' carry with them a 'deterrent effect on the exercise of First Amendment rights.'" (quoting *Buckley v. Valeo*, 424 U.S. 1, 65 (1976) (per curiam))); *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958) ("Compelled disclosure of membership in an organization engaged in advocacy of particular beliefs" can constitute a "substantial restraint" on freedom of association). This is particularly so where, as here, Defendant requests identities of donors and members of a religious organization and where Defendant has shown hostility to CAIR and designated CAIR a "terrorist organization," clearly supporting a reasonable probability that the information requested will give rise to threats,

> harassment, or reprisals from Government officials or private parties, and ultimately infringe on the associational rights of CAIR and its members and donors. *See Christ Covenant Church v. Town of Sw. Ranches*, No. 07-60516-CIV, 2008 WL 2686860, at *6 (S.D. Fla. June 29, 2008) (First Amendment associational rights implicated where government seeks identities of members of a religious organization); *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 141 (E.D.N.Y. 2013), *aff'd*, 868 F.3d 104 (2d Cir. 2017), and *aff'd*, 705 F. App'x 10 (2d Cir. 2017) (prima facie showing of reasonable probability that disclosure would lead to threats or harassment where government has viewed group in question "with suspicion and hostility"). For all of these reasons, Plaintiffs stand on their First Amendment objections, to the extent various requests seek protected information.

Doc. 91-4 at 3–4.

No declaration or affidavit appears to have accompanied CAIR's amended responses or discovery dispute letter. CAIR's response brief to the instant motion provides two declarations swearing to the purported chilling effect that DeSantis's RFPs would have on CAIR's First-Amendment rights. Doc. 92-14 at 5–6 ¶¶11–14; Doc. 92-15 at 3–5 ¶¶ 7–11. None of this information was provided in CAIR's amended RFP responses at issue.

On September 4, 2026, CAIR represented that it had not produced a privilege log. Doc. 97 at 1. As of the date of this order, nothing in the record indicates that CAIR has served a privilege log.

## B. <u>Privilege Claims Must Satisfy Threshold Procedural Requirements</u>

The substantive law governing privilege claims in federal proceedings is found in Rule 501 of the Federal Rules of Evidence, which provides generally that federal common law governs a claim of privilege.[8] Rule 501 does not govern the procedural requirements for asserting a privilege claim in federal court, however. In their arguments on the propriety of CAIR's privilege claims, both parties cite federal cases on a burden shifting analysis, beginning with CAIR's *prima facie* burden to show that DeSantis's discovery requests at issue infringe CAIR's First Amendment rights. Doc. 91 at 16–18 (Argument § I(D)); Doc. 92 at 17–24 (Argument § II).

Even if the parties are correct in their understanding of substantive First Amendment privilege law (pursuant to federal common law, as required by Fed. R. Evid. 501), such a *substantive* analysis of CAIR's privilege claim is secondary to the threshold *procedural* analysis of whether CAIR properly claimed the privilege for a particular set of

---

[8] Rule 501 provides an exception when "state law supplies the rule of decision," but that does not appear to be the case here since CAIR claims First- and Fourteenth-Amendment violations of the U.S. Constitution. Doc. 21 at 27–42.

responsive documents. *See In re Renco Grp. Inc.*, 164 F.4th 1336, 1347 (11th Cir. 2026) ("[T]he burden still rests squarely on the asserting party to substantiate its claim of privilege with a document-by-document explanation. *Only after that individualized showing has been made is the district court required to assess the validity of each claim*[.]" (emphasis added)); *see also In re 3M Combat Arms Earplug Liab. Litig.*, 2020 WL 1321522, at *2 (N.D. Fla. Mar. 20, 2020) (addressing a "threshold challenge to the adequacy of [the] privilege logs" before addressing the substance of the privilege claims); 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2016.1 (3d ed. 2026) ("An existing privilege exemption from discovery must be raised in a proper fashion to be effective in justifying a refusal to provide discovery.").

Both parties' briefs jump straight to a substantive analysis of CAIR's privilege claims and skip the threshold procedural requirements for raising such claims. This court now addresses that procedural issue.

### C. <u>Improper Form of Privilege Claims under Rule 26(b)(5)(A)</u>

"When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must: (i) expressly make the claim; and (ii) describe the nature of the documents,

communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(i)–(ii). In other words, a party's privilege claim "is not self-executing" upon withholding of discoverable documents. *In re Renco Group Inc.*, 164 F.4th at 1344. Rather, a party must provide express notice that it is asserting a privilege, express notice that it is withholding otherwise discoverable documents, and must provide a sufficiently particularized evidentiary proffer of the details of the withheld documents sufficient to allow the parties and a court to evaluate the claim of privilege.

Regarding enforcement of these requirements, Rule 26(b)(5)(A) does not contain an explicit "waiver" sanction like Rule 33(b)(4) for interrogatory objections (*i.e.*, "[a]ny ground not stated in a timely objection is waived . . . ."). *Compare* Fed. R. Civ. P. 26(b)(5)(A), *with* Fed. R. Civ. P. 33(b)(4). However, according to the advisory committee notes for Rule 26(b)(5)(A), "[t]o withhold materials without such notice is contrary to the rule, . . . , and may be viewed as a waiver of the privilege or protection." Fed. R. Civ. P. 26(b)(5) advisory committee notes to the

1993 amendment (emphasis added); *see also* 8 WRIGHT & MILLER § 2016.1 ("Failure to assert the privilege objection correctly can mean that the privilege is waived."). Rule 26(g) also authorizes a district court to sanction a party for failing to assert a privilege timely and properly by holding the privilege waived. *See, e.g, Heller v. City of Dallas*, 303 F.R.D. 466, 484 (N.D. Tex. 2014); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 265 (D. Md. 2008). Consequently, "[a] failure to assert a privilege in a timely manner with sufficient specificity is a waiver of the privilege." *Nelson v. Corrs. Corp. of Am.*, 2006 WL 8445235, at *2 (N.D. Fla. Jan. 6, 2006).[9]

---

[9] As one judge in the Northern District of Florida has noted:

> Because the failure to produce a privilege log may be deemed a waiver of the privilege, it has been said that any lawyer with a healthy respect for his own skin would either produce the privilege log, negotiate some other arrangement with opposing counsel, or seek judicial relief from the obligation to produce a privilege log until a date certain or until some other event, such as the resolution of its objections to the document requests.

*Pensacola Firefighters' Relief & Pension Fund Bd. of Dirs. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2010 WL 11519376, at *3 (N.D. Fla. June 28, 2010) (alterations adopted and internal punctuation omitted).

### 1. *Rule 26(f) Requires the Parties to Confer on the Timing and Method for Complying with Rule 26(b)(5)(A)*

"Because the specific method of complying with Rule 26(b)(5)(A) depends greatly on the specifics of a given case there is no overarching standard for all cases." Fed. R. Civ. P. 16(b) advisory committee notes to the 2025 amendment. Rule 26(b)(5) "does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection." Fed. R. Civ. P. 26(b)(5) advisory committee notes to the 1993 amendment. Generally, the requirements of Rule 26(b)(5)(A) give rise to two practical discovery issues: timing and particularity. 8 WRIGHT & MILLER § 2016.1 ("An initial problem for the privilege-holder has always been the timing and precision of an objection . . . . When discovery is by interrogatories or requests for production of documents, however, problems of timing and particularity can be more troublesome.").

Accordingly, Rule 26(f) requires the parties to address both timing and particularity in their proposed joint discovery plan. Fed. R. Civ. P. 26(f)(3)(D) ("A discovery plan *must* state the parties' views and proposals on . . . any issues about claims of privilege . . . including the timing and method for complying with Rule 26(b)(5)(A)[.]" (emphasis added)).

Thereafter, a district court's scheduling order may incorporate any agreements from the discovery plan. Fed. R. Civ. P. 16(b)(3)(B)(iv).

### 2. *Courts Assess Privilege Claims on a Document-by-Document Basis, Usually via a Privilege Log*

Absent a provision in the parties' joint discovery plan otherwise, in the Eleventh Circuit courts "require a party seeking to withhold information on the basis of a privilege to support its claims 'on a document-by-document basis.'" *In re Renco Group Inc.*, 164 F.4th at 1344. Consequently, a blanket claim of privilege asserted in a written discovery response does not preserve the privilege claim, because it fails to explain the claim on a document-by-document basis. *See id.* ("Blanket assertions of privilege before a district court are usually unacceptable[.]"); *Drummond Co., Inc. v. Terrance P. Collingsworth, Conrad & Scherer, LLP*, 816 F.3d 1319, 1327 (11th Cir. 2016) ("[T]he generalized, blanket assertion of work product privilege does not entitle [the claiming party] to the wholesale protection from [the] subpoenas[.]"); *In re Grand Jury Subpoena*, 831 F.2d 225, 227 (11th Cir. 1987) (a privilege claim "may not be tossed as a blanket over an undifferentiated group of documents. The privilege must be specifically asserted with respect to particular documents."); *see also Johnson v. Gross*, 611 F. App'x 544, 547–48 (11th

Cir. 2015).

Also, absent a provision in the parties' joint discovery plan otherwise, "courts consistently have held that the rule requires a party resisting disclosure to produce a document index or privilege log." *In re Grand Jury Subpoena*, 274 F.3d 563, 575 (1st Cir. 2001); *see also United States v. Davita, Inc.*, 301 F.R.D. 676, 684 (N.D. Ga. 2014) ("A privilege log has become an almost universal method of asserting privilege under the Federal Rules."); *Avery Dennison Corp. v. Four Pillars,* 190 F.R.D. 1, 1 (D.D.C. 1999) (a privilege log is "the universally accepted means of asserting privileges in discovery in the federal courts[.]"). "The purpose of requiring a privilege log is to enable the parties to assess a claim of privilege." *Jordan*, 947 F.3d at 1328 n.3 (alteration adopted and quotations marks omitted); *see also* Fed. R. Civ. P. 26(b)(5) advisory committee notes to the 1993 amendment (the claiming party must "provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection.")

**3. *A Privilege Claim Must be Made Timely or it is Waived***

The failure to serve a privilege log in a timely manner will result in a waiver sanction. *See, e.g., In re Grand Jury Subpoena*, 274 F.3d at 576

("A party that fails to submit a privilege log is deemed to waive the underlying privilege claim."); *Dorf & Stanton Commc'ns, Inc. v. Molson Breweries*, 100 F.3d 919, 923 (Fed. Cir. 1996) (a privilege was waived when a party "failed to provide a complete privilege log demonstrating sufficient grounds for taking the privilege." (alteration adopted))

Rule 26(b)(5)(A) privilege claims, however, do not entail an explicit deadline such as the one that Rule 34(b)(2)(A) prescribes for interrogatories (*i.e.*, "[t]he party to whom the request is directed must respond in writing within 30 days after being served . . . ."). *Compare* Fed. R. Civ. P. 26(b)(5)(A), *with* Fed. R. Civ. P. 34(b)(2)(A). Likely this is because the Federal Rules of Civil Procedure expect the parties to confer on timing of privilege claims before discovery begins. Fed. R. Civ. P. 26(f)(3)(D) (the parties discovery plan "must state the parties' views and proposals on . . . timing . . . for complying with Rule 26(b)(5)(A)[.]").

Here, the parties' discovery plan makes no mention of the timing for complying with Rule 26(b)(5)(A):

> Notwithstanding Rule 26(b)(5)(A)(ii), a party need not log responsive documents, electronically stored information (ESI), or tangible things that the party claims, in response to a discovery request, are protected attorney–client communications, attorney work product, or litigation- or trial-preparation materials, if they were sent to or from an attorney

> for any party after the filing of this litigation and are related to this litigation. ***All other claims of privilege remain subject to the requirements in Rule 26(b)(5)***.

Doc. 49 at 4–5 § 4(h)(i) (emphasis added). Given that the parties elected not to include in their discovery plan a deadline for claiming a privilege, when in this proceeding is a privilege claim untimely? There is no bright line test for answering this question.

"The Eleventh Circuit has never determined what constitutes a timely production of a privilege log in response to a request for production of documents." *Universal City Dev. Partners v. Ride & Show Eng'g*, 230 F.R.D. 688, 695 (M.D. Fla. 2005). "A survey of district court discovery rulings reveals wide divergence on whether the privilege log must be produced at the time that the written response is due pursuant to Rule 34 to preserve the privilege." *Id.* In the Northern District of Florida, absent a motion for a protective order or a provision in the parties' joint discovery plan otherwise, there is a strong presumption that a party who asserts a privilege must also simultaneously produce a privilege log:

> Under this Rule, the party withholding information under claim of privilege *must* produce a privilege log "When the party withholds the information." That is, the duty to produce the privilege log is immediate and absolute, and does not depend at all upon [the requesting party] asking for it.

*Covington*, 274 F.R.D. at 694 (alteration adopted) (emphasis in original).

Some courts have held that an unjustified delay in providing a privilege log results in a waiver of the asserted privilege. *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) ("Continual failure to adhere to Rule 26's prescription may result in waiver of the privilege where a court finds that the failure results from unjustified delay, inexcusable conduct, or bad faith."); *United States v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003) (citing 8 WRIGHT & MILLER § 2016.1) ("As the federal rules, case law and commentators suggest, waiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith."); *see also Meade v. Gen. Motors, LLC*, 250 F. Supp. 3d 1387, 1393 (N.D. Ga. 2017); *Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 235 (S.D.W. Va. 2015).

Other courts have found a waiver when the delay in producing a privilege log evinces "a deliberate pattern of delay and is egregious." *See, e.g., Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 142 (D. Mass. 2014); *In re Dep't of Just. Subpoenas to ABC*, 263 F.R.D. 66, 71 (D. Mass. 2009) (citing *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 9–11 (1st Cir. 1991)).

"The only United States Court of Appeals to explicitly construe the relationship between Rule 26(b)(5) and Rule 34 is the Ninth Circuit in *Burlington N. & Santa Fe Ry. Co. v. United States Dist. Court for the Dist. of Montana,* 408 F.3d 1142 (9th Cir. 2005)." *Universal City Dev. Partners*, 230 F.R.D. at 695. The Ninth Circuit held that a court should apply a multi-factor "holistic reasonableness analysis." *Burlington N. & Santa Fe Ry. Co.,* 408 F.3d at 1149. In the Northern District of Florida, a pre-*Covington* line of unreported cases applied the *Burlington* "holistic reasonableness analysis." *See, e.g., Pensacola Firefighters' Relief & Pension Fund Bd. of Directors v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2010 WL 11519376, at *3–5 (N.D. Fla. June 28, 2010) (finding privilege to be waived by failing to serve a privilege log); *Pitts v. Francis*, 2008 WL 2229524, at *4–5 (N.D. Fla. May 28, 2008) (finding privilege to be waived by failing to serve a privilege log).

### D. CAIR's Privilege Claims are Waived

Here, at issue are CAIR's privilege claims for DeSantis's RFPs 3–4, 12–13, 21, 24–25, 28–31, 34–39, and 48. Doc. 91-2. CAIR's amended RFP responses served on July 17, 2026, attempt to assert claims of First

Amendment associational privilege. *Id.* For the reasons explained below, this court deems all of CAIR's privilege claims to be waived.

### 1. *CAIR's Blanket Privilege Claims do not Satisfy Rule 26(b)(5)(A)*

First, there is nothing in the record indicating that CAIR has served a privilege log that provides even a category-by-category, let alone document-by-document, description of the documents to which its privilege claims apply, thereby denying DeSantis the ability to assess the claim. Doc. 97 at 1. DeSantis served the RFPs at issue on April 17, 2026. Doc. 54 at 2 ¶ 2; Doc. 91-1. CAIR served its first version of its responses on June 4, 2026. Doc. 67 at 2 ¶ 2. On September 4, 2026—nearly four months after the original 30-day deadline to respond to the RFPs at issue—CAIR represented that it had not produced a privilege log. Doc. 97 at 1. As of the date of this order, *nearly six months after the original 30-day deadline*, nothing in the record indicates that CAIR has served a privilege log.

Yet CAIR must have known of its obligation to produce a privilege log because DeSantis produced a privilege log for his previously asserted privilege claims (Doc. 62 at 2; Doc. 64-3), which was the subject of repeated conferrals between the parties and, ultimately, a motion to

compel by CAIR against DeSantis. Doc. 64 at 4. Under these circumstances, CAIR cannot credibly argue that it was unaware of its obligation to produce a privilege log.

Second, the First Amendment privilege claims in CAIR's amended RFP responses over "information about identities of donors," "identities of donors," and "donor information," and "information that is protected by the First Amendment" fail to "describe the nature of the documents, communications, or tangible things not produced or disclosed" as required by Rule 26(b)(5)(A)(ii). Doc. 91-2.

Third, although CAIR's dispute correspondence addresses the substance of its First Amendment claim, it too fails to "describe the nature of the documents, communications, or tangible things not produced or disclosed" as required by Rule 26(b)(5)(A)(ii). Doc. 91-4 at 3.

Fourth, like with CAIR's waived discovery objections discussed *supra*, it is true that, in its response memorandum, CAIR attempts to supplement its blanket privilege claims. Doc. 92 at 17–24 (Argument § II); Doc. 92-14 at 5–6 ¶¶ 11–14; Doc. 92-15 at 3–5 ¶¶ 7–11. CAIR does not explain why it was unable to provide these supplemental materials with

its discovery responses. For the same reasons as discussed for the waived objections *supra*, that is simply too little too late.

Finally, even if the supplemental materials were provided with the discovery responses, they fail to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, *will enable other parties to assess the claim*." Fed. R. Civ. P. 26(b)(5)(A)(ii) (emphasis added). The memorandum refers to "records related to Plaintiffs' donors, staff travel, and associations with various non-profits and related individuals." Doc. 92 at 17. That is not an enabling description. Rather, this vague description leaves a host of questions unanswered:

- How many documents are involved?
- What types of documents (emails, receipts, Outlook/Gmail calendar invites)?
- How many donors?
- What types of donors (individuals, corporations)?
- Who was travelling and for what purpose?
- What, exactly, is CAIR claiming here, apart from the right to not have to produce what it deems should not have to be produced?

The answers to these questions would "enable other parties to assess the claim." Fed R. Civ. P. 26(b)(5)(A)(ii).

Because CAIR chose not to produce a privilege log, CAIR has provided insufficient facts for DeSantis and this court to assess the applicability of CAIR's claimed First-Amendment privilege. Indeed, this court does not have even a *rough estimate* of the number of documents CAIR alleges are privileged, and it is not clear that CAIR knows either. Therefore, CAIR's privilege claims do not comply with Rule 26(b)(5)(A).

**2. *CAIR has not Shown that it is Unable to Comply with Rule 26(b)(5)(A)***

CAIR had at least two clear opportunities in this proceeding to avail itself of the protections afforded by the Federal Rules of Civil Procedure.

First, at the 26(f) conference, CAIR apparently did not raise the issue of timing or method of compliance with Rule 26(b)(5)(A), and the discovery plan makes no mention of this issue. Doc. 49 at 4–5 § 4(h)(i). The parties make no mention of any substantive privilege issues, such as categories of information that a party expects to claim as privileged (*e.g.*, identities of and information on donors), or of any procedural privilege issues such as the "timing and method for complying with Rule 26(b)(5)(A)" as required by Rule 26(f)(3)(D). Accordingly, the District

Court's resulting scheduling order makes no mention of the parties' Rule 26(b)(5)(A) obligations. Doc. 50.

Second, at any time after the service of DeSantis's RFPs on April 17, 2026, CAIR could have moved for a protective order requesting a delay in its obligation to produce a privilege log. Well over six months later, however, CAIR still has not done this.

Instead, CAIR chose to serve boilerplate objections and blanket privilege claims. This is not the conduct of a party that has serious discovery concerns.

**3. *CAIR's Boilerplate Objections do not Obviate Rule 26(b)(5)(A)***

As discussed thoroughly *supra*, this court deems all of CAIR's objections to the RFPs at issue to be waived. Consequently, none of CAIR's boilerplate objects obviate the requirements of Rule 26(b)(5)(A). *See* Fed. R. Civ. P. 26(b)(5) advisory committee notes to the 1993 amendment; *Pensacola Firefighters*, 2010 WL 11519376, at *5.

**4. *At this Stage in the Proceeding, CAIR has not Timely Complied with the Requirements of Rule 26(b)(5)(A)***

Applying the "holistic reasonableness analysis" from *Burlington* leads to the same result. This analysis requires courts to consider four

factors: (i) the degree to which the privilege claim is enabling; (ii) the timeliness of the enabling information (with the 30-day deadline of Rule 34 being a guideline); (iii) the magnitude of the document production; (iv) other particular circumstances that make responding to discovery unusually easy or unusually hard. *Burlington N. & Santa Fe Ry. Co.*, 408 F.3d at 1149.

As to the first and second factors, as explained above, CAIR's blanket privilege claims are not enabling, and CAIR asserted privilege well past the deadline to respond to DeSantis's discovery requests.

Regarding the third factor, CAIR in theory may have had a colorable argument that the magnitude of discoverable documents was too large to allow it to comply with Rule 26(b)(5)(A). CAIR, however, never made that argument. CAIR has not provided even a rough estimate of the number of documents to which these claims apply. CAIR did not raise this issue at the Rule 26(f) conference, as it was required to do. CAIR also did not move for a protective order, as it was free to do.

As to the fourth factor, CAIR in theory may have had a colorable argument that the difficulty of extracting information from its information technology systems was too difficult to allow it to comply

with Rule 26(b)(5)(A). Again, however, CAIR has not made this argument. CAIR also did not raise this issue at the Rule 26(f) conference, as it was required to do, and CAIR did not move for a protective order.

Finally, viewing these factors from a holistic perspective on the proceedings thus far, CAIR made its blanket privilege claims in conjunction with the other discovery issues discussed above, including improper boilerplate objections and delay in producing documents to negotiate a stipulated protective order, rather than moving for a protective order.

Even under the "holistic reasonableness analysis," therefore, this court deems CAIR's claims of privilege to be waived.

## CONCLUSION

For the reasons set forth above, it is **ORDERED**:

1. For all RFPs at issue, consistent with the discussion above, all objections of both Plaintiffs, Doc. 91-2, are deemed to be waived.

2. For all RFPs at issue, consistent with the discussion above, all First-Amendment associational privilege claims of both Plaintiffs, Doc. 91-2, are deemed to be waived.

3. For all RFPs at issue, there being no proper objections or claims of privilege, and consistent with the discussion above, Defendant DeSantis's motion to compel, Doc. 91, is **GRANTED**.

**SO ORDERED** this 4th day of November 2026.

/s/ *Michael J. Frank*

**Michael J. Frank**
**United States Magistrate Judge**